**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

-----------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CR 07-09-01 (MML) |
| v. | : | |
| | : | December 14, 2007 |
| JOHN R. KRAMER and | : | |
| CARLOS ORTIZ | : | |

-----------------------------------------------------x

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS COUNT 23 OF THE INDICTMENT**

Defendants John R. Kramer and Carlos Ortiz respectfully submit this reply memorandum of law in further support of their Motion to Dismiss Count 23 of the Indictment, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

## INTRODUCTION

As explained in Defendants' Memorandum of Law in Support of Their Motion to Dismiss Count 23 of the Indictment, the allegations in Count 23 fail to set forth the essential facts of a bribery charge. The government's opposition brief offers no support for Count 23 but simply repeats the government's insufficient allegations and cites caselaw confirming that the bribery charge must be dismissed.

## I. COUNT 23 FAILS TO ALLEGE THE ESSENTIAL FACTS OF A BRIBERY CHARGE.

As the government acknowledges, "Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment 'be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" (United States' Memorandum in Support of Its Objection to Defendants' Motion to Dismiss Count 23 of the Indictment, dated Nov. 30, 2007 ("Opposition Brief"), at 2 (quoting Fed. R. Crim. P. 7(c)(1)).) The "essential facts" of a bribery charge are those describing an improper *quid pro quo* exchange between a defendant and a government agent. See United States v. Mariano, 983 F.2d 1150, 1159 (1st Cir. 1993) ("[t]he essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a *quid pro quo*"). The Opposition Brief fails to point to any allegations in Count 23 that identify those essential facts, and instead recites background allegations that only emphasize the inadequacy of the charge.

According to the Opposition Brief, Count 23 puts Kramer and Ortiz "on notice that, from May 1999 to December 2003, they are alleged to have given Celona gifts and money with the intent to influence and reward him in connection with legislation of interest to CVS, a pharmacy retail company." (Opp'n Br. at 8.) This broad, vague "notice" does not provide Kramer and Ortiz with enough information to prepare a defense to the bribery charge.

First, Count 23 alleges a time period that is too expansive to be meaningful. As the Opposition Brief acknowledges, Count 23 covers the period "from May 1999 to December 2003," a span of more than four-and-a-half years. (Opp'n Br. at 4, 8.) Neither Count 23 nor the Opposition Brief offers any hint as to when, during that four-and-a-half-year period, the alleged bribe took place.[1] In striking contrast, the bribery indictments cited in the Opposition Brief allege narrow, specific time frames. See, e.g., United States v. Apple, Indictment, dated September 13, 1995 ("Apple Indictment"), ¶ 5 ("on or about July 28, 1995"); United States v. Agostino, Indictment, dated October 2, 1996 ("Agostino Indictment"), ¶ 2 ("[i]n or around July 1995"); United States v. Triumph Capital Group, Inc., Superseding Indictment, dated January 9, 2001 ("Triumph Indictment"), Count Fifteen ¶ 2 ("[b]etween in or about March, 1998 and November 8, 1998") and Count Nineteen ¶ 2 ("beginning in or about November, 1998 and continuing through in or about [January 9, 2001]).[2] Because Count 23 does not identify the "gifts" or "money" that defendants offered to Celona during the four-and-a-half years at issue, Count 23's expansive time period forces the defendants to resort to mere guesswork, and it

---

[1] Presumably, Count 23 contemplates only a single *quid pro quo* exchange during the May 1999-December 2003 time period; otherwise, Count 23 would have to be dismissed as duplicitous. See United States v. Verrecchia, 196 F.3d 294, 297 (1st Cir. 1991) (noting that duplicitous indictments allow jury to "find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense"); United States v. Tutein, 122 F. Supp. 2d 575 (D.V.I. 2000) (dismissing bribery charge where single count in indictment alleged that defendant had made one offer in October 1998 and another in February 1999, and noting that "every corrupt offer warrants a separate charge under Section 666").

[2] The Apple, Agostino, and Triumph Indictments are annexed hereto as Exhibits A, B, and C, respectively.

deprives the defendants of the ability to plead double jeopardy against a future prosecution for the same conduct.[3]

Second, the phrase "legislation of interest to CVS" is hopelessly nondescript, as evidenced by the Opposition Brief's circular definition of that phrase as "legislation that [defendants'] employer, CVS, had an interest in." (Opp'n Br. at 4.) Count 23 does not specify -- and so the Opposition Brief cannot identify -- the "legislation" at issue. "Legislation" could refer to, among other things, a bill enacted into law by the Governor, a bill passed by the Senate, a bill voted upon but rejected by the Senate, a bill discussed by the full Senate but never voted upon, a bill discussed in committee, or a bill informally proposed or discussed but never presented. Moreover, it is virtually impossible to tally the number of different pieces of "legislation" that, between May 1999 and December 2003, were proposed, considered, sent to committees, discussed, approved, presented to the State House, presented to the State Senate, voted upon, rejected, passed, vetoed, and/or signed into law in the State of Rhode Island. The language of Count 23 could apply to any one of them.

Finally, the Opposition Brief's discussion of background allegations illustrates the improperly expansive scope of Count 23. According to the Opposition Brief, Count 23 "provides a detailed background of Celona's official position," (Opp'n Br. at 4), alleging that he was a Rhode Island State Senator for nine years, (Opp'n Br. at 3), and that during the four-and-a-half years covered by Count 23, he "participated in several state committees." (Opp'n Br. at 4.) These and other "background" allegations offer no essential facts about the alleged bribe and

3 In response to the defendants' argument that nothing in Count 23 would prevent the government from charging Kramer and Ortiz with bribery a second time, claiming that the new indictment simply involves different "money," "gifts," or "legislation," the government insists that "this argument proves that [defendants] are on adequate notice to plead double jeopardy if necessary." (Opp'n Br. at 8.) The mere recognition that Count 23 leaves the defendants vulnerable to double jeopardy, however, does not demonstrate that the bribery charge is sufficiently pled. Notably, although the government recognizes that a subsequent bribery charge during the same

instead plunge Count 23 into deeper ambiguity. Between May 1999 and December 2003, "by virtue of [his] position and membership on various senate committees," (Opp'n Br. at 4), Celona had the ability to influence a broad range of various types of legislation relating to corporations, commerce, municipal government, health, education, and welfare -- every one of which would be "of interest" to a retail sales company as large and diverse as CVS.

In its Opposition Brief, the government makes a futile attempt to limit the scope of Count 23 by claiming that it relates to "Celona's ability to influence *pharmacy legislation* that would be of interest to CVS." (Opp'n Br. at 4 (emphasis added).) Count 23 itself makes no mention of "pharmacy legislation." Even if it did, the phrase "pharmacy legislation that would be of interest to CVS" includes every piece of pharmacy-related legislation that came before the Rhode Island legislature in any form between May 1999 and December 2003, and thus Count 23 would still be impermissibly broad.

In short, Count 23's factual allegations, as described in the Opposition Brief, amount to the following: at some unspecified point during a period lasting more than four-and-a-half years, the defendants gave an indeterminate amount of "money" and unidentified "gifts" to a state senator in order to "influence and reward him in connection with" unknown legislation in which their employer had some undefined interest. Count 23 forces Kramer and Ortiz to guess at the essential facts of the alleged bribe and is therefore fatally insufficient.[4]

---

time period would be subject to a double jeopardy argument, the government does not concede that such a charge would be barred by double jeopardy.

[4] The government mischaracterizes defendants' argument regarding aiding and abetting. The government suggests that defendants contend that the government failed to bring an aiding and abetting claim against Kramer and Ortiz. (See Opp'n Br. at 6-7.) On the contrary, the problem is that the government *did* add an aiding and abetting claim to Count 23. Because of the government's failure to provide any of the "essential facts" of the alleged bribery, the addition of an aiding and abetting charge deepens Count 23's ambiguity.

## II. THE OPPOSITION BRIEF RELIES UPON CASELAW THAT ACTUALLY CONFIRMS THE INSUFFICIENCY OF COUNT 23.

The Opposition Brief's discussion of caselaw does nothing to advance the government's argument. In fact, the cases cited by the government simply highlight Count 23's insufficiency.

The Opposition Brief relies principally on three cases that involve bribery allegations. Those cases provide no support for the government's position that Count 23 passes constitutional muster. In its discussion of United States v. Apple, 927 F. Supp. 1119 (N.D. Ind. 1996), the government mischaracterizes the issue and misstates the facts. Unlike Kramer and Ortiz, Apple did not claim that the indictment against him failed to allege his conduct with sufficient clarity to provide notice of the crime charged. Rather, Apple argued that the indictment did not show "how the federal funds were adversely affected by his alleged criminal conduct.'" Id. at 1121.

Moreover, the Opposition Brief claims incorrectly that "[n]o more details were provided" in the Apple Indictment apart from a sentence charging the defendant with "knowingly, intentionally, and corruptly [giving] money to a person employed by IDEM, with the intent to influence or reward this person as an agent for IDEM in connection with a matter involving $5000 or more." (Opp'n Br. at 5 (quoting Apple, 927 F. Supp. at 1120-21).) The Apple Indictment did provide "more details." It stated specifically that the bribe took place "on or about July 28, 1995," (Apple Indictment ¶ 5), and went on to provide significant additional detail, as the court explained at length:

> The indictment states as follows: From February 4, 1991, through September 13, 1995, IDEM investigated property of A.S.K. Shredders, Inc. for possible violations of state civil and criminal statutes. The investigation focused at least in part on A.S.K.'s storage and disposal of tires. As president of A.S.K., Apple met several times with IDEM agents, who informed him of the possible violations. As part of the IDEM investigation, IDEM's commissioner issued an order in May 1995 demanding a clean-up of A.S.K.'s property and fining Apple $10,000.

Apple, 927 F. Supp. 2d at 1120-1121. Thus, the Apple Indictment provided far more factual detail than Count 23 provides.

The facts of United States v. Triumph Capital Group, Inc., 260 F. Supp. 2d 462 (D. Conn. 2002), a second bribery case cited by the government, also support defendants' argument. Unlike Count 23, the indictment in Triumph offered a wealth of detail about the *quid pro quo* being alleged:

> Between in or about March, 1998 and November 8, 1998, defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL provided things of value, that is $25,000 to defendant LISA A. THIESFIELD and financial support to the "Silvester for State Treasurer" Campaign, to Paul J. Silvester in exchange for an investment of state pension assets in a TRIUMPH CAPITAL related investment fund.
>
> * * * *
>
> Beginning in or about November, 1998 and continuing through in or about the present, in the District of Connecticut and elsewhere, defendant FREDERICK W. MCCARTHY, CHARLES B. SPADONI, and TRIUMPH CAPITAL together with others, known and unknown to the Grand Jury, knowingly, willfully and corruptly gave, offered, and agreed to give things of value, that is consulting contracts valued at approximately $2 million to LISA A. THIESFIELD and Christopher A. Stack, two close associates of Paul J. Silvester, with the intent to influence and reward an agent of a State government, Paul J. Silvester, in connection with any business, transaction or series of transactions of the Connecticut State Treasurer's Office involving a thing of value of $5,000 or more, that is an increased investment of state pension assets with Triumph Connecticut-II.

(Triumph Indictment, Count Fifteen ¶ 2 and Count Nineteen ¶ 2.) These precise descriptions of what the Triumph defendants allegedly gave and received provide far more clarity than does Count 23's featureless allegation that over the course of four-and-a-half years, defendants gave "money" and "gifts" to Celona "in connection with legislation of interest to CVS."

The government fares no better in its reliance on United States v. Agostino, 132 F.3d 1183 (7th Cir. 1997), a third bribery case cited in the Opposition Brief. Even the two-page indictment in that case provided clearer notice to the defendant than Count 23 provides to Kramer and Ortiz. In Agostino, the defendant, an "Administrative Services Manager of the Toll Road Division of the Indiana Department of Transportation," id. at 1187, was alleged to have bribed a subordinate in his office, "the Patron Services Manager of the Indiana Department of Transportation, Toll Road Division," by giving him money "[i]n or around July 1995," in connection with business of the Toll Road Division. (Agostino Indictment ¶ 2.) Agostino argued that the indictment was insufficient because it "fail[ed] to identify the specific act or acts he was trying to influence by giving [his subordinate] $4,000" in cash in July 1995. Agostino, 132 F.3d at 1190. The First Circuit rejected that argument, stating that "[t]he indictment clearly sets forth the relevant time, person, agency and currency involved in the criminal transaction," and "[t]his information is sufficient to put Agostino on notice of the conduct for which he was charged." Id. at 1191. Count 23 fails in comparison; it provides no such specific timeframe, no particular currency, and no narrow context such as a cash payment from a supervisor to a subordinate for a particular division of a particular state agency.

Finally, the government ignores relevant cautionary language from the First Circuit in two other cases cited in the Opposition Brief, United States v. Cianci, 378 F.3d 71 (1st Cir. 2004), and United States v. Allard, 864 F.2d 248 (1st Cir. 1989). The Opposition Brief cites Cianci in support of the government's claim that "[i]t is generally sufficient for an indictment to track the statutory language defining the offense, so long as the elements of the charged crime are contained." (Opp'n Br. at 2 (citing Cianci, 378 F.3d at 81).) The full passage from Cianci, however, includes a crucial requirement that the Opposition Brief fails to mention:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves *fully, directly and expressly, without any uncertainty or ambiguity*, set forth all the elements necessary to constitute the offense intended to be punished."

Cianci, 378 F.3d at 81 (quoting Hamling, 418 U.S. at 117 (emphasis added)). Similarly, the Opposition Brief relies upon Allard to support the government's contention that "[t]he question should be whether the indictment 'fairly identifies and describes the offense.'" (Opp'n Br. at 2 (quoting Allard, 864 F.2d at 250.) The First Circuit held, however, that the charging instrument in Allard "fairly identifie[d] and describe[d] the offense" because it:

> meets every test for sufficiency recognized in this circuit. It fairly describes the crime and the victims. It describes the offense with sufficient clarity to show a violation of law, and enable the accused to know the nature and cause of the accusation against him. It also conforms to the requirements of Rule 7(c) of the Federal Rules of Criminal Procedure.

Allard, 864 F.2d at 250 (internal citations and quotations omitted). Count 23 meets none of these tests.

The government has failed to identify the most fundamental facts of the bribery charge against Kramer and Ortiz: what they gave to Celona, when they gave it to him, and what they got -- or hoped to get -- in return. The First Circuit's conclusion in United States v. Tomasetta, 429 F.2d 978 (1st Cir. 1970), is equally applicable here: "In sum, the defendant[s] could not possibly have made an adequate preparation for trial on the basis of the information contained in this indictment." Id. at 980. Accordingly, Count 23 should be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their motion to dismiss Count 23 of the Indictment be granted in its entirety.

Dated: December 14, 2007
Providence, Rhode Island

Respectfully submitted,

JOHN R. KRAMER,
By his Attorneys,

/s/ Peter DiBiase
Peter DiBiase
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903-3819
(401) 831-5020
attorney_pad@yahoo.com

David B. Fein
Scott D. Corrigan
*Pro Hac Vice Counsel*
WIGGIN AND DANA LLP
400 Atlantic Street
Stamford, CT 06901
(203) 363-7600
(203) 363-7676 (fax)
dfein@wiggin.com
scorrigan@wiggin.com

CARLOS ORTIZ,
By his Attorneys,

/s/ Mark L. Smith
Mark L. Smith
176 Eddie Dowling Highway
North Smithfield, RI 02896
(401) 769-4120
Lawmls@aol.com

Thomas R. Kiley
*Pro Hac Vice Counsel*
Cosgrove, Eisenberg and Kiley, P.C.
One International Place, Suite 1820
Boston, Massachusetts 02110
(617) 439-7775
trkiley159@aol.com

# Exhibit A

FILED

SEP 13 1995

STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 2:95CR0083 |
| | ) | |
| NATHAN APPLE | ) | 18 U.S.C. § 666 |
| | ) | |

**THE GRAND JURY CHARGES:**

**COUNT 1**

1. At all times material herein, the Indiana Department of Environmental Management (IDEM) was a department or agency of the State of Indiana.

2. At all times material herein, IDEM received, during each calendar year, benefits in excess of Ten Thousand ($10,000) Dollars under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, or other forms of Federal assistance.

3. From at least on or about February 4, 1991 through on or about September 13, 1995, IDEM had been conducting an investigation into possible civil and criminal violations of the laws of the State of Indiana regarding property of A.S.K. Shredders, Inc., located at 415 151st Street, in East Chicago, Indiana, and its storage and disposal of tires.

4. That as part of this investigation, agents for IDEM met with NATHAN APPLE, the President of A.S.K. Shredders on different occasions and informed APPLE of the possible violations.

5. That as part of the investigation, the Commissioner of IDEM issued an order on or about May 11, 1995 demanding the clean

up of the site at 415 151st Street in East Chicago, Indiana, requiring the proper disposal of all solid waste on the site, and fining Nathan Apple $10,000 as a civil penalty.

5. On or about July 28, 1995 in the Northern District of Indiana,

**NATHAN APPLE**

defendant herein, did knowingly, intentionally, and corruptly give money to a person employed by IDEM, with the intent to influence or reward this person as an agent for IDEM in connection with a matter involving $5000 or more;

In violation of Title 18, United States Code, Section 666.

A TRUE BILL:

GRAND JURY FOREPERSON

JON E. DeGUILIO
UNITED STATES ATTORNEY

By:
Patrick D. Hansen
Assistant United States Attorney

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FILED
IN OPEN COURT
OCT 02 1996
At ____________ M
STEPHEN R. LUDWIG, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH F. AGOSTINO | ) | INDICTMENT<br>(1 Count)<br><br>18 U.S.C. § 666(a)(2) |

3:96CR0042AS

**THE GRAND JURY CHARGES:**

1. At all times relevant to this indictment:

A. The Indiana Department of Transportation was an organization and state agency that received federal funds and assistance in excess of $10,000 during the one-year period beginning July 1, 1994 and ending June 30, 1995 and the one-year period beginning July 1, 1995 and ending June 30, 1996.

B. CW 1 was an agent of the Indiana Department of Transportation, Toll Road Division, in that CW 1 was the Patron Services Manager for the Indiana Department of Transportation, Toll Road Division.

2. In or around July 1995, in the Northern District of Indiana,

JOSEPH F. AGOSTINO

defendant herein, did knowingly and corruptly offer and give something of value, specifically, monies, to CW 1 with intent to

influence and reward CW 1 in connection with the business, transaction, or series of transactions of the Indiana Department of Transportation, Toll Road Division, involving something of value of $5,000 or more.

In violation of Title 18, United States Code, Section 666(a)(2).

Dated: October 2, 1996

A TRUE BILL:

Grand Jury Foreperson

JON E. DeGUILIO
UNITED STATES ATTORNEY

By:

Donald J. Schmid
Assistant United States Attorney

# Exhibit C

56
56

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BJ

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:00CR217(DJS) |
| v. | : | |
| TRIUMPH CAPITAL GROUP, INC., FREDERICK W. MCCARTHY, CHARLES B. SPADONI, LISA A. THIESFIELD, BEN F. ANDREWS | : | Racketeering (18 U.S.C. § 1962(c)); Racketeering Conspiracy (18 U.S.C. § 1962 (d)); Mail and Wire Fraud (18 U.S.C. §§ 1341 and 1343); Bribery Concerning Programs Receiving Federal Funds (18 U.S.C. § 666); Conspiracy to Money Launder (18 U.S.C. § 1956(h)); False Statement (18 U.S.C. § 1001); Obstruction of Justice (18 U.S.C. § 1503) Witness Tampering (18 U.S.C. § 1512) |

SUPERSEDING INDICTMENT

The Grand Jury Charges:

COUNT ONE - Racketeering
18 U.S.C. § 1962(c)
(Ben F. Andrews, Lisa A. Thiesfield, Frederick W. McCarthy,
Charles B. Spadoni, Triumph Capital)

THE RACKETEERING ENTERPRISE

1. At all times relevant to this indictment, in the District of Connecticut and elsewhere, defendants TRIUMPH CAPITAL GROUP, INC., FREDERICK W. MCCARTHY, CHARLES B. SPADONI, LISA A. THIESFIELD and BEN F. ANDREWS together with Paul J. Silvester and Christopher A. Stack, and others known and unknown to the Grand Jury, constituted an enterprise ("The Enterprise") as defined in Title 18, United States Code, § 1961(4), that is a

group of individuals associated in fact, the activities of which affected interstate commerce.

DEFENDANTS AND ASSOCIATES

2. At all times relevant to this indictment, defendant TRIUMPH CAPITAL GROUP, INC. ("TRIUMPH CAPITAL"), a Delaware corporation, was an investment firm which had its principal place of business in Boston, Massachusetts.

3. At all times relevant to this indictment, defendant TRIUMPH CAPITAL managed millions of dollars of Connecticut's Retirement Plans and Trust Fund's assets.

4. At all times relevant to this indictment, defendant FREDERICK W. MCCARTHY was the chairman of TRIUMPH CAPITAL.

5. From approximately August, 1997 to the present, defendant CHARLES B. SPADONI was the general counsel of TRIUMPH CAPITAL.

6. At all times relevant to this indictment, defendant LISA A. THIESFIELD and Paul J. Silvester, who is not charged as a defendant herein, had a close, personal relationship.

7. Between in or about September, 1997 to in or about May, 1998, defendant LISA A. THIESFIELD was an employee of the Connecticut State Treasurer's Office.

8. Between in or about May, 1998 and November, 1998, defendant LISA A. THIESFIELD was the campaign manager for the "Silvester for State Treasurer" Campaign.

9. Between in or about January, 1999 and in or about May, 1999, defendant LISA A. THIESFIELD was a full-time administrative assistant at the Hartford office of a business development and consulting firm.

10. At all times relevant to this indictment, defendant LISA A. THIESFIELD was the owner of a Connecticut limited liability company called LAT, LLC.

11. At all times relevant to this indictment, defendant LISA A. THIESFIELD was the sister-in-law of defendant BEN F. ANDREWS.

12. From in or about June, 1996 to in or about August, 1998, defendant BEN F. ANDREWS was employed as a managing director of a company which provided investment services to and to which the Connecticut State Treasurer's office paid fees. In approximately February, 1999, defendant BEN F. ANDREWS formed a company called Capital Marketing Investments, LLC ("CMI").

13. Defendant BEN F. ANDREWS ran as a Republican for Connecticut Secretary of State but was defeated in the November, 1998 election.

14. From on or about January 6, 1995 to approximately October 11, 1996, Paul J. Silvester was the Chief of Staff at the Office of the Connecticut State Treasurer. From on or about October 11, 1996 to approximately July 22, 1997, Paul J. Silvester was the Deputy Treasurer for the State of Connecticut.

15. On July 22, 1997, Paul J. Silvester was appointed Treasurer for the State of Connecticut when the elected State Treasurer resigned.

16. At all times relevant to this indictment, the Connecticut State Treasurer was the sole fiduciary for Connecticut's Retirement Plans and Trust Fund ("CRPTF") and thus had unilateral authority to make decisions about the investment of CRPTF's assets (hereinafter referred to as state pension assets.)

17. At all times relevant to this indictment, the Connecticut State Treasurer was responsible for managing CRPTF in the sole interest of the beneficiaries, which included approximately 150,000 teachers as well as state and municipal employees.

18. From on or about July 22, 1997 to on or about January 6, 1999, Paul J. Silvester served as the Treasurer for the State of Connecticut. Paul J. Silvester ran as the Republican candidate for Connecticut State Treasurer but was defeated in the November, 1998 election.

19. On or about July 28, 1998, Paul J. Silvester authorized a $100 million investment of state pension assets with an investment fund, identified herein as Fund A. On or about December 11, 1998, Paul J. Silvester authorized a $50 million increase in the investment of state pension assets with Fund A.

20. On or about November 11, 1998, Paul J. Silvester authorized a $200 million investment of state pension assets with Triumph Connecticut-II. Triumph Connecticut-II, a limited partnership controlled by TRIUMPH CAPITAL professionals, was organized in November, 1998 with a single limited partner, the State of Connecticut.

21. Between in or about January, 1999 and June, 1999, Paul J. Silvester was employed as a managing director in the Hartford office of a business development and consulting firm.

22. At all times relevant to this indictment, Christopher A. Stack, not named as a defendant herein, was a close associate of Paul J. Silvester and the sole member of a Connecticut limited liability company called KCATS, LLC.

23. In or about March, 1997, Paul J. Silvester and Christopher A. Stack reached an arrangement whereby Christopher A. Stack was to pay Paul J. Silvester a portion of the consultant fees that he (Stack) received because of state pension investments influenced or authorized by Paul J. Silvester.

24. As a result of the corrupt arrangement outlined in paragraph 23 above, Paul J. Silvester directed that Christopher A. Stack be compensated as a consultant in connection with

the investment of state pension assets with Fund A and Triumph Connecticut-II.

25. At all times relevant to this indictment, Peter D. Hirschl, not named as a defendant herein, was Paul J. Silvester's brother-in-law and an attorney.

26. As a result of the corrupt arrangement outlined in paragraph 23 above, between approximately September, 1997 and April, 1999, Christopher A. Stack provided Paul J. Silvester with approximately $276,000.

THE OBJECT OF THE RACKETEERING ACTIVITY

27. The purpose of the Racketeering Activity conducted through the Enterprise was to enrich the defendants and others through ongoing criminal activity, including bribery and fraud; to conceal the defendants' participation in the criminal activity through obstruction of justice and witness tampering; and to conceal Paul J. Silvester's participation in and enrichment from the criminal activity. That purpose was sought and accomplished by, among other means, corrupting the Connecticut pension investment process through the solicitation and payment of bribes, rewards and gratuities, all of which deprived the citizenry of Connecticut of the incumbent State Treasurer's honest services.

MANNER AND MEANS

28. The manner and means by which defendants and their associates conducted and participated in the conduct of the affairs of the Enterprise included the following:

a. Members and associates of the Enterprise endeavored to funnel monies to the "Silvester for State Treasurer" Campaign in exchange for the investment of state pension assets;

b. Members and associates of the Enterprise aided and abetted Paul J. Silvester in the solicitation, acceptance and agreement to accept corrupt payments, that is bribes, rewards,

and gratuities for, because of, or as consideration for pension fund investments;

c. Members and associates of the Enterprise agreed to pay bribes, rewards and gratuities in consideration for pension investments;

d. Members and associates of the Enterprise agreed to kick back a portion of the corrupt payments to Paul J. Silvester;

e. Members and associates of the Enterprise attempted to conceal that Paul J. Silvester was sharing in the corrupt payments made in connection with pension investments.

f. Members and associates of the Enterprise attempted to conceal their participation in the criminal activity through obstruction of justice and witness tampering.

THE RACKETEERING VIOLATION

29. From in or about March, 1997 to in or about the present, in the District of Connecticut and elsewhere, defendants TRIUMPH CAPITAL, FREDERICK W. MCCARTHY, CHARLES B. SPADONI, LISA A. THIESFIELD and BEN F. ANDREWS, together with others known and unknown to the Grand Jury, being persons employed by and associated with the Enterprise described above, which was engaged in and the activities of which affected interstate commerce, unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that Enterprise through a pattern of racketeering activity, that is through the commission of Racketeering Acts 1-6 as set forth below.

THE PATTERN OF RACKETEERING ACTIVITY

30. The pattern of racketeering activity as defined in Title 18, United States Code, §§ 1961(1) and 1961(5), consisted of the following acts:

Racketeering Act 1-Bribery
(Ben F. Andrews)

31. Paragraphs 1-28 above are realleged and incorporated by reference as though fully set forth herein.

32. At all times relevant to this indictment, there was in full force and effect, a criminal statute of the State of Connecticut at Conn. Gen. Stat. §53a-148 which provided:

> A public servant or person selected to be a public servant is guilty of bribe receiving if he solicits, accepts or agrees to accept from another person any benefit for, because of, or as consideration for his decision, opinion, recommendation, or vote.

33. At all times relevant to this indictment, Paul J. Silvester was a public servant as defined in Conn. Gen. Stat. §53a-146 which provided that a "Public Servant" is an officer or employee of government, elected or appointed, and any person participating as advisor, consultant or otherwise, paid or unpaid, in performing a governmental function.

34. At all times relevant to this indictment, Conn. Gen. Stat. §53a-146 provided that "Benefit" meant monetary advantage or anything regarded by the beneficiary as a monetary advantage, including benefit to any person or entity in whose welfare he is interested.

35. Between in or about April, 1998 and July, 1999, defendant BEN F. ANDREWS, Paul J. Silvester, Christopher Stack and others, known and unknown to the Grand Jury arranged, in return for a state pension investment, for BEN F. ANDREWS to receive a consulting contract, with the understanding that BEN F. ANDREWS would kick back a portion of the monies received by him to Paul J. Silvester through Christopher A. Stack.

36. Between in or about April, 1998 and July, 1998, Paul J. Silvester solicited a consulting contract, valued at approximately $1 million, for defendant BEN F. ANDREWS for,

because of, or as a consideration for Silvester's decision to invest in Fund A.

37. Between in or about May, 1998 and July, 1998, defendant BEN F. ANDREWS agreed with Paul J. Silvester and Christopher A. Stack that defendant BEN F. ANDREWS would split the $1 million corrupt payment ANDREWS was to receive with Christopher A. Stack, with the understanding that Christopher A. Stack would kick back a portion of the funds to Paul J. Silvester.

38. On or about June 3, 1998, BEN F. ANDREWS arranged for one-half of ANDREWS' payment from the investment of state pension assets with Fund A to be paid to KCATS, LLC, a company wholly owned by Christopher Stack.

39. On or about July 28, 1998, Paul J. Silvester signed closing documents investing $100 million of state pension assets with Fund A which entitled BEN F. ANDREWS and Christopher Stack to receive over time payments totaling $1 million.

40. Between in or about April, 1998 and July, 1999, in the District of Connecticut and elsewhere, defendant BEN F. ANDREWS together with Paul J. Silvester, Christopher Stack and others, known and unknown to the Grand Jury, did commit an act involving bribery, in that defendant BEN F. ANDREWS and Christopher A. Stack did aid and abet Paul J. Silvester, a public servant, to solicit, accept and agree to accept from another person a benefit, that is a consulting contract valued at $1 million, for, because of , and as a consideration for Paul J. Silvester's decision, opinion, recommendation, and vote, to invest $100 million of pension monies with Fund A in violation of Conn. Gen. Stat. §§ 53a-148 and 53a-8.

Racketeering Act 2
(Lisa A. Thiesfield, Frederick W. McCarthy, Charles B. Spadoni, Triumph Capital)

41. Paragraphs 1-28 above are realleged and incorporated by reference as though fully set forth herein. Defendants LISA A. THIESFIELD, FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL committed the following acts, any one of which alone constitutes Racketeering Act 2.

Racketeering Act 2A - Bribe Receiving
(Lisa A. Thiesfield)

42. At all times relevant to this indictment, there was in full force and effect, a criminal statute of the State of Connecticut at Conn. Gen. Stat. §53a-148 which provided:

> A public servant or person selected to be a public servant is guilty of bribe receiving if he solicits, accepts or agrees to accept from another person any benefit for, because of, or as consideration for his decision, opinion, recommendation, or vote

43. At all times relevant to this indictment, Paul J. Silvester was a public servant as defined in Conn. Gen. Stat. §53a-146 which provided that a "Public Servant" is an officer or employee of government, elected or appointed, and any person participating as advisor, consultant or otherwise, paid or unpaid, in performing a governmental function.

44. At all times relevant to this indictment, Conn. Gen. Stat. §53a-146 provided that "Benefit" meant monetary advantage or anything regarded by the beneficiary as a monetary advantage, including benefit to any person or entity in whose welfare he is interested.

45. Between in or about March, 1998 and November 8, 1998, defendant LISA A. THIESFIELD aided and abetted Paul J. Silvester in the receipt of benefits, that is $25,000 to defendant LISA A. THIESFIELD and financial support to the "Silvester for State Treasurer" Campaign from defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and

TRIUMPH CAPITAL in exchange for an investment of state pension assets in a TRIUMPH CAPITAL related investment fund.

46. Between in or about March, 1998 and November 8, 1998, in the District of Connecticut and elsewhere, defendant LISA A. THIESFIELD together with Paul J. Silvester and others, known and unknown to the Grand Jury, did commit an act involving bribe receiving in that defendant LISA A. THIESFIELD did aid and abet Paul J. Silvester, a public servant, to solicit, accept, and agree to accept from defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL benefits, that is financial support to LISA A. THIESFIELD and the "Silvester for State Treasurer" Campaign for, because of, and as a consideration for Paul J. Silvester's decision, opinion, recommendation, and vote, that is the investment of state pension assets in a TRIUMPH CAPITAL related investment fund in violation of Conn. Gen. Stat. §§ 53a-148 and 53a-8.

<u>Racketeering Act 2B-Bribery</u>
(Frederick W. McCarthy, Charles B. Spadoni, Triumph Capital)

47. At all times relevant to this indictment, there was in full force and effect a criminal statute of the State of Connecticut at Conn. Gen. Stat. §53a-147 which provided:

> A person is guilty of bribery if he promises, offers, confers, or agrees to confer upon a public servant or a person selected to be a public servant any benefit as consideration for the recipient's decision, opinion, recommendation or vote as a public servant or a person selected to be a public servant.

48. At all times relevant to this indictment, Paul J. Silvester was a public servant as defined in Conn. Gen. Stat. §53a-146 which provided that a "Public Servant" is an officer or employee of government, elected or appointed, and any person participating as advisor, consultant or otherwise, paid or unpaid, in performing a governmental function.

49. At all times relevant to this indictment, Conn. Gen. Stat. §53a-146 provided that "Benefit" meant monetary advantage or anything regarded by the beneficiary as a monetary advantage, including benefit to any person or entity in whose welfare he is interested.

50. Between in or about March, 1998 and November 8, 1998, defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL provided benefits, that is $25,000 to defendant LISA A. THIESFIELD and financial support to the "Silvester for State Treasurer" Campaign, to Paul J. Silvester in exchange for an investment of state pension assets in a TRIUMPH CAPITAL related investment fund.

51. Between on or about March, 1998 and November 8, 1998 in the District of Connecticut and elsewhere, defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL did commit an act involving bribery, in that they offered, conferred, and agreed to confer upon a public servant, the Connecticut State Treasurer Paul J. Silvester, benefits, that is financial support to LISA A. THIESFIELD and the "Silvester for State Treasurer" Campaign as consideration for Paul J. Silvester's decision, opinion, recommendation, and vote as a public servant, that is the investment of state pension assets in a TRIUMPH CAPITAL related investment fund in violation of Conn. Gen. Stat. § 53a-147.

<u>Racketeering Act 3-Bribery</u>
(Ben F. Andrews)

52. Paragraphs 1-28 above are realleged and incorporated by reference as though fully set forth herein.

53. At all times relevant to this indictment, there was in full force and effect a criminal statute of the State of Connecticut at Conn. Gen. Stat. §53a-147 which provided:

A person is guilty of bribery if he promises, offers, confers, or agrees to confer upon a public servant or a person selected to be a public servant any benefit as consideration for the recipient's decision, opinion, recommendation or vote as a public servant or a person selected to be a public servant.

54. At all times relevant to this indictment, Paul J. Silvester was a public servant as defined in Conn. Gen. Stat. §53a-146 which provided that a "Public Servant" is an officer or employee of government, elected or appointed, and any person participating as advisor, consultant or otherwise, paid or unpaid, in performing a governmental function.

55. At all times relevant to this indictment, Conn. Gen. Stat. §53a-146 provided that "Benefit" meant monetary advantage or anything regarded by the beneficiary as a monetary advantage, including benefit to any person or entity in whose welfare he is interested.

56. Between in or about November, 1998 through in or about July, 1999, in the District of Connecticut and elsewhere, defendant BEN F. ANDREWS did commit an act involving bribery, that is he offered, conferred and agreed to confer upon a public servant, the Connecticut State Treasurer Paul J. Silvester, benefits, that is money to Paul J. Silvester and Christopher Stack, as consideration for Paul J. Silvester's decision, opinion, recommendation, and vote as a public servant, to increase by $50 million the amount of state pension assets invested with Fund A in violation of Conn.Gen.Stat. § 53a-147.

Racketeering Act 4
(Lisa A. Thiesfield, Frederick W. McCarthy, Charles B. Spadoni, Triumph Capital)

57. Paragraphs 1-28 above are realleged and incorporated by reference as though fully set forth herein. Defendants LISA A. THIESFIELD, FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL committed the following acts, any one of which alone constitutes Racketeering Act 4.

Racketeering Act 4A-Bribe Receiving
(Lisa A. Thiesfield)

58. At all times relevant to this indictment, there was in full force and effect, a criminal statute of the State of Connecticut at Conn. Gen. Stat. §53a-148 which provided:

> A public servant or person selected to be a public servant is guilty of bribe receiving if he solicits, accepts or agrees to accept from another person any benefit for, because of, or as consideration for his decision, opinion, recommendation, or vote.

59. At all times relevant to this indictment, Paul J. Silvester was a public servant as defined in Conn. Gen. Stat. §53a-146 which provided that a "Public Servant" is an officer or employee of government, elected or appointed, and any person participating as advisor, consultant or otherwise, paid or unpaid, in performing a governmental function.

60. At all times relevant to this indictment, Conn. Gen. Stat. §53a-146 provided that "Benefit" means monetary advantage or anything regarded by the beneficiary as a monetary advantage, including benefit to any person or entity in whose welfare he is interested.

61. Between in or about November, 1998 and the present, in the District of Connecticut and elsewhere, defendant LISA A. THIESFIELD together with Paul J. Silvester, Christopher Stack and others, known and unknown to the Grand Jury, did commit an act involving bribe receiving in that defendant LISA A. THIESFIELD together with Christopher A. Stack did aid and abet Paul J. Silvester, a public servant, to solicit, accept, and agree to accept from defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL benefits, consulting contracts for LISA A. THIESFIELD and Christopher A. Stack, valued at approximately $2 million, for, because of, and as a consideration for Paul J. Silvester's decision, opinion, recommendation, or vote, that is an increased investment of state pension assets with

Triumph Connecticut-II in violation of Conn. Gen. Stat. §§ 53a-148 and 53a-8.

Racketeering Act 4B-Bribery
(Frederick W. McCarthy, Charles B. Spadoni, Triumph Capital)

62. At all times relevant to this indictment, there was in full force and effect a criminal statute of the State of Connecticut at Conn. Gen. Stat. §53a-147 which provided:

> A person is guilty of bribery if he promises, offers, confers, or agrees to confer upon a public servant or a person selected to be a public servant any benefit as consideration for the recipient's decision, opinion, recommendation or vote as a public servant or a person selected to be a public servant.

63. At all times relevant to this indictment, Paul J. Silvester was a public servant as defined in Conn. Gen. Stat. §53a-146 which provided that a "Public Servant" is an officer or employee of government, elected or appointed, and any person participating as advisor, consultant or otherwise, paid or unpaid, in performing a governmental function.

64. At all times relevant to this indictment, Conn. Gen. Stat. §53a-146 provided that "Benefit" meant monetary advantage or anything regarded by the beneficiary as a monetary advantage, including benefit to any person or entity in whose welfare he is interested.

65. Between on or about November, 1998 and the present, in the District of Connecticut and elsewhere, defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL did commit an act involving bribery, that is they offered, conferred, and agreed to confer upon a public servant, the Connecticut State Treasurer Paul J. Silvester, benefits, consulting contracts valued at approximately $2 million for Paul J. Silvester's close associates, LISA A. THIESFIELD and Christopher A. Stack, as consideration for Paul J. Silvester's decision, opinion, recommendation and vote as a public servant, that is an increased investment of state pension assets with Triumph Connecticut-II in violation of Conn. Gen. Stat. § 53a-147.

Racketeering Act 5-Obstruction of Justice
(Charles B. Spadoni, Triumph Capital)

66. Paragraphs 1-28 above are realleged and incorporated by reference as though fully set forth herein.

67. At all times relevant to this indictment, the following laptop computer was owned by defendant TRIUMPH CAPITAL and assigned to defendant CHARLES B. SPADONI: Compaq Notebook Pentium, 150 Mz, 16 MB RAM, 1.6 Gb ("laptop computer").

68. On or about May 25, 1999, a grand jury subpoena requesting all records, from 1997 to that date, related to the solicitation of and investment placement by the State of Connecticut was served on Triumph Connecticut-II.

69. On or around Memorial Day weekend, 1999, defendant CHARLES B. SPADONI discussed the existence of the grand jury subpoena served on Triumph Connecticut-II.

70. The laptop computer contained a software program entitled "Destroy-It" with a creation date of June 21, 1999. "Destroy-It" is designed to destroy and permanently overwrite files from the laptop computer hard drive.

71. Between on or about May 25, 1999 and in or about April, 2000, the exact dates being unknown to the Grand Jury, defendant CHARLES B. SPADONI deleted, transferred or used software programs to overwrite certain files and documents stored on the laptop computer hard drive which were relevant to the grand jury investigation.

72. Between in or about August, 1999 and in or about July, 2000, the exact dates being unknown to the Grand Jury, defendant CHARLES B. SPADONI deleted, destroyed or failed to produce to the grand jury computer diskettes which contained documents and information

relevant to the grand jury investigation.

73. Between on or about May 25, 1999 and in or about July, 2000, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, defendants CHARLES B. SPADONI and TRIUMPH CAPITAL did corruptly influence, obstruct, and impede, and did endeavor to influence, obstruct, and impede, the due administration of justice in a federal grand jury in the District of Connecticut by knowingly and willfully deleting, overwriting, destroying or failing to produce records which were relevant to a grand jury investigation, believing that production of the records would likely be ordered by the grand jury, in violation of Title 18, United States Code, § 1503.

<u>Racketeering Act 6- Witness Tampering</u>
(Ben F. Andrews)

74. Paragraphs 1-28 above are realleged and incorporated by reference as though fully set forth herein.

75. On or about July 16, 1999, defendant BEN F. ANDREWS was served with a grand jury subpoena and interviewed by federal law enforcement agents in regard to the investment of state pension assets with Fund A.

76. On or about April 19, 2000, defendant BEN F. ANDREWS directed a witness, identified as Witness A, to counsel a former volunteer campaign worker for ANDREWS, identified as Witness B, to tell federal law enforcement agents that the money the campaign worker had contributed to the "Silvester for State Treasurer" Campaign was her money and that she had wanted to make the contribution, when defendant BEN F. ANDREWS knew that such a statement was false because he had provided the cash for the contribution and the contribution

had been made at his direction.

77. On or about April 19, 2000, defendant BEN F. ANDREWS also intimated to Witness A that she too should tell federal law enforcement agents that the money Witness A had contributed to the "Silvester for State Treasurer" Campaign was her money and that she had wanted to make the contribution, when defendant BEN F. ANDREWS knew that such a statement was false because he had provided the cash for the contribution and that the contribution had been made at his direction.

78. On or about April 19, 2000, in the District of Connecticut and elsewhere, defendant, BEN F. ANDREWS, did knowingly and corruptly persuade and attempt to persuade Witnesses A and B to provide false information, with intent to influence the testimony of Witnesses A and B in a federal grand jury in the District of Connecticut in violation of Title 18, United States Code, § 1512(b)(1).

All in violation of Title 18, United States Code, § 1962(c).

<u>COUNT TWO-Racketeering Conspiracy</u>
(18 U.S.C. § 1962(d))
(Triumph Capital, Frederick W. McCarthy, Charles B. Spadoni,
Lisa A. Thiesfield, Ben F. Andrews)

1. The allegations contained in paragraphs 1-28 and 31-78 of Count One are realleged and incorporated by reference as though fully set forth herein.

2. From in or about March, 1997 to in or about the present, in the District of Connecticut and elsewhere, defendants BEN F. ANDREWS, LISA A. THIESFIELD, FREDERICK W. MCCARTHY, CHARLES B. SPADONI, and TRIUMPH CAPITAL, being persons employed by and associated with the above-described Enterprise, which was engaged in and the activities of

which affected interstate commerce, unlawfully did combine, conspire, confederate, and agree with each other, and with persons known and unknown to the Grand Jury, to violate Title 18, United States Code § 1962(c), that is to conduct and participate directly and indirectly in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code §§ 1961(1) and 1961(5), which pattern of racketeering activity is set forth more fully as racketeering acts 1-6 of Count One, which are realleged and incorporated by reference as though fully set forth herein.

3. It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Enterprise.

All in violation of Title 18 U.S.C. § 1962(d).

COUNT THREE - Theft/Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. §§ 666(a)(1)(B) and 2)
(Ben F. Andrews)

1. Paragraphs 2-26 of Count One are realleged and incorporated by reference as though fully set forth herein.

2. At all times relevant to this indictment, Paul J. Silvester was an agent of state government as defined in Title 18, United States Code § 666(d)(1).

3. At all times relevant to this indictment, the Connecticut State Treasurer's Office received benefits in excess of $10,000 under a Federal program involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of Federal assistance, including but not limited to Federal monies in excess of $10,000 which flowed through the CRPTF as retirement contributions.

4. Between in or about April, 1998 and July, 1999, in the District of Connecticut and

elsewhere, defendant BEN F. ANDREWS, Christopher Stack and others, known and unknown to the Grand Jury, did aid and abet Paul J. Silvester, knowingly, willfully and corruptly to solicit, demand, accept and agree to accept a thing of value, that is a consulting contract valued at approximately $1 million, intending to be influenced and rewarded in connection with the business, transaction, and series of transactions of the Connecticut State Treasurer's Office involving a thing of value of $5,000 or more, that is the investment of $100 million of state pension assets with Fund A.

All in violation of Title 18, United States Code, §§ 666(a)(1)(B) and 2.

COUNTS FOUR through SIX-Mail/Wire Fraud/Theft of Honest Services
(18 U.S.C. §§ 1341, 1343, 1346 and 2)
(Ben F. Andrews)

1. Paragraphs 2-26 of Count One are realleged and incorporated by reference as though fully set forth herein.

2. As defined in Title 18, United States Code, § 1346, the term "scheme and artifice to defraud" includes a scheme to deprive another of the intangible right of honest services.

3. Beginning in or about April, 1998 and continuing through in or about July, 1999, defendant BEN F. ANDREWS, along with Paul J. Silvester, Christopher Stack and others, known and unknown to the Grand Jury, in the District of Connecticut and elsewhere, devised and intended to devise a scheme and artifice to defraud and deprive the citizenry of Connecticut of their right to the State Treasurer Paul J. Silvester's honest services, performed free from deceit, favoritism, bias, conflict of interest and self-enrichment.

4. The purpose of the scheme was for defendant BEN F. ANDREWS, together with Paul J. Silvester and Christopher A. Stack, to use the Connecticut State Treasurer's Office to enrich

themselves through the improper exercise of Paul J. Silvester's official position and with the intent to deceive the citizenry of Connecticut.

5. It was part of the scheme and artifice to defraud that Paul J. Silvester solicited a consulting contract for defendant BEN F. ANDREWS from Fund A while at the same time Paul J. Silvester used his official position to benefit Fund A through the investment of $100 million of state pension assets.

6. It was further part of the scheme and artifice to defraud that defendant BEN F. ANDREWS provided financial support to the "Silvester for State Treasurer" Campaign, in circumvention of state laws, when Paul J. Silvester used his official position to the advantage of defendant BEN F. ANDREWS.

7. It was further part of the scheme and artifice to defraud that defendant BEN F. ANDREWS agreed that one-half of the corrupt payment from the investment of state pension assets with Fund A be paid to KCATS, LLC, a company wholly owned by Christopher A. Stack, with the knowledge that a portion of the money would be kicked back to Paul J. Silvester.

8. For the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive the citizenry of Connecticut of the honest services of the incumbent State Treasurer Paul J. Silvester, on or about the dates listed below, in the District of Connecticut and elsewhere, defendant BEN F. ANDREWS did knowingly cause to be sent and delivered by any private or commercial interstate carrier the following:

| COUNT | Date | Use of A Commercial Interstate Carrier |
|---|---|---|
| 4 | 6/3/98 | Letter to Fund A sent via Federal Express from law firm, re: request to initial ANDREWS' retention letter |

9. For the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive the citizenry of Connecticut of the honest services of the incumbent State Treasurer Paul J. Silvester, on or about the dates listed below, in the District of Connecticut and elsewhere, defendant BEN F. ANDREWS did knowingly cause to be transmitted in interstate commerce by means of wire communication certain signs, signals and sounds the following:

| Count | Date | Use of Interstate Wires |
|---|---|---|
| 5 | 8/4/98 | Facsimile from law firm in NY to Fund A in CT, re: payment to ANDREWS |
| 6 | 8/11/98 | Facsimile from law firm in NY to Fund A in CT, re: ANDREWS' payments |

All in violation of Title 18, United States Code, §§ 1341, 1343, 1346 and 2.

COUNT SEVEN - Theft/Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. §§ 666(a)(2) and 2)
(Ben F. Andrews)

1. Paragraphs 2-26 of Count One and paragraphs 2-3 of Count Three are realleged and incorporated by reference as though fully set forth herein.

2. Beginning in or about November, 1998 and continuing through in or about July, 1999, in the District of Connecticut and elsewhere, defendant BEN F. ANDREWS together with others, known and unknown to the Grand Jury, knowingly, willfully and corruptly gave, offered, and agreed to give a thing of value, that is money to Christopher A. Stack and Paul J. Silvester, with the intent to influence and reward an agent of a State government, Paul J. Silvester, in connection with the business, transaction or series of such transactions of the Connecticut State Treasurer's Office involving a thing of value of $5,000 or more, that is a $50 million increase in the investment of state pension assets with Fund A.

All in violation of Title 18, United States Code, §§ 666(a)(2) and 2.

COUNTS EIGHT through TEN - Mail Fraud/Theft of Honest Services
(18 U.S.C. §§ 1341, 1346 and 2)
(Ben F. Andrews)

1. Paragraphs 2-26 of Count One and paragraph 2 of Count Four are realleged and incorporated by reference as though fully set forth herein.

2. Beginning in or about November, 1998 and continuing through in or about July, 1999, defendant BEN F. ANDREWS, along with Paul J. Silvester, Christopher Stack and others, known and unknown to the Grand Jury, in the District of Connecticut and elsewhere, devised and intended to devise a scheme and artifice to defraud and deprive the citizenry of Connecticut of their right to the incumbent Connecticut State Treasurer Paul J. Silvester's honest services, performed free from deceit, favoritism, bias, conflict of interest and self-enrichment.

3. The purpose of the scheme and artifice to defraud was for BEN F. ANDREWS, together with Paul J. Silvester and Christopher A. Stack, to use the Connecticut State Treasurer's Office to enrich themselves through the improper exercise of Paul J. Silvester's official position and with the intent to deceive the citizenry of Connecticut.

4. It was part of the scheme and artifice to defraud that, after Paul J. Silvester's November 3, 1998 defeat for State Treasurer, defendant BEN F. ANDREWS came to Paul J. Silvester and asked him to invest more money in Fund A before Paul J. Silvester left office.

5. It was further part of the scheme and artifice to defraud that the increase of state pension assets with Fund A would result in a financial benefit to defendant BEN F. ANDREWS.

6. It was further part of the scheme and artifice to defraud that defendant BEN F.

ANDREWS agreed that one-half of the payment that he would receive from the increase in the investment of state pension assets with Fund A would be paid to KCATS, LLC, a company wholly owned by Christopher A. Stack, with the understanding that Christopher A. Stack was to kick back a portion of that money to Paul J. Silvester. As a result of the scheme and artifice to defraud, the citizens of Connecticut were deprived of the honest services of Paul J. Silvester in that Silvester had an undisclosed and improper motivation to increase the state pension assets invested with Fund A, that is to enrich ANDREWS, Christopher A. Stack and himself.

7. After reaching an agreement with defendant BEN F. ANDREWS that Christopher A. Stack would be paid because of the increase in the investment of state pension assets with Fund A, and on or about December, 11, 1998, Paul J. Silvester authorized a $50 million increase of state pension assets with Fund A.

8. For the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive the citizenry of Connecticut of the honest services of State Treasurer Paul J. Silvester, on or about the date listed below, in the District of Connecticut and elsewhere, defendant BEN F. ANDREWS did knowingly cause to be sent and delivered by any private or commercial interstate carrier the following:

| Count | Date | Use of Commercial Carrier |
|---|---|---|
| 8 | 12/8/98 | Letter sent via Federal Express from NY law firm to BEN F. ANDREWS, re: the $50 million increase. |

9. For the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive the citizenry of Connecticut of the honest services of State Treasurer Paul J. Silvester, on or about the date listed below, in the District of Connecticut and elsewhere,

defendant BEN F. ANDREWS did knowingly cause to be placed in an authorized depository for mail matter the following:

| Count | Date | Use of Mails |
|---|---|---|
| 9 | 12/22/98 | Letter from NY law firm to the Chairman of Fund A, re: payments due from the $50 million increase. |
| 10 | 2/4/99 | Letter from NY law firm to the Chairman of Fund A re: CT's increased investment of state pension assets. |

All in violation of Title 18, United States Code, §§ 1341, 1346 and 2.

COUNT ELEVEN-Conspiracy To Money Launder
(18 U.S.C. § 1956(h))
(Ben F. Andrews)

General Allegations

1. Paragraphs 2-26 of Count One are realleged and incorporated by reference as though fully set forth herein.

2. At all times relevant to this indictment, the activities of Citibank and Fleet Bank affected interstate commerce.

The Conspiracy

3. From in or about March, 1997 through in or about July, 1999, in the District of Connecticut and elsewhere, defendant BEN F. ANDREWS together with Paul J. Silvester and Christopher A. Stack, and others, known and unknown to the Grand Jury, did unlawfully, willfully and knowingly combine, conspire, confederate and agree with each other to commit certain offenses against the United States as follows:

Knowing that the property involved in a financial transaction represented the

proceeds of some form of unlawful activity, to conduct and attempt to conduct such a financial transaction, which in fact involved the proceeds of a specified unlawful activity, that is solicitation and receipt of corrupt payments in violation of Title 18 U.S.C. § 666, receipt of a bribe in violation of Conn. Gen. Stat. § 53a-148, or mail/wire fraud in violation of Title 18 U.S.C. §§ 1341 and 1343, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of a specified unlawful activity in violation of Title 18 U.S.C. § 1956(a)(1)(B)(i).

Manner and Means

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

4. Defendant BEN F. ANDREWS, Paul J. Silvester, and Christopher A. Stack agreed that monies paid to ANDREWS from the investment of state pension assets with Fund A, which were the proceeds of a specified unlawful activity, would be split between the defendant BEN F. ANDREWS, Paul J. Silvester and Christopher A. Stack.

5. As part of the conspiracy, defendant BEN F. ANDREWS, Paul J. Silvester, and Christopher A. Stack agreed that BEN F. ANDREWS would retain Christopher Stack as a partner and split the monies BEN F. ANDREWS received from the investment of state pension assets with Fund A.

6. Defendant BEN F. ANDREWS, Paul J. Silvester, and Christopher A. Stack understood that the arrangement was a means to make corrupt payments to Paul J. Silvester.

7. As further part of the conspiracy, Paul J. Silvester and Christopher A. Stack agreed that Christopher A. Stack would retain Paul J. Silvester's brother-in-law, Peter D. Hirschl, purportedly to perform legal services when, in fact, the hiring was a means to make corrupt payments to Paul J. Silvester, not to perform legitimate legal services.

Overt Acts

8. In furtherance of the conspiracy and to achieve the objects thereof, defendant BEN F. ANDREWS, Paul J. Silvester, Christopher A. Stack and others, known and unknown to the Grand Jury, committed and caused to be committed at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

9. On or about June 3, 1998, BEN F. ANDREWS arranged for one-half of his payment from the investment of state pension assets with Fund A be paid to KCATS, LLC, a company wholly owned by Christopher A. Stack.

10. On or about September 2, 1998, a $100,000.00 check payable to KCATS, LLC was issued from a Citibank account. Christopher A. Stack deposited the check to a Citibank account, Account No. 45356131, in the name of KCATS, LLC.

11. On or about December 8, 1998, defendant BEN F. ANDREWS arranged for one-half of his payment from a $50 million increase of state pension assets with Fund A be paid to KCATS, LLC, a company wholly owned by Christopher A. Stack.

12. On or about January 13, 1999, a $50,000 check payable to KCATS, LLC was issued from a Citibank account. Christopher A. Stack deposited the check to a Citibank account, Account No. 45356131, in the name KCATS, LLC.

13. On or about December 31, 1998, Christopher A. Stack mailed to Peter D. Hirschl a $100,000.00 check from a Citibank account, Account No. 45356131, in the name of KCATS, LLC. Peter D. Hirschl deposited the check to a Fleet Bank Account, Account No, 8919100, in the name of Attorney Peter D. Hirschl.

14. On or about February 2, 1999, at the direction of Paul J. Silvester, Peter D. Hirschl

transferred $100,000.00 from the Fleet Account to an Advest Account, Account No. 218-00182, in the name Peter D. Hirschl, and purchased Connecticut Tax Free Bonds.

15. On or about February 18, 1999, a $100,000.00 check payable to KCATS, LLC was issued from a Citibank account. Christopher A. Stack deposited the check to a Citibank account, Account No. 45356131, in the name of KCATS, LLC.

16. On or about March 19, 1999, Christopher A. Stack, at the request of Paul J. Silvester, hand-delivered a second check in the amount of $130,000.00 from a Citibank account, Account No. 45356131, in the name of KCATS, LLC.

17. On or about March 22, 1999, Paul J. Silvester delivered the $130,000.00 check to Peter D. Hirschl who deposited the check to the Fleet Account, Account No. 8919100, in the name Attorney Peter D. Hirschl.

18. On or about April 13, 1999, at the direction of Paul J. Silvester, Peter D. Hirschl transferred $130,000.00 from the Fleet Account to an Advest Account, Account No. 218-00182, and purchased Connecticut Tax Free Bonds on approximately April 16, 1999.

All in violation of Title 18, United States Code, § 1956(h).

COUNT TWELVE-False Statement
(18 U.S.C. § 1001)
(Ben F. Andrews)

1. Paragraphs 2-26 of Count One are realleged and incorporated by reference as though fully set forth herein.

2. On or about July 16, 1999, in the District of Connecticut, defendant, BEN F. ANDREWS, in a matter within the jurisdiction of the Federal Bureau of Investigation ("F.B.I.")

and the Internal Revenue Service Criminal Investigative Division ("IRS-CID"), both agencies of the executive branch of the Government of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, in that defendant BEN F. ANDREWS told special agents of the FBI and of the IRS-CID who were then investigating the actions of Paul J. Silvester, the former Treasurer for the State of Connecticut, that he (ANDREWS) had contacted Christopher Stack to become involved in an investment deal by the State of Connecticut with Fund A because he felt that Stack would be helpful in finalizing the deal with the Treasurer, but that he (ANDREWS) had not discussed this arrangement with Stack in front of Paul J. Silvester, when in truth and in fact, as the defendant BEN F. ANDREWS there and then well knew, after defendant BEN F. ANDREWS had offered to kickback to Paul Silvester a portion of the fees that ANDREWS would earn from the investment of state pension assets with Fund A, Paul Silvester directed ANDREWS to take on Christopher Stack as a partner and split the payment resulting from the investment with Fund A.

All in violation of Title 18, United States Code § 1001.

<u>COUNT THIRTEEN-Witness Tampering</u>
(18 U.S.C. § 1512(b)(1))
(Ben F. Andrews)

1. Paragraphs 2-26 of Count One are realleged and incorporated by reference as though fully set forth herein.

2. On or about July 16, 1999, defendant BEN F. ANDREWS was served with a grand jury subpoena and interviewed by federal law enforcement agents in regard to the investment of state pension assets with Fund A.

3. On or about April 19, 2000, defendant BEN F. ANDREWS directed a witness, identified as Witness A, to counsel a former volunteer campaign worker for ANDREWS, identified as Witness B, to tell federal law enforcement agents that the money the campaign worker had contributed to the "Silvester for State Treasurer" Campaign was her money and that she had wanted to make the contribution, when defendant BEN F. ANDREWS knew that such a statement was false because he had provided the cash for the contribution and the contribution had been made at his direction.

4. On or about April 19, 2000, defendant BEN F. ANDREWS also intimated to Witness A that she too should tell federal law enforcement agents that the money Witness A had contributed to the "Silvester for State Treasurer" Campaign was her money and that she had wanted to make the contribution, when defendant BEN F. ANDREWS knew that such a statement was false because he had provided the cash for the contribution and that the contribution had been made at his direction.

5. On or about April 19, 2000, in the District of Connecticut, defendant BEN F. ANDREWS did knowingly and corruptly persuade and attempt to persuade Witnesses A and B to provide false information, with the intent to influence the testimony of Witnesses A and B in a federal grand jury in the District of Connecticut.

All in violation of Title 18, United States Code, § 1512(b)(1).

<u>COUNT FOURTEEN - Theft/Bribery Concerning Programs Receiving Federal Funds</u>
(18 U.S.C. §§ 666(a)(1)(B) and 2)
(Lisa A. Thiesfield)

1. Paragraphs 2-26 of Count One and paragraphs 2-3 of Count Three are realleged and incorporated by reference as though fully set forth herein

2. Between in or about March, 1998 and November 8, 1998, defendant LISA A. THIESFIELD aided and abetted Paul J. Silvester in the receipt of things of value, that is $25,000 to defendant LISA A. THIESFIELD and financial support to the "Silvester for State Treasurer" Campaign, from defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL in exchange for an investment of state pension assets in a TRIUMPH CAPITAL related investment fund.

3. Beginning in or about March, 1998 and continuing through on or about November 8, 1998, in the District of Connecticut and elsewhere, defendant LISA A. THIESFIELD and others, known and unknown to the Grand Jury, did aid and abet Paul J. Silvester to knowingly, willfully and corruptly solicit, demand, accept, and agree to accept things of value, that is financial support to LISA A. THIESFIELD and the "Silvester for State Treasurer" Campaign, intending to be influenced and rewarded in connection with any business, transaction or series of transactions of the Connecticut State Treasurer's Office involving a thing of value of $5,000 or more, that is the investment of state pension assets in a TRIUMPH CAPITAL related investment fund.

All in violation of Title 18, United States Code, §§ 666(a)(1)(B) and 2.

<u>COUNT FIFTEEN - Theft/Bribery Concerning Programs Receiving Federal Funds</u>
(18 U.S.C. §§ 666(a)(2) and 2)
(Frederick W. McCarthy, Charles B. Spadoni, Triumph Capital)

1. Paragraphs 2-26 of Count One and paragraphs 2-3 of Count Three are realleged and incorporated by reference as though fully set forth herein.

2. Between in or about March, 1998 and November 8, 1998, defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL provided things of value,

that is $25,000 to defendant LISA A. THIESFIELD and financial support to the "Silvester for State Treasurer" Campaign, to Paul J. Silvester in exchange for an investment of state pension assets in a TRIUMPH CAPITAL related investment fund.

3. Beginning in or about March, 1998 and continuing through on or about November 8, 1998, in the District of Connecticut and elsewhere, defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI, and TRIUMPH CAPITAL together with others, known and unknown to the Grand Jury, knowingly, willfully and corruptly gave, offered, and agreed to give things of value, that is financial support to LISA A. THIESFIELD and the "Silvester for State Treasurer" Campaign, with the intent to influence and reward an agent of a State government, Paul J. Silvester, in connection with any business, transaction and series of such transactions of the Connecticut State Treasurer's Office involving a thing of value of $5,000 or more, that is the investment of state pension assets with a TRIUMPH CAPITAL related investment fund.

All in violation of Title 18, United States Code, §§ 666(a)(2) and 2.

COUNTS SIXTEEN and SEVENTEEN - Mail Fraud/Theft of Honest Services
(18 U.S.C. §§ 1341, 1346 and 2)
(Lisa A. Thiesfield, Frederick W. McCarthy, Charles B. Spadoni, Triumph Capital)

1. Paragraphs 2-26 of Count One and paragraph 2 of Count Four are realleged and incorporated by reference as though fully set forth herein.

The Scheme

2. Beginning in or about March, 1998 and continuing through on or about November 8, 1998 defendants LISA A. THIESFIELD, FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL, along with Paul J. Silvester and others, known and

unknown to the Grand Jury, in the District of Connecticut and elsewhere, devised and intended to devise a scheme and artifice to defraud and deprive the citizenry of Connecticut of their right to the State Treasurer Paul J. Silvester's honest services, that is to perform his duties free from deceit, favoritism, bias, conflict of interest and self-enrichment.

The Purpose Of The Scheme

3. It was the purpose of the scheme and artifice to defraud that defendants LISA A. THIESFIELD, FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL agreed with Paul J. Silvester and others, known and unknown to the Grand Jury, to provide financial support to LISA A. THIESFIELD and the "Silvester for State Treasurer" Campaign, through various means and in violation of state laws, with the intent to influence and cause Paul J. Silvester to deviate from the honest performance of his position as sole fiduciary for CRPTF and to secure ongoing favorable treatment from Paul J. Silvester in derogation of the public's right to impartial, conflict free decision-making and with the intent to deceive the citizenry of Connecticut.

Manner And Means Of The Scheme

4. It was part of the scheme and artifice to defraud that defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL, having investment business with and seeking additional investment business from the Connecticut State Treasurer's Office, agreed with defendant LISA A. THIESFIELD and Paul J. Silvester to provide financial benefits to defendant THIESFIELD and the "Silvester for State Treasurer" Campaign in exchange for an investment of state pension assets in a TRIUMPH CAPITAL related investment fund.

5. It was further part of the scheme and artifice to defraud that on or about May 1, 1998,

defendant CHARLES B. SPADONI, on behalf of defendant TRIUMPH CAPITAL, entered into a consultant contract with defendant LISA A. THIESFIELD, acting through LAT, LLC, which contract was a cover to provide money to defendant THIESFIELD to work as the campaign manager on the "Silvester for State Treasurer" Campaign.

6. It was further part of the scheme and artifice to defraud that defendant FREDERICK W. MCCARTHY approved the payment of $25,000 to defendant LISA A. THIESFIELD.

7. It was further part of the scheme and artifice to defraud that FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL and others, known and unknown to the Grand Jury, agreed to provide a benefit to Paul J. Silvester by raising money for the "Silvester for State Treasurer" Campaign but, to do so, would have to circumvent state laws which sought to prevent individuals, who have a financial interest in the business of the State Treasurer's Office, from attempting to influence the decisions of the Treasurer's Office by contributing to and soliciting for a Treasurer's campaign.

8. It was part of the scheme and artifice to defraud that, because state law prohibited FREDERICK W. MCCARTHY, CHARLES B. SPADONI and employees of TRIUMPH CAPITAL from contributing to the "Paul J. Silvester for Treasurer" Campaign, defendants FREDERICK W. MCCARTHY and TRIUMPH CAPITAL agreed to raise approximately $100,000 for the Connecticut Republican Party ("CRP") in order to benefit Paul J. Silvester and the "Silvester for State Treasurer" Campaign.

9. It was part of the scheme and artifice to defraud that Paul J. Silvester reached an arrangement with the chairman of the CRP under which Paul J. Silvester expected that the CRP would give to the "Silvester for State Treasurer" Campaign a percentage of the monies

contributed to the CRP as a result of the efforts of Paul J. Silvester and the "Silvester for State Treasurer" Campaign.

10. It was further part of the scheme and artifice to defraud that defendants LISA A. THIESFIELD, CHARLES B. SPADONI and TRIUMPH CAPITAL were aware that Paul J. Silvester had an arrangement with the CRP whereby the "Silvester for State Treasurer" Campaign would benefit by getting back from the CRP a portion of the monies raised for the CRP from defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL.

11. It was further part of the scheme and artifice to defraud that defendant FREDERICK W. MCCARTHY did not contribute to the CRP in his own name, but rather, did exceed the $5,000 individual campaign limit by providing his personal funds to one individual and making funds available to other individuals, known and unknown to the Grand Jury, to contribute to the CRP.

12. It was further part of the scheme and artifice to defraud that defendant CHARLES B. SPADONI, who was prohibited by state law from giving to the "Silvester for State Treasurer" Campaign, disguised his contributions to the "Silvester for State Treasurer" Campaign through the use of relatives.

Use Of the Mails In Furtherance Of The Scheme

13. For the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive the citizenry of Connecticut of the honest services of the incumbent State Treasurer Paul J. Silvester on or about the dates listed below, in the District of Connecticut and elsewhere, defendants LISA A. THIESFIELD, FREDERICK MCCARTHY, CHARLES B.

SPADONI and TRIUMPH CAPITAL did knowingly cause to be placed in an authorized depository for mail matter or caused to be sent or delivered by any private or commercial interstate carrier the following:

| Count | Date | Item Mailed or Sent Via Private or Commercial Interstate Carrier |
|---|---|---|
| 16 | June, 1998 | Letter from CRP to Kathryn McCarthy, 4028 Spruce Street Philadelphia, PA. |
| 17 | July 9, 1998 | A statement addressed to the Office of the Secretary of State from the "Silvester for State Treasurer" Campaign. |

All in violation of Title 18, United States Code, §§ 1341, 1346 and 2.

COUNT EIGHTEEN - Theft/Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. §§ 666(a)(1)(B) and 2)
(Lisa A. Thiesfield)

1. Paragraphs 2-26 of Count One and paragraphs 2-3 of Count Three are realleged and incorporated by reference as though fully set forth herein.

2. Beginning in or about November, 1998 and continuing through in or about the present, in the District of Connecticut and elsewhere, defendant LISA A. THIESFIELD, Christopher Stack and others, known and unknown to the Grand Jury, did aid and abet Paul J. Silvester knowingly, willfully and corruptly to solicit, demand, accept, and agree to accept things of value, that is consulting contracts valued at approximately $2 million, intending to be influenced and rewarded in connection with any business, transaction or series of transactions of the Connecticut State Treasurer's Office involving a thing of value of $5,000 or more, that is an increased

investment of state pension assets with Triumph Connecticut-II.

All in violation of Title 18, United States Code, §§ 666(a)(1)(B) and 2.

COUNT NINETEEN - Theft/Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. §§ 666(a)(2) and 2)
(Frederick W. McCarthy, Charles B. Spadoni, Triumph Capital)

1. Paragraphs 2-26 of Count One are realleged and paragraphs 2-3 of Count Three are realleged and incorporated by reference as though fully set forth herein

2. Beginning in or about November, 1998 and continuing through in or about the present, in the District of Connecticut and elsewhere, defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI, and TRIUMPH CAPITAL together with others, known and unknown to the Grand Jury, knowingly, willfully and corruptly gave, offered, and agreed to give things of value, that is consulting contracts valued at approximately $2 million to LISA A. THIESFIELD and Christopher A. Stack, two close associates of Paul J. Silvester, with the intent to influence and reward an agent of a State government, Paul J. Silvester, in connection with any business, transaction or series of such transactions of the Connecticut State Treasurer's Office involving a thing of value of $5,000 or more, that is an increased investment of state pension assets with Triumph Connecticut-II.

All in violation of Title 18, United States Code, §§ 666(a)(2) and 2.

COUNTS TWENTY through TWENTY-THREE- Wire Fraud/Theft of Honest Services
(18 U.S.C. §§ 1343, 1346 and 2)
(Lisa A. Thiesfield, Frederick W. McCarthy, Charles B. Spadoni, Triumph Capital)

1. Paragraphs 2-26 of Count One and paragraph 2 of Count Four are realleged and

incorporated by reference as though fully set forth herein.

2. Beginning in or about November, 1998 and continuing through the present, defendants LISA A. THIESFIELD, FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL, along with Paul J. Silvester and Christopher A. Stack and others, known and unknown to the Grand Jury, in the District of Connecticut and elsewhere, devised and intended to devise a scheme and artifice to defraud and deprive the citizenry of Connecticut of their right to the incumbent Connecticut State Treasurer Paul J. Silvester's honest services, performed free from deceit, favoritism, bias, conflict of interest and self-enrichment.

3. The purpose of the scheme was for defendants LISA A. THIESFIELD, FREDERICK MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL together with Paul J. Silvester and Christopher A. Stack to use the Office of the Connecticut State Treasurer to enrich themselves through the improper exercise of Paul J. Silvester's official position and with the intent to deceive the citizenry of Connecticut.

4. It was part of the scheme and artifice to defraud that Paul J. Silvester solicited consulting contracts valued at approximately $2 million for his close associates, LISA A. THIESFIELD and Christopher A. Stack, from FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL in return for which Paul J. Silvester used his official position to benefit FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL through an increased investment of state pension assets with Triumph Connecticut-II.

5. It was further part of the scheme and artifice to defraud, that defendants FREDERICK MCCARTHY, CHARLES SPADONI and TRIUMPH CAPITAL together with Paul J. Silvester,

as Trustee for CRPTF, agreed to a contract which did not include certain protections for CRPTF and which limited the Connecticut State Treasurer's ability to carry out the role of sole fiduciary for CRPTF in that the contract allowed for the draw down at one time, rather than in installments, of all capital committed by Paul J. Silvester and did not include a "no fault divorce" clause.

6. It was further part of the scheme and artifice to defraud that Paul Silvester and Christopher Stack had an arrangement that Christopher Stack would kick back to Paul J. Silvester money that Stack received from the consultant contract which Paul J. Silvester obtained for him from TRIUMPH CAPITAL.

7. It was further part of the scheme and artifice to defraud that defendant LISA A. THIESFIELD understood and discussed with Paul J. Silvester that Silvester expected LISA A. THIESFIELD to kick back a portion of the money she received from the consultant contract which Paul J. Silvester had obtained for her from TRIUMPH CAPITAL.

8. It was part of the scheme and artifice to defraud that defendants FREDERICK W. MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL concealed the corrupt arrangements with THIESFIELD and Stack from other TRIUMPH CAPITAL employees.

9. For the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive the citizenry of Connecticut of the honest services of the incumbent State Treasurer, Paul J. Silvester, on or about the dates listed below, in the District of Connecticut and elsewhere, defendants LISA A. THIESFIELD, FREDERICK MCCARTHY, CHARLES B. SPADONI and TRIUMPH CAPITAL did knowingly cause to be transmitted in interstate commerce by means of a wire communication certain signs, signals and sounds, the following:

| Count | Date | Use of Interstate Wires |
|---|---|---|
| 20 | 11/9/98 | Facsimile of draft contract from TRIUMPH CAPITAL'S Boston, Massachusetts office to Christopher Stack in Darien, CT. |
| 21 | 11/10/98 | Facsimile of a draft Partnership Agreement from a law firm in Massachusetts to a law firm in Connecticut. |
| 22 | 12/1/98 | Facsimile of letter from TRIUMPH CAPITAL in Boston, Massachusetts to an investment officer at the Treasurer's Office in Hartford, Connecticut which requested a $200 million capital contribution. |
| 23 | 1/19/99 | Interstate wire of $166,667 from TRIUMPH CAPITAL account at BankBoston in Massachusetts to KCATS, LLC account at a Citibank, account in Connecticut. |

All in violation of Title 18, United States Code, §§ 1343, 1346 and 2.

COUNT TWENTY-FOUR-Obstruction of Justice
(18 U.S.C. § 1503)
(Charles B. Spadoni, Triumph Capital)

1. Paragraphs 2-26 of Count One are realleged and incorporated by reference as though fully set forth herein.

2. At all times relevant to this indictment, the following laptop computer was owned by defendant TRIUMPH CAPITAL and assigned to defendant CHARLES B. SPADONI: Compaq Notebook Pentium, 150 Mz, 16 MB RAM, 1.6 Gb ("laptop computer").

3. On or about May 25, 1999, a grand jury subpoena which requested all records, from 1997 to that date, related to the solicitation of and investment placement by the State of

Connecticut was served on Triumph Connecticut-II.

4. On or around Memorial Day weekend, 1999, defendant CHARLES B. SPADONI discussed the existence of the grand jury subpoena served on Triumph Connecticut-II.

5. The laptop computer contained a software program entitled "Destroy-It" with a creation date of June 21, 1999. "Destroy-It" is designed to destroy and permanently overwrite files from the laptop computer hard drive.

6. Between on or about May 25, 1999 and in or about April, 2000, the exact dates being unknown to the Grand Jury, defendant CHARLES B. SPADONI deleted, transferred or used software programs to overwrite certain files and documents stored on the laptop computer hard drive which were relevant to the grand jury investigation.

7. Between in or about August, 1999 and in or about July, 2000, the exact dates being unknown to the Grand Jury, defendant CHARLES B. SPADONI deleted, destroyed or failed to produce to the grand jury computer diskettes which contained documents and information relevant to the grand jury investigation.

8. Between on or about May 25, 1999 and in or about July, 2000, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, defendants CHARLES B. SPADONI and TRIUMPH CAPITAL did corruptly influence, obstruct, and impede, and did endeavor to influence, obstruct, and impede, the due administration of justice in a federal grand jury in the District of Connecticut by knowingly and willfully deleting, overwriting, destroying or failing to produce to the grand jury records which were relevant to a grand jury investigation, believing that production of the records would likely be ordered by the grand jury.

All in violation of Title 18, United States Code, § 1503.

FORFEITURES RELATING TO COUNTS ONE AND TWO

The Grand Jury further charges:

1. The allegations contained in Counts One and Two of this indictment are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, § 1963.

2. Defendants TRIUMPH CAPITAL, FREDERICK W. MCCARTHY, CHARLES B. SPADONI, LISA A. THIESFIELD and BEN F. ANDREWS:

(a) have acquired and maintained interests in violation of Title 18, United States Code, § 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, § 1963(a)(1);

(b) have an interest in, security of, claims against, and property and contractual rights which afford a source of influence over the enterprise named and described herein which defendants established, operated, controlled, conducted and participated in the conduct of, in violation of Title 18, United States Code, § 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, § 1963(a)(2).

(c) have property constituting and derived from proceeds obtained, directly and indirectly, from the aforesaid racketeering activity, in violation of Title 18, United States Code, § 1963(a)(3).

3. The interests of defendants subject to forfeiture to the United States of America pursuant to Title 18, United States Codes, § 1963(a)(1), (a)(2) and (a)(3) include but are not limited to at least $5.3 million and all interests and proceeds traceable thereto, including but not

limited to the following assets:

(a) monies received and paid as bribes as alleged in Racketeering Acts 1, 2, 3 and 4 of Count One of this indictment.

(b) management fees paid by the State of Connecticut Treasurer's Office to Triumph Connecticut-II which then flowed to defendant TRIUMPH CAPITAL.

4. If any of the property described in paragraph three above as a result of any act or omission of any defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred, sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, § 1963(m), to seek forfeiture of any other property of said defendants up to the value of any property described in paragraph three above.

5. The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, § 1963.

A TRUE BILL

7/9/01

FOREPERSON

UNITED STATES OF AMERICA

JOHN H. DURHAM
ACTING UNITED STATES ATTORNEY

NORA R. DANNEHY
ASSISTANT UNITED STATES ATTORNEY

THOMAS V. DALY
ASSISTANT UNITED STATES ATTORNEY

MICHAEL E. RUNOWICZ
ASSISTANT UNITED STATES ATTORNEY

## CERTIFICATE OF SERVICE

I, **Scott D. Corrigan**, certify that on the 14th day of December, 2007, the within Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Count 23 of the Indictment and accompanying exhibits were filed electronically and served by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's electronic filing system. Notice of this filing will be sent by email to the following parties by operation of the Court's electronic filing system:

- **Gerard B. Sullivan**
  gerard.sullivan@usdoj.gov
- **Stephen G. Dambruch**
  stephen.dambruch@usdoj.gov
- **Daniel A. Petalas**
  Dan.Petalas@usdoj.gov
- **AnnaLou Tirol**
  AnnaLou.Tirol2@usdoj.gov