**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

---------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CR 07-09-01 (MML) |
| v. | : | |
| | : | January 11, 2008 |
| JOHN R. KRAMER and | : | |
| CARLOS ORTIZ | : | |

---------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCLOSURE OF <u>EXCULPATORY AND IMPEACHMENT INFORMATION</u>**

Defendants John R. Kramer and Carlos Ortiz respectfully submit this Reply Memorandum of Law in Further Support of their Motion to Compel Disclosure of Exculpatory and Impeachment Information.

## INTRODUCTION

In the defendants' Memorandum of Law in Support of Their Motion to Compel Disclosure of Exculpatory and Impeachment Information ("Defendants' Memorandum"), the defendants carefully detailed how the government's formal reports of interviews with John Celona omit and alter his exculpatory statements and fail to document the evolution of Celona's version of events as told to the government. The Defendants' Memorandum also catalogued the varying and inconsistent government statements about Celona's dishonesty during his interviews. The government's responsive brief ("Opposition Brief") makes no effort to refute the demonstrated infirmities in the agents' formal reports or to correct the government's conflicting statements about Celona's lies. Instead, the Opposition Brief offers sweeping, unsupported proclamations about the nature of agents' notes and reports and what the government believes it should and should not disclose. As general propositions, those statements are, at best, dubious; in the specific circumstances of this case, they are flatly incorrect. The government has not satisfied its discovery obligations, and the Court should require the government to disclose the agents' notes of Celona's interviews and identify the lies Celona told the government.

## I. THE OPPOSITION BRIEF FAILS TO REFUTE DEFENDANTS' SHOWING THAT THE ERRORS AND OMISSIONS IN THE AGENTS' FORMAL REPORTS MANDATE PRODUCTION OF THE AGENTS' UNDERLYING CONTEMPORANEOUS NOTES.

Even though the government extols its efforts at "open file" discovery, including its production of materials only tangentially related to this case, (see Opp'n Br. at 3), the Opposition

Brief fails to justify the government's withholding of clearly and crucially relevant material: namely, the agents' contemporaneous notes of interviews with the government's principal witness, John Celona. Instead, the Opposition Brief misinterprets the nature of the government's Brady/Giglio obligations and mischaracterizes the nature of agents' notes. Rather than meet its discovery obligations to Kramer and Ortiz, the government relies upon the review of the agents' notes in a different case involving different defendants (the RWMC Trial) and its production in this case of FD-302 reports that the Defendants' Memorandum showed to be flawed and inadequate. The government has not met its Brady/Giglio obligations, and its suggestion of an in camera review as an alternative to producing the agents' notes is ill-advised.

### A. The Opposition Brief Ignores The Failings That The Defendants' Memorandum Identified In The Government's Production.

Remarkably, the Opposition Brief does not even attempt to challenge the defendants' detailed showing that the FD-302 reports of Celona's interviews omit and conceal exculpatory and impeachment information. The Defendants' Memorandum provided seven specific examples of that omission and concealment, but the Opposition Brief fails to address any of them. Nor does the Opposition Brief address other material shortcomings identified by the defendants: (i) the Composite FD-302 failed to follow FBI procedural guidelines; (ii) no government attorney attended the interviews summarized in the Composite FD-302; and (iii) John Celona never reviewed, much less adopted, the Composite FD-302. The defendants submit that the Court should accept the defendants' showing that the FD-302 reports omit and alter exculpatory and impeachment material and that production of the agents' notes is therefore necessary to satisfy the government's Brady/Giglio obligations.

**B. The Opposition Brief Mischaracterizes The Agents' Notes.**

The government strains credulity with its claim that agents' notes are "by their very nature, cryptic and designed to convey meaning only to the author" and are "designed to have only brief utility as a memory aid until a final report can be prepared." (Opp'n Br. at 8.) This characterization of the agents' notes is belied by the FBI's own procedural manuals, which require agents to retain "original handwritten notes" from witness interviews. (FBI Legal Handbook § 7-13 (Affidavit of David B. Fein, dated Oct. 26, 2007 ("Fein Aff."), Ex. E) ("In any interview . . . where preparation of an FD-302 is required . . . the original handwritten notes of the Agent conducting the questioning are to be retained in . . . the case file."); see also FBI Manual of Administrative Operations and Procedures ("MAOP") § 10-13.3(11)(d) (Fein Aff. Ex. C) (notes "are to be taken during each interview session and retained for investigative purposes").) If agents' notes were "cryptic" and intended "to have only brief utility as a memory aid," the FBI would not require its agents to preserve those notes.

The few notes that defendants have seen to date further contradict the government's unsupportable assertions. Those notes do not contain "cryptic" notations that "convey meaning only to the author"; rather, they clearly set forth statements by John Celona, such as: "JC – I don't believe I sold my office. I did not sell my vote or change my position on any issue or take a position because of money I received." (Agents' Notes of Sept. 13, 2004 Celona Interview at 4 (Fein Aff. Ex. L).) Nor could the notes have been "designed to have only brief utility." Because several months elapsed between Celona's initial interviews and the creation of the Composite FD-302, the notes upon which that report was based could not have been ephemeral, as the government claims. Rather, the notes needed to be clear, comprehensive, and enduring.

**C. The Opposition Brief Conflates Brady Obligations With Evidentiary Issues.**

The Opposition Brief insists incorrectly that "[a]gent notes can only be used unfairly" for the purpose of "unfairly confusing, rather than clarifying, the issues." (Opp'n Br. at 8.) This bald assertion has no basis in fact or law. The government may consider the notes confusing because they contain statements by Celona that conflict with the Composite FD-302, undermine the theory of the prosecution, and exculpate the defendants. But the government's argument that the notes may confuse the jury is an evidentiary matter to be addressed at trial, if at all. See Fed. R. Evid. 403 ("evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues"). That evidentiary issue has no bearing whatsoever on the standards for pre-trial disclosure under Brady and Giglio, and it does not excuse the government's failure to meet its discovery obligations.

**D. The Opposition Brief's Endorsement Of The Composite FD-302 Is Meritless.**

Despite the Opposition Brief's insistence that "the agent's final report is, by conscious effort, designed to reflect the agent's best recollection of what was said during an interview," (Opp'n Br. at 8), in this case the "agent's best recollection" did not result in an accurate or complete Composite FD-302. First, the Composite FD-302 purports to memorialize nine lengthy interviews going back as far as two-and-a-half months before the report was created. Second, the Composite FD-302 omits critical statements made by Celona just before that report was created, which suggests that the agent's recollection of even the later of the nine initial interviews was faulty. (See Def. Mem. at 11–12, 16.) Third, the Composite FD-302 does not reflect that Celona lied to the government many times during those interviews, a fact Celona admitted at the RWMC Trial. (See RWMC Trial Tr., Sept. 18, 2006, 8:21–9:5 (Fein Aff. Ex. F).) Fourth, the Composite FD-302 does not reflect the evolution of Celona's testimony that the government has acknowledged took place over the course of his interviews. (See, e.g.,

RWMC Trial Tr., Sept. 11, 2006, 57:18–20 (Fein Aff. Ex. F) ("when the FBI began investigating this matter, John Celona lied to the FBI regarding his conduct"); Mot. for Downward Departure at 6 (Fein Aff. Ex. G) ("Celona continued in that pattern of dishonesty when he was initially contacted by the FBI. Once Celona began truthfully cooperating, the United States believes that he did so to the best of his ability."); Sentencing Tr. 21:18–21 (Fein Aff. Ex. J) (noting Celona's "lack of total candor when first approached").) Because the agents' notes were created at the time of the interviews, they most likely do not contain these defects found in the belated Composite FD-302.

These failings illustrate the problem that Judge Torres recognized at the RWMC Trial: a composite report "may reflect only the most recent statement made on a subject and might omit previous statements that, arguably, may be inconsistent and, therefore, used to impeach." United States v. Urciuoli, 470 F. Supp. 2d 109, 116 (D.R.I. 2007). The Opposition Brief's misleading assertion that Judge Torres did "not condemn[] the practice of issuing a composite report of numerous interviews," (Opp'n Br. at 6), is refuted by Judge Torres' actual words: "providing defense counsel with Composite FD-302's of numerous interviews" is a "perilous" practice "that the government would be well advised not to follow." Urciuoli, 470 F. Supp. 2d at 116.

**E. The Opposition Brief Relies Mistakenly Upon The RWMC Prosecutors' Review Of The Agents' Notes.**

The government's failure to satisfy its discovery obligations is confirmed by its misguided reliance upon the adequacy of a few agents' notes produced in the RWMC Trial. (See Opp'n Br. at 2 ("[t]he United States has already twice reviewed the notes pursuant to Court Order").) The Opposition Brief fails to acknowledge that the RWMC Trial review was conducted eighteen months ago by different prosecutors in a different case involving different defendants and different facts. Certainly, those prosecutors were not looking for exculpatory

information for Kramer and Ortiz, who had not yet been indicted. Thus, the notes produced from that prior review cannot be presumed to satisfy the government's obligations in the present case.

### F. The In Camera Review Suggested By The Opposition Brief Is Unnecessary.

Not having reviewed the agents' notes for purposes of this case, the government is ill-positioned to suggest, as it does in the Opposition Brief, that the Court undertake a review of the notes to identify Brady/Giglio information omitted from the formal reports. (See Opp'n Br. at 2.) In fairness, the Court is not yet in a position to review the notes for undisclosed Brady/Giglio information since the Court has not yet been presented with the specific facts of this case.

Nor should the Court order the government to review the notes -- an approach that the government, notably, does not suggest. The government's failure to review the notes for exculpatory and impeachment material following the indictment of Kramer and Ortiz demonstrates that the government is not predisposed to undertake such a review. Ordering the government to review the notes and produce Brady/Giglio material would provide an inadequate remedy here, given (i) the government's refusal to produce more than the limited excerpts provided to the RWMC Trial defendants; (ii) its reliance on the reviews of the notes in that case; and (iii) its suggestion that the Court, not the government, undertake the review of the notes. Accordingly, the defendants submit that the Court should grant their limited request for notes based on the detailed and uncontested showing made in Defendants' Memorandum.

## II. THE OPPOSITION BRIEF EVADES THE ISSUES SURROUNDING DEFENDANTS' REQUEST FOR IDENTIFICATION OF CELONA'S LIES.

The Defendants' Memorandum made a clearly defined request for "identification of the lies Celona told the government." (Def. Mem at 1.) The government's Opposition Brief attempts, unconvincingly, to expand the defendants' request to include identification of "all specific statements that Celona made *that can be characterized as lies*." (Opp'n Br. at 1

(emphasis added).) The government continues to mischaracterize defendants' request throughout the Opposition Brief, claiming that the defendants seek identification of all statements "that are *arguably* inconsistent, and thus are *arguably* lies." (Opp'n Br. at 9 (emphasis in original); see also Opp'n Br. at 12 (defendants are asking the government "to identify which statements it thinks are arguably false and which are arguably true").) Having set up a straw-man target with its mischaracterization of defendants' request, the government declares that it is not able to "divine the truth with absolute certainty," spouts a platitude that determining truthfulness is "the purpose of a trial by jury," (Opp'n Br. at 4), and rests on a convoluted claim that "information has been disclosed" to the defendants in instances where "Celona has lied to the United States, the Government is aware of the lie, and defendants were previously unaware that Celona had lied." (Opp'n Br. at 9.) Unfortunately, this evasive approach ignores the defendants' clear and narrow request for specific information to which they are entitled as a matter of law.

**A. The Opposition Brief Ignores Defendants' Actual Request.**

The defendants ask only that the government reconcile the conflicting statements it has already made about how many actual lies its cooperating witness John Celona told the government, what those lies were, and when Celona told them. The Opposition Brief disingenuously declares, however, that "it would be unwise to make the attempt" to "divine the truth." (Opp'n Br. at 4.) The defendants are not asking the government to do anything other than what it routinely does -- namely, identify situations where a witness has lied. The government regularly "characterize[s] witness statements as truthful or untruthful," (Opp'n Br. at 4), such as when it decides to charge someone with perjury or with making false statements, and when the government discharges its Giglio obligations. The government also characterizes the truthfulness of cooperating witnesses and their testimony during sentencing. See United States

Sentencing Commission, Guidelines Manual, § 5K1.1(a)(2) (factors to be considered in reducing sentence of defendant who has provided assistance to government include "the truthfulness, completeness, and reliability of any information or testimony provided by the defendant").

Indeed, as explained in Defendants' Memorandum, the government has characterized Celona's statements as "truthful or untruthful" on numerous occasions. (See Def. Mem. at 20–22.) To date, the government has identified to the defendants only a single lie that Celona told the government. (See Fein Aff. ¶ 17.) Based on Celona's own testimony and the government's numerous representations in various contexts, it is clear that Celona told many other lies to the government. The defendants ask only for the government to identify these lies told by their central witness, a routine practice that the government has not discharged properly in this case.

**B. The Opposition Brief Misconstrues The Government's Obligations.**

Although the government claims to "recognize[], under Giglio and its progeny, that impeachment information must be disclosed" and that "a witness' veracity is grounds for impeachment material," the government then attempts to limit the scope of its obligation, to encompass only those lies that its cooperator "*has admitted to making*." (Opp'n Br. at 12 (stating that the government "has disclosed to defendants those instances it is aware of *where Celona said he has knowingly lied*") (emphasis added).) In fact, the government has failed to meet even its own mistakenly limited standard, as it has not identified the lies to which Celona was referring when he admitted that he had lied to the government on many occasions about a number of subjects. (RWMC Trial Tr., Sept. 18, 2006, 8:21–9:5 (Fein Aff. Ex. F).)

Contrary to the Opposition Brief's assertions, the government's obligation to identify all of Celona's lies is reinforced by the relevant caselaw. See United States v. Soto-Beniquez, 356 F.3d 1, 39 (1st Cir. 2003); United States v. Osorio, 929 F.2d 753, 761 (1st Cir. 1991); United

States v. Devin, 918 F.2d 280, 289 (1st Cir. 1990). Even if the government had produced the agents' notes, the government would still be required to *identify* Celona's lies. See Smith v. Secretary of New Mexico Dep't of Corrections, 50 F.3d 801, 828 (10th Cir. 1995) (government's "affirmative obligation under Brady may often go beyond divulging what is 'in the file'").

In addition, the Opposition Brief glosses over the Second Circuit's decision in United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007). Much as Celona admitted at the RWMC Trial that he lied to government agents on many occasions about a number of subjects, the cooperator in Rodriguez admitted that she had lied to the government "about everything." Id. at 223. In such situations, leaving the defendants "to find out what the lies were by questioning the witness before the jury" would impermissibly force defense counsel "to question the witness blindly in the jury's presence." Id. at 227-28. Yet that is exactly what the government contends defense counsel should do. The defendants submit that the Court should follow relevant precedent and compel the government to identify the lies Celona told the government.

**C. The Opposition Brief Obscures The Government's Inconsistent Statements Regarding Celona's Lies.**

The Opposition Brief makes muddled and incomplete claims about government statements and the defendants' supposed knowledge regarding Celona's lies to the government. Rather than setting the record straight, the government offers many words but no substance, such as: "To the extent Celona has lied to the United States, the Government is aware of the lie, and defendants were previously unaware that Celona had lied, this information has been disclosed." (Opp'n Br. at 9.) The government claims that "[d]efendants now possess *all* of Celona's statements," but within the very same sentence acknowledges that defendants have received only "*some* agents' notes" of Celona's first nine interviews. (Opp'n Br. at 10 (emphasis added)). These statements continue to beg the central question: what lies did Celona tell the government?

Moreover, the Opposition Brief does not attempt to reconcile or correct the varying and inconsistent government statements set forth in Defendants' Memorandum. Those government statements range from an indication that Celona told *no* lies, (see Ethics Commission Letter 1 (Fein Aff. Ex. H) ("Celona has met with government representatives as often as necessary and has provided what he has represented to be truthful information")), to a claim that Celona told *numerous* lies, (see Mot. for Downward Departure 6 (Fein Aff. Ex. G) ("Celona continued in that pattern of dishonesty when he was initially contacted by the FBI")), to its most recent statement, in response to defendants' request, that Celona told only a *single* lie, (see Fein Aff. ¶ 17) ("the only instance in which . . . he was intentionally dishonest"). That most recent government statement is clearly incorrect. It is contradicted by the Composite FD-302, which identifies a different lie, (see Def. Mem. at 22), and Celona's own RWMC Trial testimony that he lied to the government on many occasions about a number of subjects (see RWMC Trial Tr., Sept. 18, 2006, 8:21–9:5 (Fein Aff. Ex. F)). Accurate and complete identification of Celona's lies to the government is of paramount importance in light of the government's varying and conflicting statements and Celona's own testimony.

## CONCLUSION

For all the reasons discussed above, the government should be ordered to disclose the agents' contemporaneous notes of the Celona interviews and to identify specifically and completely the lies Celona told to the government.

Dated: January 11, 2008

Respectfully submitted,

JOHN R. KRAMER,
By his Attorneys,

/s/ Peter DiBiase
Peter DiBiase
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903-3819
(401) 831-5020
attorney_pad@yahoo.com

David B. Fein
Scott D. Corrigan
*Pro Hac Vice Counsel*
WIGGIN AND DANA LLP
400 Atlantic Street
Stamford, CT 06901
(203) 363-7600
(203) 363-7676 (fax)
dfein@wiggin.com
scorrigan@wiggin.com

CARLOS ORTIZ,
By his Attorneys,

/s/ Mark L. Smith
Mark L. Smith
176 Eddie Dowling Highway
North Smithfield, RI 02896
(401) 769-4120
Lawmls@aol.com

Thomas R. Kiley
*Pro Hac Vice Counsel*
Cosgrove, Eisenberg and Kiley, P.C.
One International Place, Suite 1820
Boston, Massachusetts 02110
(617) 439-7775
trkiley159@aol.com

## CERTIFICATE OF SERVICE

I, **Scott D. Corrigan**, certify that on the 11th day of January, 2008, the within Reply Memorandum of Law in Further Support of their Motion to Compel Disclosure of Exculpatory and Impeachment Information was filed electronically and served by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's electronic filing system. Notice of this filing will be sent by email to the following parties by operation of the Court's electronic filing system:

- **Gerard B. Sullivan**
  gerard.sullivan@usdoj.gov
- **Stephen G. Dambruch**
  stephen.dambruch@usdoj.gov
- **Daniel A. Petalas**
  Dan.Petalas@usdoj.gov
- **AnnaLou Tirol**
  AnnaLou.Tirol2@usdoj.gov
- **Peter Sprung**
  Peter.Sprung@usdoj.gov