**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

---------------------------------------------------x
UNITED STATES OF AMERICA :
: CR 07-09-01 (MML)
v. :
: April 4, 2008
JOHN R. KRAMER and :
CARLOS ORTIZ :
---------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT JOHN R. KRAMER'S MOTION TO PRECLUDE**
**PRIOR TESTIMONY OF CO-DEFENDANT CARLOS ORTIZ**
**OR, IN THE ALTERNATIVE, TO SEVER HIS TRIAL**
**FROM THE TRIAL OF CARLOS ORTIZ**

Defendant John R. Kramer respectfully submits this Memorandum of Law in support of his motion to preclude the introduction of the prior grand jury testimony of Kramer's co-defendant, Carlos Ortiz, at their joint trial. In the alternative, Kramer moves for an order pursuant to Rule 14 of the Federal Rules of Criminal Procedure, severing Kramer's trial from the trial of Ortiz.

## BACKGROUND

On August 4, 2004, Ortiz testified before a Rhode Island State grand jury, in connection with the investigation of John Celona. (See Transcript of Grand Jury Proceedings, Testimony of Carlos Ortiz, dated August 4, 2004 ("Ortiz Testimony").) Throughout the present prosecution, the government has informed the defendants that it did not intend to offer the Ortiz Testimony in its case-in-chief at the trial of Kramer and Ortiz. Very recently, however, just a few weeks before the date on which this trial is scheduled to commence, the government reversed course and informed the defendants that it now intends to offer the Ortiz Testimony, in its entirety, in the government's case-in-chief.

## I. THE COURT SHOULD PRECLUDE THE ORTIZ TESTIMONY AT A JOINT TRIAL.

Admitting the Ortiz Testimony would violate Kramer's confrontation rights under the Sixth Amendment because the Ortiz Testimony inculpates Kramer, but he would be unable to cross-examine Ortiz regarding that testimony. Bruton v. United States, 391 U.S. 123 (1968). Neither redaction nor a limiting instruction is sufficient to secure Kramer's Sixth Amendment rights in such circumstances. As demonstrated below, the only way to protect Kramer's rights in a joint trial is to exclude the Ortiz Testimony.

**A. Out-Of-Court Statements By A Non-Testifying Defendant That Inculpate A Co-Defendant Are Inadmissible At A Joint Trial.**

The Sixth Amendment's Confrontation Clause provides each criminal defendant with the right "to be confronted with the witnesses against him" and to cross-examine adverse witnesses. U.S. CONST. amend. VI; United States v. Vega Molina, 407 F.3d 511, 518 (1st Cir. 2005) (citing Pointer v. Texas, 380 U.S. 400, 404 (1965)). Thus, the government may not offer against a criminal defendant the prior testimony of a witness who will not testify at trial unless the declarant is unavailable, and the defendant has opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 59 (2004).

Just as importantly, in a joint trial such as this one, the government may not offer out-of-court statements by a non-testifying defendant when those statements inculpate the declarant's co-defendant. Bruton, 391 U.S. at 126. Bruton applies "where the co-defendant's statement 'expressly implicates' the defendant, leaving no doubt that it would prove 'powerfully incriminating.'" United States v. Smith, 46 F.3d 1223, 1228 (1st Cir. 1995) (quoting Richardson v. Marsh, 481 U.S. 200, 208 (1987) (quoting Bruton, 391 U.S. at 124 n.1, 135)).

**B. Admitting The Ortiz Testimony Would Violate Kramer's Confrontation Rights.**

The Ortiz Testimony must be excluded from Kramer's trial because it inculpates Kramer, but he will not have the opportunity to cross-examine Ortiz regarding that testimony. As the Court observed in Briscoe v. LaHue, 460 U.S. 325, 334 (1983), "the truth-finding process is better served if the witness' testimony is submitted to the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies." The truth-finding process would not be well-served by the untested, one-sided inquiry in the grand jury, which was not the subject of any cross-

examination, let alone testing by Kramer and his counsel. See Crawford, 541 U.S. at 50 ("[T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.")

Bruton applies here because the Ortiz Testimony, standing alone, "expressly implicates" Kramer, "leaving no doubt that it would prove powerfully incriminating." Smith, 46 F.3d at 1228. Without the context, development and explanation that only can be obtained through cross-examination, introduction of the Ortiz Testimony will not provide a fair, even-handed presentation of the evidence to the jury.

Kramer is mentioned by name in the Ortiz Testimony no fewer than forty-six times, and even where he is not named, the Ortiz Testimony still revolves around him. Kramer and Ortiz are the only defendants in this case, and they are charged with the exact same offenses. During the relevant time period, both defendants worked for the same company, CVS, and in the same department, with Ortiz reporting directly to Kramer. Both defendants are alleged to have been involved in the conduct that forms the basis of this prosecution: Celona's hiring, remuneration, and overall relationship to the defendants and CVS. Those exact subjects were the unique focus of the Ortiz Testimony.

Furthermore, the untested Ortiz Testimony bears heavily on Kramer's state of mind, perhaps the most critical issue in this case. Specifically, the defense contends that CVS hired Celona to provide public relations consulting services, not to improperly influence Celona's official actions as alleged in the Superseding Indictment. A jury considering Kramer's intent in hiring Celona would no doubt consider the Ortiz Testimony powerfully incriminating.

For example, if the Ortiz Testimony is admitted at trial, the jury will hear evidence regarding:

1. Who made the decision to hire Celona and who directed Ortiz to carry out that decision. (See Ortiz Testimony at 23:24–24:2, 24:13–16, 24:23–25, 28:10–13, 64:13–65:13).

2. What Ortiz's opinion was of the decision to hire Celona. (See Ortiz Testimony at 21:2–4, 24:5–9.)

3. What Ortiz thought about continuing to pay Celona in light of the work Celona was doing for CVS. (See Ortiz Testimony at 30:1–9, 32:15–33:2, 33:21–25, 45:2–21.)

4. Whether Ortiz and Kramer discussed the decision to hire Celona and what was said about that decision. (See Ortiz Testimony at 55:11–24.)

It strains credulity to suggest that a jury could set aside the Ortiz Testimony in its deliberations regarding Kramer, especially on the critical issue of intent. See United States v. Limberopoulos, 26 F.3d 245, 253 (1st Cir. 1994) (Bruton applies to evidence that has the effect "of one accomplice pointing the finger directly at another, without subjecting himself to cross-examination"). The introduction of the Ortiz Testimony would create just the sort of situation that Bruton forbids, "where the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." Bruton, 391 U.S. at 135–36.

Nor will a limiting instruction suffice, in light of the breadth of this case and the nature of the deliberations that the jury will be called upon to conduct. The customary presumption that jurors can and will follow a limiting instruction "fades when there is an overwhelming probability that the jury will be called upon to perform humanly impossible feats of mental dexterity." United States v. McDermott, 245 F.3d 133, 139–40 (2d Cir. 2001). In this case, the jury will be presented with evidence that relates essentially equally to Kramer and Ortiz and

concerns events spanning more than four years. At the end of trial, the jurors will be instructed by the Court on "the concept of 'honest services,'" which the First Circuit recognizes as "vague and undefined by the statute," where "difficult questions arise in giving coherent content to the phrase through judicial glosses." United States v. Urciuoli, 513 F.3d 290, 294 (1st Cir. 2008). Instructing that same jury to make the subtle distinction of considering the Ortiz Testimony only as to Ortiz, while ignoring it as to Kramer, would be asking the jurors to perform the impossible. In such circumstances, a limiting instruction would constitute, as stated by Judge Learned Hand, "a recommendation to the jury of a mental gymnastic which is beyond not only their powers, but anybody else's." Nash v. United States, 54 F.2d 1006, 1007 (2d Cir. 1932); see also Bruton, 391 U.S. at 138 (noting that "in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination"). Even with a limiting instruction, admitting the Ortiz Testimony would violate Kramer's Sixth Amendment rights.

**C. Redaction Of The Ortiz Testimony Cannot Protect Kramer's Rights.**

Redaction of the Ortiz Testimony does not cure the Sixth Amendment deprivation inherent in the admission of that untested testimony. First, counsel for Ortiz has indicated that, in the event the Ortiz Testimony is admitted at trial, Ortiz will object to any redactions to the Ortiz Testimony. Thus, if the government seeks to introduce only certain portions of the Ortiz Testimony, Ortiz will seek to introduce the testimony in its entirety in order to provide context for the statements offered by the government.

Second, even if Ortiz were to consent to excising Kramer's name from the Ortiz Testimony at trial, Bruton "does not allow a prosecutor merely to delete a co-defendant's name." Vega Molina, 407 F.3d at 520. As the First Circuit observed, redaction cannot cure a Bruton

problem unless it erases, along with the name of the declarant's co-defendant, "any reference, direct or indirect, to his or her existence." Id. at 519. Here, references to Kramer are woven into the Ortiz Testimony so completely and thoroughly that it would be impossible to create a redacted version of the Ortiz Testimony that did not include "any reference, direct or indirect," to Kramer. See Gray v. Maryland, 523 U.S. 185, 194–95 (1998) (prior testimony need not mention declarant's co-defendant by name in order to "directly incriminate" co-defendant). Because Kramer is so thoroughly entwined within the Ortiz Testimony, this case is easily distinguishable from those where Bruton issues could be cured by redaction. See, e.g., Richardson, 481 U.S. at 203 (finding no constitutional violation where co-defendant's confession did not even suggest petitioner's existence, let alone involvement).

Similarly, any attempt to "sanitize" the Ortiz Testimony by replacing Kramer's name with some anonymous alternative such as "another person" will simply not serve to protect Kramer's rights for the same reasons. "The application of Bruton, Richardson, and Gray to redacted statements that employ phraseology such as 'other individuals' or 'another person' requires careful attention to both text and context, that is, to the text of the statement itself and to the context in which it is proffered." Id. This case involves only two defendants, Ortiz and Kramer, and Ortiz reported directly to Kramer. In the context of the particular facts of this case, the jury will be left with no doubt that the "other person" is, in fact, Kramer. See Vega Molina, 407 F.3d at 520 (recognizing Bruton problem in case that "involve[s] so few defendants that the statement leaves little doubt in the listener's mind about the identity" of declarant's co-defendant).

In sum, this case presents the situation "in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the

practical and human limitations of the jury system cannot be ignored." Bruton, 391 U.S. at 135–36. Given the government's long-standing position that it would not introduce the Ortiz Testimony, its eleventh-hour decision to offer the Ortiz Testimony in its case-in-chief, and the redounding prejudice to Kramer's Sixth Amendment rights, the Ortiz Testimony should be precluded from a joint trial.

## II. IF THE COURT DETERMINES NOT TO PRECLUDE THE ORTIZ TESTIMONY, IT SHOULD SEVER KRAMER'S TRIAL FROM ORTIZ'S TRIAL.

Under Rule 14 of the Federal Rules of Criminal Procedure, the Court has broad discretion to sever a joint trial where joinder appears to prejudice a defendant. If the Ortiz Testimony is admitted, then severance is necessary in order to prevent not just the appearance of prejudice but an actual violation of Kramer's Sixth Amendment rights.

### A. Rule 14 Gives The Court Authority To Sever A Joint Trial Where Joinder Appears To Prejudice A Defendant.

Rule 14 of the Federal Rules of Criminal Procedure provides, in relevant part, that if the joinder of defendants "appears to prejudice" a defendant, the Court may "sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14. The court should grant severance under Rule 14 "if there is serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). If the Ortiz Testimony is admitted at a joint trial, Kramer would be prejudiced and would be denied his Sixth Amendment rights.

### B. If Ortiz's Grand Jury Testimony Is Admitted, Severance Is Required.

If Ortiz does not testify, then the introduction of the Ortiz Testimony at a joint trial will create a "serious risk that a joint trial would compromise a specific trial right of one of the

defendants." Zafiro, 504 U.S. at 539. The determination of whether Ortiz testifies at trial will not be made until after the government concludes its case-in-chief. If Ortiz chooses not testify, then it will obviously be too late for the Court to sever Kramer's trial from that of Ortiz. No doubt this is why, for the first fourteen months of this prosecution, the government did not intend to offer the Ortiz Testimony in its case-in-chief.

Severance would eliminate the Bruton problem posed by the Ortiz Testimony. Indeed, both Rule 14 and Bruton contemplate severance under these exact circumstances. When Rule 14 was amended to permit in camera inspection of materials that might prejudice a defendant improperly, the Advisory Committee noted that the purpose of the amendment was "to provide a procedure whereby the issue of possible prejudice can be resolved on the motion of severance," and stated that a defendant "may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice." FED. R. CRIM. P. 14 Advisory Committee Notes (1966); see also Bruton, 391 U.S. at 131–32 (discussing amendment of Rule 14 and Advisory Committee comments); Perez Goitia v. United States, 409 F.2d 524, 528 (1st Cir. 1969) (noting passage in Bruton "where it is pointed out that the problem in that case could have been solved by severance").

If the Court is unwilling to exclude the Ortiz Testimony from a joint trial, then Kramer's Sixth Amendment rights can only be protected by severing his trial from that of Ortiz.

## III. ADMISSION OF THE ORTIZ TESTIMONY WOULD NOT ONLY COMPROMISE KRAMER'S CONFRONTATION CLAUSE RIGHTS BUT WOULD ALSO PREJUDICE HIS ABILITY TO PREPARE FOR TRIAL.

From the time of indictment in January 2007 until very recently, the government had not informed defendants that it intended to use the Ortiz Testimony in its case-in-chief. To the contrary, in response to defendants' specific inquiries from the spring of 2007 through February 2008, the government stated that it did not intend to offer the Ortiz Testimony in its case-in-chief. Consistent with that expressed intent, the government did not include a transcript or tape of the Ortiz Testimony in its preliminary production of government trial exhibits on May 8, 2007. It was only in mid-March 2008, after questionnaires had already been mailed to prospective jurors, that the government announced its changed intention. If, in response to defendants' initial inquiries last year, the government had expressed an intention to use the Ortiz Testimony in its case-in-chief, Kramer would have filed a Bruton motion last fall along with defendants' other pre-trial motions.

The possibility of the introduction of the Ortiz Testimony without the opportunity for cross-examination will materially affect Kramer's trial preparation and trial strategy. Kramer has long been preparing for a trial at which, consistent with the government's expressed intent, the Ortiz Testimony would not be admitted unless Ortiz testified. In such a case, Kramer would have the opportunity for "cross-examination, the 'greatest legal engine ever invented for the discovery of truth.'" Lilly v. Virginia, 527 U.S. 116, 124 (1999) (quoting California v. Green, 399 U.S. 149, 158 (1970)).

Kramer now faces the specter of admission of the Ortiz Testimony without opportunity of cross-examination, a situation for which he has not prepared. "The constitutional right to assistance of counsel is rendered meaningless if a defendant is forced to trial in the absence of

adequate time to prepare." United States v. Rojas-Contreras, 474 U.S. 231, 240–41 (1985) (Blackmun, J., dissenting). Kramer has spent months preparing for trial in a case involving hundreds of thousands of documents, thousands of pages of relevant transcripts and interview memoranda, and an alleged conspiracy spanning more than four years. He has done so with the understanding that the Ortiz Testimony would not be introduced in the government's case-in-chief. If the Ortiz Testimony is excluded from the joint trial, or if Kramer's trial is severed from that of Ortiz, then Kramer is prepared to proceed to trial as scheduled. But if the Ortiz Testimony is admitted at a joint trial, Kramer will not be ready for trial on May 5.

## CONCLUSION

For all of the reasons stated above, the Court should preclude the Ortiz Testimony at trial, or, in the alternative, the Court should sever Kramer's trial from that of Ortiz.

Date: April 4, 2008

JOHN R. KRAMER,
By his Attorneys,

/s/ Peter DiBiase

Peter DiBiase
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903-3819
(401) 831-5020
attorney_pad@yahoo.com

David B. Fein
Scott D. Corrigan
*Pro Hac Vice Counsel*
WIGGIN AND DANA LLP
400 Atlantic Street
Stamford, CT 06901
(203) 363-7600
(203) 363-7676 (fax)
dfein@wiggin.com
scorrigan@wiggin.com