**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CR 07-09-01 (MML) |
| v. | : | |
| | : | April 28, 2008 |
| JOHN R. KRAMER and | : | |
| CARLOS ORTIZ | : | |

**DEFENDANTS' MOTION FOR DISCLOSURE OF EXCULPATORY AND IMPEACHMENT INFORMATION CONTAINED IN PRESENTENCE REPORT OF JOHN CELONA**

Defendants John R. Kramer and Carlos Ortiz respectfully submit this motion pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), requesting disclosure of all exculpatory and impeachment material and statements of the witness contained in the presentence investigation report pertaining to the government's principal witness, John Celona (the "Celona PSR"). Specifically, the defendants request that the Court conduct an in camera review of the Celona PSR and disclose to the defendants any exculpatory or impeachment material contained therein. See United States v. McGee, 408 F.3d 966, 974 (7th Cir. 2005) ("If a defendant suspects that a presentence report contains Brady material, he may request that the district court conduct an in camera review of the report to determine if his suspicions are warranted."); United States v. Casas, 425 F.3d 23, 44 n.24 (1st Cir. 2005) (noting that "the district court reviewed in camera the presentence reports of [a government witness] and ordered that the portions thereof relevant for impeachment purposes be provided to the defense"). In the alternative, the Court could permit defense counsel to review the Celona PSR in chambers and identify for the Court any portions of the report that counsel consider to be exculpatory or impeachment material.

## BACKGROUND

Celona's statements to the government have already been the subject of a significant motion before this Court. Based on the defendants' belief that the Composite FD-302 Report of Celona's first nine interviews omitted Celona statements exculpating the defendants and constituting impeachment evidence, the defendants moved for disclosure of the actual notes taken by government agents during the individual interviews. (See Defendants' Motion to Compel Disclosure of Exculpatory and Impeachment Information, dated Oct. 26, 2007.) The government opposed the motion, stating that "[t]he Government has already turned over those notes previously determined to be discoverable under Brady and Giglio" in the course of pre-trial discovery in a different case, United States v. Urciuoli. (United States' Objection to Defendants' Motion to Compel Disclosure of Exculpatory and Impeachment Information, dated Dec. 11, 2007, at 8–9.) On February 25, 2008, the Court ordered the government to disclose the agents' notes relating to the nine interviews reflected in the Composite FD-302 report. (See Transcript of Proceedings, dated February 25, 2008 ("Feb. 25 Tr."), at 4:24–5:8.)

The agents' notes disclosed by the government pursuant to the Court's February 25 Order confirmed the defendants' belief that Celona repeatedly exculpated Kramer and Ortiz in his government interviews, and that exculpatory statements were omitted from the Composite FD-302. The agents' notes also reveal the significant evolution of Celona's account of the relevant facts and the many contradictions between Celona's account and that of other witnesses, as well as instances of Celona contradicting himself. As a result, the defendants seek access to additional exculpatory and impeachment information that may be found in Celona's PSR.

## ARGUMENT

### I. EXCULPATORY AND IMPEACHMENT INFORMATION CONTAINED IN THE CELONA PSR CONSTITUTES DISCOVERABLE BRADY/GIGLIO MATERIAL.

Pursuant to Rule 32(c) of the Federal Rules of Criminal Procedure, the Celona PSR contains, *inter alia*, Celona's statements, facts about Celona's history and characteristics, his criminal history, facts and circumstances affecting his behavior, information about his financial condition, and other information that likely will impact a credibility determination. See Fed. R. Crim. P. 32(c)(2) and (d). To the extent that statements and information contained in the Celona PSR vary from the statements that Celona has made previously and from the testimony he is expected to offer at trial, that information must be disclosed to the defendants pursuant to Brady and Giglio. See Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003). Similarly, to the extent that the information in the Celona PSR includes statements by Celona admitting to the commission of fraud, deceit, or dishonesty, that information also constitutes Brady/Giglio material. See United States v. Devin, 918 F.2d 280, 289 (1st Cir. 1990) ("Information useful to impeach prosecution witnesses falls within [the Brady] rubric.").

Furthermore, as the defendants have previously noted, Celona's statements to the government regarding his relationship with CVS evolved over the course of two-and-a-half-months of interviews with the government that took place prior to his sentencing. (See Def. Mem. at 13–16.) In view of Celona's evolving account and his demonstrated propensity for dissemblance, including the government's own recognition of his penchant for prevarication, review of the Celona PSR is critical to ensure that all exculpatory and impeachment material has been disclosed. Review of the PSR would also enable the defendants to determine whether Celona received benefits or concessions in his sentencing calculation, including the calculation of restitution and fines, all of which are relevant for purposes of impeachment.

## II. THE DEFENDANTS HAVE A REASONABLE GOOD-FAITH BELIEF THAT THE CELONA PSR MAY CONTAIN BRADY/GIGLIO MATERIAL

Although Celona is expected to be the government's primary witness at trial, he has a substantial history of dishonesty. The government has acknowledged on multiple occasions that Celona was untruthful in his interactions with the government in connection with this case, and a judicial officer has similarly found that Mr. Celona suffers from a chronic lack of candor. (See Memorandum of Law in Support of Defendants' Motion to Compel Disclosure of Exculpatory and Impeachment Information, dated Oct. 26, 2007, at 20–22.) Indeed, in this case, the Court has already noted that:

> The Defendants have satisfied the Court that Mr. Celona has been, at the very least, inconsistent in his statements to the Government, to the grand jury and perhaps even at trial; and that appears to be a fertile area for the defense counsel to probe his memory of events and his veracity.

(Feb. 25 Tr. at 3:22–4:2.)

The agents' notes that were disclosed by the government pursuant to the Court's February 25 Order make it clear just how crucial it is that the defendants be fully apprised of Celona's prior statements and the full circumstances surrounding his cooperation with the government in connection with this case. After the government disclosed the agents' notes pursuant to the Court's Order, defense counsel carefully reviewed the notes and identified multiple instances of Brady and Giglio material not previously disclosed by the government. Several prominent examples are included below.

### A. Celona's Understanding of and Reaction to Kramer's Offer to Consult for CVS

According to IRS Agent Joel Burman's notes of Celona's first interview, Celona told the government that when Kramer said CVS could use a consultant for community relations, "JC [John Celona] took Kramer's statement to mean reach out to charities and promote things." (Notes of

Interview with John Celona, dated Sept. 1, 2004 ("Sept. 1 Notes"), at 4.) Agent Burman's notes of Celona's second interview are similarly exculpatory: "JC didn't think anything of Kramer asking JC to be consultant." (Notes of Interview with John Celona, dated Sept. 7, 2004 ("Sept. 7 Notes") at 1.)

Retired FBI Agent Dennis Aiken's Composite FD-302 omitted those exculpatory statements. In contrast, the Composite FD-302 provided: "At the time Celona felt somewhat uncomfortable about the meeting and it was evident that CVS was trying to buy an end to Celona's support of Pharmacy Freedom of Choice." (Composite FD-302, dated Nov. 19, 2004 ("Comp. FD-302"), at 5.)

**B. The Parties' Intent In Discussing A Consulting Relationship**

According to Agent Burman's notes of Celona's second interview, Celona said that when he met with Kramer and Ortiz to discuss possibly working for CVS, "[a]t time JC thought meeting was on up + up. They told JC that they like his public relations acumen." (Sept. 7 Notes at 1.)

The Composite 302 omitted those exculpatory statements. Instead, it stated: "Celona stated by this point in time it was abundantly clear that CVS was attempting to buy his vote on Pharmacy Choice, a vote which Celona was willing to sell." (Comp. FD-302 at 6.)

**C. Celona's Senatorial Influence**

Agent Burman's notes of Celona's first interview indicate that Celona told the government: "In my opinion, never used Senatorial influence for CVS benefit." (Sept. 1 Notes at 9.)

The Composite 302 omitted that exculpatory statement. In contrast, it stated: "Kramer and Ortiz just wanted to buy his senatorial support, which they did." (Comp. FD-302 at 9.)

**D. Connection Between Consulting Agreement and FOC Legislation**

Agent Burman's notes of Celona's first interview provide that Celona told the agents that "Pharmacy freedom of choice dead from above. 'NGN' not going nowhere." (Sept. 1 Notes at 9.) Agent Burman's notes from Celona's third interview show that Celona said he "[h]ad never talked to CVS about freedom of choice since meeting in lounge in 1996." (Notes of Interview with John Celona, dated Sept. 9, 2004, at 2.) And Agent Burman's notes of Celona's sixth interview record that Celona also said: "In February when JC signed consulting agreement, Pharmacy Freedom of Choice was a non-issue," and "[w]hen working out consulting agreement they never asked JC position on Pharmacy Freedom of Choice." (Notes of Interview with John Celona, dated Oct. 25, 2004, at 3, 5.)

The Composite 302 omitted all of those exculpatory statements found in the agents' notes. Instead, it claimed that "it was evident that CVS was trying to buy an end to Celona's support of Pharmacy Freedom of Choice." (Comp. FD-302 at 5.)

* * *

The government did not disclose these and other exculpatory statements and impeachment material contained within the agents' notes, and would not have disclosed them had the defendants not filed -- and had the Court not granted -- the Motion.

In accordance with Rule 12(c)(2) and (3) of the Local Rule Applicable to Criminal Proceedings, counsel for the defendants hereby certify that they have conferred in good faith with counsel for the United States to determine whether the information sought by this motion would be provided without the need for the filing the motion. Despite conferring in good faith, counsel for the defendants and the United States have been unable to resolve the dispute. Counsel for the United States informed counsel for the defendants that they should file a motion with the Court

seeking access to the Celona PSR. Counsel for the defendants inquired as to whether counsel for the United States had reviewed the Celona PSR for Brady/Giglio information, but counsel for the United States did not respond.

WHEREFORE, defendants John R. Kramer and Carlos Ortiz respectfully request that this Court conduct an in camera review of the Celona PSR and disclose to the defendants any material contained in that report that tends to exculpate the defendants or that could be used to impeach John Celona. In the alternative, the defendants respectfully request that this Court permit defense counsel to review the Celona PSR in chambers and identify for the Court any portions of the report that counsel consider to be exculpatory or impeachment material.

**STATEMENT PURSUANT TO LOCAL RULE 12(F)**

The filing and disposition of this motion constitutes excludable time as defined by 18 U.S.C. § 3161(h)(1)(f). It is not possible to estimate the amount of excludable time until the disposition of this motion. No motions dealing with the same subject matter have been filed in the past.

Dated: April 28, 2008

Respectfully submitted,

JOHN R. KRAMER,
By his Attorneys,

/s/ Peter DiBiase
Peter DiBiase
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903-3819
(401) 831-5020
attorney_pad@yahoo.com

David B. Fein
Scott D. Corrigan
*Pro Hac Vice Counsel*
WIGGIN AND DANA LLP
400 Atlantic Street

Stamford, CT 06901
(203) 363-7600
(203) 363-7676 (fax)
dfein@wiggin.com
scorrigan@wiggin.com

CARLOS ORTIZ,

By his Attorneys,

/s/ Mark L. Smith
Mark L. Smith
176 Eddie Dowling Highway
North Smithfield, RI 02896
(401) 769-4120
Lawmls@aol.com

Thomas R. Kiley
*Pro Hac Vice Counsel*
Cosgrove, Eisenberg and Kiley, P.C.
One International Place, Suite 1820
Boston, Massachusetts 02110
(617) 439-7775
trkiley159@aol.com

**CERTIFICATE OF SERVICE**

I, **Scott D. Corrigan**, certify that on the 28th day of April, 2008, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's electronic filing system. Notice of this filing will be sent by email to the following party by operation of the Court's electronic filing system:

- **Stephen G. Dambruch**
  stephen.dambruch@usdoj.gov

- **Daniel A. Petalas**
  Dan.Petalas@usdoj.gov

- **Peter Sprung**
  peter.sprung@usdoj.gov

- **AnnaLou Tirol**
  annalou.tirol2@usdoj.gov