UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CR 07-09-01 (MML) |
| v. | : | |
| | : | May 10, 2008 |
| JOHN R. KRAMER and | : | |
| CARLOS ORTIZ | : | |

---------------------------------------------------x

**DEFENDANTS' PROPOSED FINAL JURY INSTRUCTIONS**

Defendants John R. Kramer and Carlos Ortiz respectfully submit the following Proposed Final Jury Instructions regarding the charged offenses for use in the trial of the above-captioned case.

These instructions are derived principally from the final jury instructions delivered by this Court on August 4, 2005, in United States v. Potter, No. CR 03-081 (MML) ("Potter Instruction"), as well as the Pattern Criminal Jury Instructions for the District Courts of the First Circuit (1998) ("First Circuit Pattern Jury Instructions").

The instructions regarding federal program bribery pursuant to 18 U.S.C. § 666 are derived from Sand, Modern Federal Jury Instructions. The instructions regarding Rhode Island State law and the intent to deprive the public of John Celona's honest services, set forth herein at pages 9–11 and pages 16–17, respectively, are derived from United States v. Urciuoli, 513 F.3d 290 (1st Cir. 2008); United States v. Sawyer, 239 F.3d 31 (1st Cir. 2001); United States v. Woodward, 149 F.3d 46 (1st Cir. 1998); United States v. Sawyer, 85 F.3d 713 (1st Cir. 1996); and the Rhode Island General Laws.

The defendants respectfully request permission to supplement these proposed instructions as necessary during the course of trial.

Respectfully submitted,

JOHN R. KRAMER,
By his Attorneys,

/s/ Peter DiBiase
Peter DiBiase
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903-3819
(401) 831-5020
attorney_pad@yahoo.com
David B. Fein
Scott D. Corrigan
*Pro Hac Vice Counsel*
WIGGIN AND DANA LLP
400 Atlantic Street
Stamford, CT 06901
(203) 363-7600
(203) 363-7676 (fax)
dfein@wiggin.com
scorrigan@wiggin.com

CARLOS ORTIZ,
By his Attorneys,

/s/ Mark L. Smith
Mark L. Smith
176 Eddie Dowling Highway
North Smithfield, RI 02896
(401) 769-4120
Lawmls@aol.com

Thomas R. Kiley
*Pro Hac Vice Counsel*
Cosgrove, Eisenberg and Kiley, P.C.
One International Place, Suite 1820
Boston, Massachusetts 02110
(617) 439-7775
trkiley159@aol.com

## 1. CHARGES CONTAINED IN THE SUPERSEDING INDICTMENT

The Superseding Indictment in this case, which I will refer to throughout these instructions as the "Indictment," contains twenty-three counts or charges. The defendants in this case are John R. Kramer and Carlos Ortiz.

Count I of the Indictment charges that the defendants John R. Kramer and Carlos Ortiz conspired to commit an offense against the United States in violation of 18 U.S.C. § 371. Specifically, Count I charges that from a time unknown but from at least in or about May of 1999 and continuing until in or about December of 2003, the defendants Kramer and Ortiz conspired to commit honest services mail fraud, an offense prohibited by 18 U.S.C. §§ 1341 and 1346.

Counts II through XXII charge the defendants with the commission of specific acts of honest services mail fraud. Counts II through XXII pertain to mailings allegedly made or caused to be made by the defendants.

Count XXIII of the Indictment charges that the defendants committed federal program bribery in violation of 18 U.S.C. §§ Section 666(a)(2) and 2.

Again, I remind you that a separate crime is alleged against one or more of the defendants in each count of the Indictment, and you must consider each alleged offense and any evidence pertaining to it separately. The fact that you find one defendant guilty or not guilty as to one of the offenses charged should not affect your verdict as to the other offenses charged against either of the defendants.

I will now instruct you as to the legal elements of the crimes charged in the Indictment – each of which the prosecution must prove beyond a reasonable doubt to warrant a finding of guilt. Because I believe it will assist your understanding of my instructions on Count One, I will begin by instructing you on Counts Two through Twenty-Two.

Potter Instruction
United States v. Kramer, No. CR-07-09-01 (MML), Superseding Indictment, dated Mar. 12, 2008 ("Kramer Superseding Indictment")

## 2. COUNTS II THROUGH XXII: MAIL FRAUD

Counts II through XXII of the Indictment each charge that the defendants committed honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346, by using or causing the use of the United States mail. The Indictment reads as follows:

> [t]hat from in or about May 1998 through in or about December 2004, in the District of Rhode Island and elsewhere, defendants, KRAMER and ORTIZ, devised and intended to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of Celona and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment.

As I instructed you previously, you must consider each count and the evidence pertaining to it separately. The fact that you may find a defendant guilty or not guilty on one count must not affect your verdict as to the other defendant or any other count.

---

Potter Instruction
Kramer Superseding Indictment ¶¶ 96–105

3. 18 U.S.C. § 1341

A violation of Section 1341 occurs when a defendant, "having devised or intending to devise, any scheme or artifice to defraud . . . for the purpose of executing such scheme or artifice, or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . ."

---

Potter Instruction
18 U.S.C. § 1341

4. 18 U.S.C. § 1346

Title 18, Section 1346, defines a "scheme or artifice to defraud" as including "a scheme or artifice to deprive another of the intangible right of honest services."

---

Potter Instruction
18 U.S.C. § 1346

5. <u>18 U.S.C. § 1341 – ELEMENTS OF THE OFFENSE</u>

To sustain its burden of proof on a charge of mail fraud, the government must prove each of the following elements beyond a reasonable doubt as to each defendant so charged:

*First*: That a scheme to defraud existed substantially as charged in the Indictment;

*Second*: That the defendant knowingly and willfully participated in this scheme with the intent to defraud; and

*Third*: That in furtherance of the scheme, the defendant used or caused the use of the United States mail on or about the date alleged in the Indictment.

---

<u>Potter</u> Instruction
First Circuit Pattern Jury Instructions § 4.12

## 6. RHODE ISLAND LAW – HONEST SERVICES OF A RHODE ISLAND STATE LEGISLATOR

In this case, the Indictment charges that the defendants intentionally engaged in a scheme to deprive the citizens of Rhode Island of the honest services of John Celona, a Rhode Island State legislator. In order to understand the nature of the honest services owed by a Rhode Island legislator, and to determine whether the defendants intentionally engaged in a scheme to deprive the citizens of Rhode Island of the "honest services" of John Celona, you must consider Rhode Island State law.

In this regard, I should tell you several things about Rhode Island's system of government and laws regarding its state legislators. The State of Rhode Island's legislature, which is called the Rhode Island General Assembly, is what is known as a "citizens' legislature." This means that, unlike, for example, members of the United States Congress, who work full-time as legislators, Rhode Island State legislators are members of the community who serve only part-time in the State legislature and are paid only modestly for their work as legislators. Accordingly, Rhode Island State law permits legislators to hold jobs outside of the legislature, including working, as in this case, for private entities.

This concept of a citizens' legislature, which has been adopted by Rhode Island as well as various other states in the country, often results in situations where a certain piece of legislation under consideration could affect the interests of an entity for whom a legislator works. Under certain circumstances, legislators can still participate in such legislation. Specifically, Rhode Island State law contains a provision known as the "Class Exception." This provision expressly permits a legislator to take action on legislation that would affect a private entity for whom the

legislator works, as long as the legislation would affect that entity to no greater extent than any other similarly situated entities. This is referred to as the "Class Exception" because it applies when proposed legislation treats a *class* of entities -- such as all teachers or all retailers -- alike.

Under Rhode Island State law, the legislator is the one who is responsible for (1) identifying any actual or potential conflict of interest; (2) determining whether such a conflict, if one exists, needs to be disclosed; and (3) determining whether, under all the circumstances, he or she is permitted to participate in legislation. In this regard, legislators are permitted by Rhode Island State law to seek guidance and approval from a public body called the Rhode Island Ethics Commission, but Rhode Island State law does not require them to seek such guidance or approval. The Ethics Commission is an independent public agency created by amendment to the Rhode Island State Constitution. The Ethics Commission adopts, enforces, and administers Rhode Island's code of ethics, which governs the conduct of its public officials, including legislators. In 1999, in response to a request for guidance, the Ethics Commission determined that the Class Exception applied to Any Willing Provider legislation pending in that year.

Here, the defendants are not legislators; they are private citizens working for a private entity. Under Rhode Island State law, private citizens, including private citizens who have hired a legislator, have no obligation to identify or disclose a legislator's actual or potential conflict of interest. And they also have no obligation to determine (1) whether the legislator is prohibited from taking official action, such as voting on legislation, or (2) whether the Class Exception applies, which would permit the legislator to take such official action. Again, those are the responsibilities of the legislator alone.

Finally, Rhode Island State law does not prohibit private citizens or entities who have hired a legislator from communicating with that legislator about legislation that might be of interest to them. Again, it is the legislator's responsibility to determine whether or not he may participate in legislation that would affect the entity with whom he has a business relationship, and not the private citizens' responsibility to make that determination or to refrain from communicating with the legislator about any such legislation.

---

United States v. Urciuoli, 513 F.3d 290, 298 (1st Cir. 2008)
Nat'l Ass'n of Social Workers v. Harwood, 69 F.3d 622, 637 (1st Cir. 1995) (Lynch, J. dissenting)
R.I. CONST. art. III § 8
R.I. CONST art. VI
R.I. Gen. Laws § 36-14-4
R.I. Gen. Laws § 36-14-7
R.I. Gen. Laws § 36-14-11
R.I. Ethics Commission Advisory Opinion No. 99-063

## 7. "SCHEME TO DEFRAUD"

The first element of mail fraud is the existence of a scheme to defraud. A "scheme" includes any plan, pattern or course of action.

The term "defraud" means to deprive another of something of value by means of deception or cheating. A scheme to defraud is ordinarily accompanied by a desire or purpose to bring about some gain or benefit to oneself or some other person or entity or by a desire or purpose to cause some loss to some person. It includes a scheme to deprive another of the intangible right of honest services.

Public officials have a duty to act in the public's interest. A scheme to deprive the public of the honest services of a public official is a scheme intended to cause a public official to act based upon his or her own personal interests rather than for the benefit of the public.

In this case, the Indictment charges the existence of a scheme to deprive the citizens of Rhode Island of the honest services of John Celona.

As I will explain further, the public can be deprived of the honest services of a public official if (1) the public official is improperly influenced in the performance of his duties, or (2) the public official fails to disclose a material conflict of interest resulting in personal gain.

In order to prove that a scheme existed to deprive the public of the honest services of John Celona under the second of these theories -- which is sometimes referred to as an undisclosed-conflict theory -- the government must prove beyond a reasonable doubt that a material conflict of interest existed. In determining whether the government has met its burden in that regard, you must consider Rhode Island State law, on which I have already instructed you. A conflict of interest cannot arise from conduct that is expressly permitted under Rhode Island

State law. I further instruct you that you may not find the defendants guilty under an undisclosed conflict theory unless the government proves beyond a reasonable doubt that Rhode Island State law did not permit John Celona to participate in the official action under consideration.

---

<u>Potter</u> Instruction
First Circuit Pattern Jury Instructions § 4.1
<u>United States v. Urciuoli</u>, 513 F.3d 290, 298 (1st Cir. 2008)

## 8. "KNOWINGLY" AND "WILLFULLY" – DEFINED

The second element of the offense of mail fraud requires proof that the defendant knowingly and willfully participated in the scheme with the intent to defraud.

A defendant acts "knowingly" if he was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident.

An act is done "willfully" if it is done voluntarily and intentionally, and with the specific intent to do something the law forbids -- that is to say, with bad purpose, either to disobey or disregard the law. Thus, if a defendant acted in good faith, he cannot be guilty of honest-services mail fraud.

---

Potter Instruction
First Circuit Pattern Jury Instructions § 4.12

## 9. "INTENT TO DEFRAUD" – DEFINED

To act with an "intent to defraud" means to act willfully and with the specific intent to deceive or cheat. Thus, a defendant who acted in good faith cannot be guilty of honest-services mail fraud. The burden of proving intent, as with all other elements of the offense, rests with the government.

The government must prove both of the following types of intent beyond a reasonable doubt:

*First*: That the defendant intended to cause the public official to deviate from the honest performance of his public duties; and

*Second*: That the defendant intended to deceive the public.

Potter Instruction
First Circuit Pattern Jury Instructions § 4.1

10. INTENT TO DEPRIVE OF HONEST SERVICES

The government may prove the first kind of intent -- the intent that John Celona deviate from the honest performance of his public duties -- in either of two ways.

First, the government may seek to prove beyond a reasonable doubt that the defendant intended the payments or other things of value provided to John Celona to cause him to alter his official acts, to change a position which he would otherwise have taken, or to take official actions that he would not have taken but for the payments or other things of value. A defendant is guilty of honest services fraud under this theory only if the government proves beyond a reasonable doubt that the defendant intended to improperly influence or otherwise improperly affect John Celona's performance of his public duties and thereby to deprive the public of John Celona's honest services.

The second way in which the government may seek to prove a defendant's intent to deprive the public of the honest services of John Celona is to seek to prove beyond a reasonable doubt that the defendant intended for John Celona to fail to disclose a material conflict of interest. In order to find that a defendant acted with such intent, the government must prove that the defendant believed that a material conflict existed, and intended for John Celona to fail to disclose that conflict of interest and thereby to deprive the public of John Celona's honest services.

Under either of the approaches above, in determining whether a defendant intended that John Celona deviate from the honest performance of his public duties, you must again consider Rhode Island State law, which in part defines those duties.

When considering whether the government has met its burden of proving that the defendants acted with the intent that John Celona deviate from the honest performance of his public duties, I instruct you that certain forms of intent are not sufficient. For example, the intent to gain access to a public official in and of itself does not constitute an intent that the official deviate from the honest performance of his duties. Nor does the intent to cultivate business or political friendship with a public official. Providing political donations, hospitality, or entertainment, such as lodging, golf, sports events and the like, does not constitute honest services fraud if the defendant intended to gain access to the public official or cultivate a business or political friendship with the official, without any improper purpose or intent.

Likewise, I instruct you that the First Amendment to the United States Constitution guarantees the right of any citizen, including private citizens working on behalf of corporate entities, to engage in direct communication with public officials to persuade and influence them to benefit certain interests. The intent to persuade or influence a public official, in and of itself, does not constitute an intent that the official deviate from the honest performance of his duties.

---

First Circuit Pattern Jury Instructions § 4.1
United States v. Urciuoli, 513 F.3d 290 (1st Cir. 2008)
United States v. Sawyer, 239 F.3d 31, 41, 46–47 (1st Cir. 2001)
United States v. Woodward, 149 F.3d 46 (1st Cir. 1998)
United States v. Sawyer, 85 F.3d 713, 724, 729 (1st Cir. 1996)
United States v. Harriss, 347 U.S. 612 (1954)

11. INTENT TO DECEIVE

The government may prove the second kind of intent -- that the defendant intended to deceive the public concerning his conduct -- either through the defendant's own acts of deception towards the public or the defendant's efforts to ensure the official deceived the public with respect to payments to the official.

Evidence that the defendant intended to cause the official intentionally to fail to disclose material information about payments to that official is sufficient to show that the defendant intended that the public be deceived with respect to the defendant's alleged payments to the official.

Under this element, the government must prove that the defendant intended to deceive the public about the payments to Celona. Thus, proof that Celona acted under a material conflict of interest alone is not sufficient to prove honest-services mail fraud unless you also conclude that the defendant intended for any such conflict to be concealed from the public.

The government must prove beyond a reasonable doubt that the defendants intended to deceive the state and the public. In this regard, I instruct you that the Rhode Island Ethics Commission is a public body of Rhode Island State government, and that if you find that the defendants intended that John Celona disclose his relationship with the company to the Ethics Commission, you cannot find that they acted with the requisite intent to deceive the State and the public.

---

Potter Instruction
First Circuit Pattern Jury Instructions § 4.1
United States v. Sawyer, 85 F.3d 713 (1st Cir. 1996)

## 12. USE OF THE MAIL IN FURTHERANCE OF THE SCHEME

The use of the mail in furtherance of the scheme is an essential element of mail fraud. The use of the mail itself need not be false or fraudulent.

It is not necessary that the government prove all of the details alleged in the Indictment concerning the precise nature and purpose of the scheme, or that the material sent by mail was itself false or fraudulent, or that the alleged scheme actually succeeded in defrauding anyone, or that the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud.

What must be proved beyond a reasonable doubt is that the defendant knowingly devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the Indictment, and that the use of the mail on or about the dates alleged was closely related to the scheme because the defendant caused something to be mailed in an attempt to execute or carry out the scheme. To "cause" the mail to be used is to do an act with knowledge that a mailing will follow in the ordinary course of business or where such a communication can reasonably be foreseen.

---

Potter Instruction (as modified from wire fraud charge)
First Circuit Pattern Jury Instructions § 4.12

## 13. COUNT I: CONSPIRACY

Count I of the Indictment alleges that the defendants Kramer and Ortiz, in violation of 18 U.S.C. § 371, engaged in a conspiracy to commit a federal offense, specifically, that the defendants conspired to commit honest services mail fraud. The Indictment alleges that:

> From a time unknown but from at least in or about May of 1999, and continuing until in or about from December of 2003, in the District of Rhode Island and elsewhere, Defendants KRAMER and ORTIZ, knowingly, willfully, and unlawfully combined, conspired, confederated, and agreed with each other, and with John Celona, to commit an offense against the United States, specifically, having devised and intending to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment and for the purpose of executing that scheme and artifice, to knowingly and willfully cause to be placed in an authorized depository for mail, according to the directions thereon, to the person to whom it was addressed, matter to be delivered by the United States Postal Service, in violation of 18 U.S.C. §§ 1341 and 1346.

---

Potter Instruction
Kramer Superseding Indictment ¶ 25

14. 18 U.S.C. § 371

Title 18, Section 371, provides, in pertinent part, that "if two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each is guilty of a violation of 18 U.S.C. § 371.

Potter Instruction
18 U.S.C. § 371

## 15. 18 U.S.C. § 371 – ELEMENTS OF THE OFFENSE

To sustain its burden of proof as to the offense charged in Count I, the government must prove each of the following elements beyond a reasonable doubt as to each defendant:

*First*: That the agreement as set forth in the Indictment and not some other agreement existed between two or more persons;

*Second*: That the defendant knowingly and willfully joined in that agreement; and

*Third*: That one of the conspirators committed at least one of the overt acts set forth in the Indictment in an effort to further the purpose of the conspiracy.

---

Potter Instruction
First Circuit Pattern Jury Instructions § 4.03

## 16. CONSPIRACY – GENERALLY

A conspiracy is an agreement or combination of two or more persons to violate the law. It is a kind of partnership in which each member of the conspiracy, just by being a member of the conspiracy, becomes an agent of every other member of the conspiracy. What this means is that each conspirator acts not only for himself but also acts for the other conspirators. In other words, a conspiracy is a combination or an agreement to disobey or disregard the law to achieve the unlawful purpose.

In this case, the Indictment alleges that there was an agreement between defendants Kramer and Ortiz to commit mail fraud. It is not necessary that the government prove that the unlawful purpose of the conspiracy actually was achieved in order to prove that the conspiracy existed. It must prove, however, that defendants Kramer and Ortiz in some way or manner, or through some means, came to a mutual understanding to accomplish their common unlawful purpose and that they did so knowingly, willfully, and intentionally.

---

Potter Instruction
First Circuit Pattern Jury Instructions § 4.03

## 17. CONSPIRACY – TIME PERIOD

The Indictment charges that the conspiracy existed from at least in or about May of 1999 to in or about December 2003. In determining whether the defendants conspired as charged, you need not find the precise time frame in which the conspiracy was in existence. Instead, it is sufficient that you find that a conspiracy was in existence for any period of time reasonably described by the period alleged in the Indictment and that the defendant was a member of that conspiracy during that period.

---

Potter Instruction
Kramer Superseding Indictment ¶ 25

## 18. EXISTENCE OF THE CONSPIRACY

In your consideration of the conspiracy offense alleged in Count I, you should first determine from all the evidence and testimony in the case whether or not a conspiracy existed as charged.

A conspiracy is an agreement, spoken or unspoken. A conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all the details. However, the government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime. Mere similarity of conduct among various people or the fact that they may have associated with each other or discussed common aims and interests does not necessarily, in and of itself, establish proof of the existence of a conspiracy; but you may consider such factors.

Since a conspiracy by its very nature is often secret, neither the existence of the common agreement or scheme, nor the fact of a defendant's participation in it, need be proven by direct evidence. Both may be inferred from the circumstances of the case and the course of dealings between defendants Kramer and Ortiz.

---

Potter Instruction
First Circuit Pattern Jury Instructions § 4.03
Sand, Modern Federal Jury Instructions § 19-4

## 19. MEMBERSHIP IN THE CONSPIRACY

In addition to proving that the conspiracy charged in the Indictment existed, the government must also prove beyond a reasonable doubt that the defendant willfully joined in that agreement. To act "willfully" means to act voluntarily and intelligently and with the specific intention that the underlying crime -- here, honest services mail fraud -- be committed. In other words, to act willfully means to act with bad purpose, either to disobey or disregard the law, not to act by ignorance, accident or mistake.

Proof that a defendant willfully joined in the agreement must be based upon evidence of the defendant's own words and/or actions. You need not find that the defendant agreed specifically to or knew about all of the details, or the scope, of the conspiracy or that the defendant participated in each act of the agreement or played a major role. However, the government must prove beyond a reasonable doubt that the defendant knew the essential features and general aims of the venture. On the other hand, a defendant who has no knowledge of a conspiracy but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

Mere knowledge or acquiescence in an unlawful plan, without participation in it, is not sufficient. More is required under the law. What is necessary is that a defendant participated with knowledge of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those objectives.

The extent of a defendant's participation in a conspiracy has no bearing on the issue of that defendant's guilt. A conspirator's liability is not measured by the extent or duration of that conspirator's participation. Each conspirator may perform separate and distinct acts and may

perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. Even a single act may be sufficient to draw a defendant within the ambit of a conspiracy if the act is done with the intention of agreeing to join the conspiracy and the intention of accomplishing the conspiracy's unlawful purpose.

---

Potter Instruction
First Circuit Pattern Jury Instructions § 4.03

## 20. INTENT

To establish that a defendant willfully joined in a conspiracy, the government must prove two types of intent beyond a reasonable doubt: (1) an intent to agree, and (2) an intent that the underlying crime, in this case, honest services mail fraud, be committed. The government need not prove that the defendant agreed to commit the underlying offense personally. It is sufficient that the defendant intended that the offense be committed, if not by himself, then by a co-conspirator. An individual's intent may be inferred from all of the surrounding circumstances.

---

Potter Instruction
First Circuit Pattern Jury Instructions § 4.03

21. CONSIDERATION OF ACTS AND STATEMENTS OF CO-CONSPIRATORS

In deciding whether a defendant was a member of the conspiracy, you should first consider the evidence of that particular defendant's own acts and statements. You may also consider any other evidence in the case as it bears on the issue of a defendant's membership. Specifically, you may consider the acts and statements of the other alleged co-conspirator, even if the defendant was not present at the time the acts were done or the statements were made. However, you may do so only if you find that the defendant was a member of the conspiracy at the time that the acts were done or the statements made, and only if you find that the acts were done and the statements were made by a person whom you find to be a member of the conspiracy during the conspiracy's existence and in furtherance of one of its purposes. If the acts were performed or the statements were made at a time when the defendant you are considering was not a member of the conspiracy or were performed or made by someone who you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, then they may be considered as evidence only against the conspiracy member who did or said them and not against any other defendant. You are instructed that in this case there are only three natural persons alleged to have entered into the agreement described in the Indictment: John Celona, defendant John R. Kramer, and defendant Carlos Ortiz.

---

Potter Instruction
Kramer Superseding Indictment ¶ 25

## 22. "OVERT ACT" REQUIREMENT

In order to prove a conspiracy, the government must prove that, after the conspiracy was entered, one of the members of the conspiracy committed an overt act in an effort to accomplish some purpose of the conspiracy. In this case, paragraphs 32 through 95 of the Indictment set forth the overt acts alleged to have been committed in furtherance of the conspiracy charged.

An "overt act" is any act knowingly committed by one or more of the conspirators in an effort to accomplish some purpose of the conspiracy. Only one overt act has to be proven. The overt act itself need not be a crime. The government is not required to prove that the defendant personally committed or knew about the overt act. It is sufficient if one conspirator committed one overt act at some time during the period of the conspiracy. However, you must unanimously agree as to which overt act alleged in the Indictment has been proven beyond a reasonable doubt.

---

Potter Instruction
First Circuit Pattern Jury Instructions §4.03
Sand, Model Federal Jury Instructions §19-7
Kramer Superseding Indictment ¶¶ 32–95

23. CONSPIRACY – SUCCESS IMMATERIAL

The government does not have to prove that the conspiracy succeeded or that its object was achieved. The crime of conspiracy is complete upon the agreement to commit the underlying crime and the commission of one overt act.

---

Potter Instruction
First Circuit Pattern Jury Instructions §4.03

24. COUNT XXIII: FEDERAL PROGRAM BRIBERY

Count XXIII of the Indictment charges that the defendants committed federal program bribery in violation of 18 U.S.C. §§ Section 666(a)(2) and 2. The Indictment alleges that:

> For each of the years 1999, 2000, 2001, 2002 and 2003, the State of Rhode Island received benefits in excess of $10,000 per year from federal programs involving grants, contracts subsidies, loans guarantees, insurance, and other forms of federal assistance.
>
> From in or about May 1999 through in or about December 2003, in the District of Rhode Island and elsewhere, defendants KRAMER and ORTIZ did knowingly and corruptly give, offer, and agree to give something of value to any person with intent to influence and reward an agent of the State of Rhode Island in connection with the business, transaction, and series of transactions of such government, and involving something of value of $5,000 or more, namely: defendants KRAMER and ORTIZ, as executives of CVS, caused CVS to make approximately $45,000 in payments and to provide other things of value to John Celona, a Rhode Island State Senator and an appointed Senate member of the RISLA, to influence and reward him in connection with the business and transactions of the Rhode Island Senate concerning Freedom of Choice, Pharmaceutical Returns, Canadian Pharmacies, and Electronic Prescription legislation, and in connection with the business and transactions of the RISLA concerning the Pharmacy Student Loan program.

---

Kramer Superseding Indictment ¶¶ 107–08

## 25. <u>18 U.S.C. § 666(a)(2)</u>

Title 18, Section 666(a)(2) provides in relevant part:

> Whoever . . . corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State . . . , or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more shall be [guilty of a violation of the statute].

---

18 U.S.C. § 666(a)(2)

26. 18 U.S.C. § 666(c)

Title 18, Section 666(c) provides that Section 666 does not apply to "bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."

18 U.S.C. § 666(c)

## 27. 18 U.S.C. § 666(a)(2) – ELEMENTS OF THE OFFENSE

In order to prove the defendant under consideration guilty of bribery relating to an organization or government which receives federal funds, the government must prove each of the following elements beyond a reasonable doubt:

*First*: That at the time alleged in the Superseding Indictment, John Celona was an agent of the State of Rhode Island as a Rhode Island State Senator and as an appointed member of the Rhode Island Student Loan Authority;

*Second*: That in a particular one-year period charged in the Superseding Indictment, the State of Rhode Island received federal benefits in excess of $10,000;

*Third*: That a defendant under consideration gave something of value to John Celona;

*Fourth*: That the defendant under consideration acted corruptly with the intent to influence or reward John Celona with respect to a transaction of the Rhode Island General Assembly; and

*Fifth*: That the value of the transaction to which the payment related was at least $5,000.

---

Sand, Modern Federal Jury Instructions, §27A-16

## 28. "AGENT" -- DEFINED

An "agent" is a person authorized to act on behalf of another person, organization or government. Employees, partners, directors, officers, managers, and representatives are all agents of the organization or government with which they are associated. Elected officials are agents of the government to which they were elected to serve.

---

Sand, Modern Federal Jury Instructions, §27A-17
United States v. Sotomayor-Vazquez, 249 F.3d 1 (1st Cir. 2001)

## 29. "ONE YEAR PERIOD" -- DEFINED

The government must establish beyond a reasonable doubt that in the particular one year period alleged in the Indictment, the State of Rhode Island received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance or some other form of federal assistance. The one-year period must begin no more than 12 months before the defendant under consideration is alleged to have committed the acts in the Indictment, and must end no more than 12 months after those acts.

Sand, Modern Federal Jury Instructions, §27A-18

## 30. "CORRUPTLY" -- DEFINED

The fourth element the government must prove beyond a reasonable doubt is that the defendant under consideration gave something of value to John Celona knowingly and corruptly and with the specific intent to influence or reward Celona's actions in connection with some business or transaction of the Rhode Island General Assembly.

To act corruptly means to act voluntarily and intentionally with an improper motive or purpose to influence or reward Celona's actions. This involves conscious wrongdoing, or as it sometimes been expressed, a bad or evil state of mind.

In considering this element, remember that it is the intent of the defendant under consideration which is important, not the subsequent actions of Celona or the General Assembly of the State of Rhode Island. Thus, the government does not have to prove that Celona accepted the bribe offer or that the bribe actually influenced the final decision of Celona or Rhode Island's General Assembly. It is not even necessary that Celona had the authority to perform the act which the defendant sought.

---

Sand, Modern Federal Jury Instructions, §27A-20

## 31. BONA FIDE COMPENSATION

In order to meet its burden on a charge of federal program bribery, the government must prove beyond a reasonable doubt that the payments or things of value given to John Celona were given corruptly and were not bona fide compensation paid in the ordinary course of business.

---

18 U.S.C. § 666(c)

## 32. VALUE OF TRANSACTION

The fifth element the government must prove beyond a reasonable doubt is that the value of the transaction to which the alleged payment related was at least $5,000. To establish this element, the government must prove that the defendant under consideration intended to influence or reward John Celona in connection with any business, transaction, or series of transactions of Rhode Island's General Assembly involving anything of value of $5,000 or more. If you find that the business or transaction in question had a value of at least $5,000, this element is satisfied.

The government is not required to prove that the defendant under consideration paid or offered at least $5,000. It is the value of the business or transaction that the alleged bribe was intended to influence or reward that is important for the purpose of this element.

---

Sand, Modern Federal Jury Instructions, § 27A-21

## 33. UNANIMITY AS TO PARTICULAR PAYMENT

Finally, I instruct you that in order for you to find the defendant under consideration guilty of a charge of federal program bribery, you must unanimously agree on whether any particular payment or other thing of value violated the statute, and, if so, on which payment or thing of value violated the statute.

---

United States v. D'Amico, 496 F.3d 95, 98 (1st Cir. 2007)
United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995)

## 34. AIDING AND ABETTING

In addition to charging each defendant as being liable as a principal, Counts II through XXIII of the Indictment also charge each defendant with a violation of 18 U.S.C. § 2, or aiding and abetting the crimes of mail fraud and federal program bribery.

To "aid and abet" means intentionally to help someone else commit a crime. To establish aiding and abetting, the government must prove beyond a reasonable doubt that (1) someone else committed the charged crime and (2) the defendant under consideration willfully associated himself in some way with the crime and willfully participated in it as he would in something he wished to bring about.

This means that the government must prove beyond a reasonable doubt that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him. The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its execution to be guilty of aiding and abetting.

But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

---

First Circuit Pattern Jury Instructions § 4.02
Kramer Superseding Indictment ¶¶ 105, 108

**CERTIFICATE OF SERVICE**

I, **David B. Fein**, certify that on the 10th day of May, 2008, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's electronic filing system. Notice of this filing will be sent by email to the following party by operation of the Court's electronic filing system:

- **Stephen G. Dambruch**
  stephen.dambruch@usdoj.gov

- **Daniel A. Petalas**
  Dan.Petalas@usdoj.gov

- **Gerard B. Sullivan**
  gerard.sullivan@usdoj.gov

- **Peter Sprung**
  peter.sprung@usdoj.gov

- **AnnaLou Tirol**
  annalou.tirol2@usdoj.gov