IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

```
* * * * * * * * * * * * * * * *    C.R. NO. 07-009ML
                              *
UNITED STATES OF AMERICA      *
                              *
    VS.                       *    MAY 23, 2008
                              *    9:00 A.M.
JOHN R. KRAMER and            *
CARLOS ORTIZ                  *
                              *
* * * * * * * * * * * * * * * *    PROVIDENCE, RI
```

BEFORE THE HONORABLE MARY M. LISI,

CHIEF JUDGE

(Jury Trial)

you when it's going to be filed. I want it no later than Tuesday before we start.

MR. DAMBRUCH: Yes, Judge. I think she's finishing it up today.

THE COURT: If she can file it today, all the better. I will tell you candidly I have some grave concerns regarding the exchange you had with Mr. Celona about whether or not CVS was identified in his telephone call with the Ethics Commission, whether that was an imaginary call, whether it really happened, because of the Government's knowledge of his previous testimony, grand jury and during Urciuoli, that he had mentioned CVS.

The concern I have specifically, and you can ask her to address this in her response, was that once you elicited from him the "no" answer, I believe you had an obligation under 3.3 of the Rules of Professional Conduct, 3.3(a)(4), to correct the record.

Instead, what you did was you underscored that false answer by asking him the series of "why not" questions, which then his responses were basically shoveling more dirt on the grave of the Defendants.

I need an explanation, and I'll hear what you have to say in terms of what remedy I should employ; but I will tell you, I'm deeply disturbed by it.

If you want to make a comment now, you can. If you want to wait until your written submission, that's fine. And I don't mean to suggest that I've decided that you have committed any sort of a violation. I'm merely pointing out the rule to you and your obligation and the concern I have in terms of how it affects the trial.

MR. DAMBRUCH: Your Honor, all I can say, and I believe Ms. Donovan will address this in our response, is that my questions to him were founded upon my interactions with him at the three trial preparation sessions; that the first time I met with him in regard to this case was in Pennsylvania and that when I asked him questions about that call, he indicated to me that he -- that his recollection at this point in time was that he had not mentioned the name of CVS.

And he was very specific about that. He persisted in that recollection at each and every one of the two subsequent trial preparation proceedings.

I know he had said some different things before, and we had provided those documents to defense counsel. So when I asked that question, I had a good faith belief that that was what he was reporting his recollection was, and I did not believe that to be perjured testimony. I understand it was inconsistent,

but I did not believe it to be perjured testimony.

THE COURT: That's why I've said I'm not suggesting that I've made such a determination, but I am concerned with the way this thing came out. Even in your pretrial memo, as the Defendants point out, you report that conversation as how he said he had something to do with CVS.

Did you in your meetings with him when he persisted in this now 2008 recollection remind him of what he had said before the grand jury?

MR. DAMBRUCH: We asked him to read his grand jury testimony between the first and second day. He also had some issues with regard to his memory of whether or not he had ever discussed that opinion with Mr. Ortiz or Mr. Kramer.

We asked him again to read his grand jury testimony. After he read it, he assured -- in fact, when I left Pennsylvania, he was still within the position that he didn't recall ever discussing it with the two Defendants.

When he came here to Rhode Island, he indicated that he now did recall that he had discussed the matter with Mr. Kramer -- Mr. Ortiz but couldn't recall the presence of Mr. Kramer. So we asked him to read his grand jury testimony. I didn't point him to specific

sections, Judge.

THE COURT: That's what I'm asking you. Did you point it out to him and say, Look, on five different occasions under oath at a time closer, and also you've got the 302s from the FBI agents, you said you talked -- you mentioned CVS? Did you do that?

MR. DAMBRUCH: I did not specifically point to him. What I did is I asked him to read his testimony. I'll be honest, Judge, my concern was I did not want to tell him how to testify or that he had to testify consistently with anything else.

I asked him a question. We asked him to review his grand jury transcripts over the night. And then as we left, we had asked to take those with us because of his concerns, et cetera. So that was what I did, and I based my questions on those preparation sessions.

THE COURT: I have to tell you, it does not look good. I am less concerned with the exchange regarding whether or not it was Kramer and Ortiz or just Ortiz because the line of questioning there was not as, I think, direct.

But I am concerned with the fact that once you elicited from him, No, I never said CVS, that there were the follow-up questions which were clearly designed to elicit from him a response that was I think

very powerful evidence of criminal intent.

So I'll wait to see the response, but I'm going to take this up on Tuesday, and I will make a determination as to what remedy, if any, I will employ. And the sooner she can get that response in, the better.

MR. TRAINI: Judge, if I can, just a couple of things. One is that regardless of --

THE COURT: Speak up a little.

MR. TRAINI: Regardless of whatever determination you make about Mr. Dambruch's comment, we still obviously believe we're entitled to some kind of relief anyway.

THE COURT: Well, I haven't suggested whether or what I will do. I think he has a right to provide a response, and that's why I wanted to make sure you knew before you left today that it's something I will take up. I'm not going to let this one slide.

MR. TRAINI: Well, we also -- I don't know how quickly the Government will get its response in. We'd like to be able to see it, and we certainly want to be heard on Tuesday.

THE COURT: Absolutely. I wanted to make sure Mr. Dambruch knew because he's involved in the middle of trial and sometimes you don't have the chance

because you're preparing and doing other things to read everything that's filed during the course of a trial like this, but I wanted to make sure he understood that.

I read it yesterday afternoon and became very concerned and then looked at what the rules are on what you do when you've got testimony that you know to be false.

He was a horrible witness. I can't imagine how difficult it was to have to deal with him. But I do think when he's committed under oath and then he gives you testimony that's in the opposite direction, that it's certainly something that needs to be scrutinized carefully.

MR. FEIN: Your Honor, I would add one more thing. I'm not going to address our brief that you just read, but what I've just heard from Mr. Dambruch is the first time we've heard what he just described in terms of his knowledge of these events. We were not provided this as Brady or Giglio in advance of the witness's testimony. In addition to the professional rules, I think there are Brady and Giglio issues there as well.

THE COURT: I'll see you Tuesday.

(End of bench conference)