IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.R. NO. 07-009ML |
| UNITED STATES OF AMERICA * | |
| VS. * | MAY 30, 2008<br>9:00 A.M. |
| JOHN R. KRAMER and *<br>CARLOS ORTIZ * | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE MARY M. LISI,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

FOR THE GOVERNMENT: STEPHEN G. DAMBRUCH, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

DAN PETALAS, ESQ.
Department of Justice
Criminal Division - Public Integrity
1400 New York Avenue, N.W.
Washington, D.C. 20530

FOR THE DEFENDANT, KRAMER: PETER DiBIASE, ESQ.
91 Friendship Street, 3rd Floor
Providence, RI 02903

DAVID B. FEIN, ESQ.
SCOTT CORRIGAN, ESQ.
Wiggin and Dana, LLP
400 Atlantic Street
Stamford, CT 06911

FOR THE DEFENDANT, ORTIZ: MARK L. SMITH, ESQ.
Law Offices of Mark L. Smith
176 Eddie Dowling Highway
Suite 101
North Smithfield, RI 02896

ANTHONY TRAINI, ESQ.
56 Pine Street, Suite 200
Providence, RI 02903

THOMAS R. KILEY, ESQ.
Cosgrove Eiseberg & Kiley, P.C.
One International Place
Suite 1820
Boston, MA 02110

Court Reporter: Karen M. Wischnowsky, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

30 MAY 2008 -- 9:00 A.M.

(The jury is not present for the following)

THE COURT: Before we bring the jury in, I understand, Mr. Fein, you wanted to place something on the record outside the presence of the jury.

MR. FEIN: Thank you, your Honor. We actually have two quick things, one regarding the rebuttal by Mr. Dambruch yesterday, and then Mr. Corrigan would like to address one matter on the instructions.

In addition to asking the jury to find guilt based on innocent conduct, such as PAC contributions, Mr. Dambruch in the rebuttal did something that was emblematic of the prosecution'S improper and prejudicial use of John Celona throughout this trial.

One of the last things Mr. Dambruch said to the jury was to suggest that there could have been some confusion as to what event it was where Mr. Kramer approached John Celona to first discuss the consulting relationship.

This is another instance of the prosecution asking the jury to find what the clear record does not support. Faced with documentary evidence as reviewed in my summation that Mr. Kramer was not even in Rhode Island on the night of the McCaffrey fundraiser, Mr. Dambruch tried to change John Celona's story.

Mr. Dambruch knew that John Celona had never been confused on this point of the first meeting, and he did not ask John Celona if he could have been confused during the testimony because he knew what the answer would be.

In the direct testimony, John Celona testified that he vividly recalled the discussion with Mr. Kramer at the McCaffrey fundraiser. And all of the prior testimony, all of the 302s, all of the agents' notes are very clear about that.

But Mr. Dambruch tried to suggest on rebuttal that it could have happened at Celona's own fundraiser a few days earlier, but John Celona has rejected that suggestion previous to this trial.

In agents' notes, John Celona said, I don't recall seeing Kramer at essentially his fundraiser. In a 302 from 2007, John Celona said he did not recall Kramer attending the fundraiser.

And nonetheless, Mr. Dambruch suggested that during rebuttal, it's something on direct examination that John Celona said he vividly recalled happening at the McCaffrey fundraiser, and we were given no opportunity to rebut that.

THE COURT: I understand you placed it on the record, but what relief are you seeking?

MR. FEIN: It's consistent with the relief we've sought based on the use of John Celona, which is consistent with our motion for a mistrial with prejudice. And we want to just raise one thing about the instructions. I don't know if you --

THE COURT: I want to hear from Mr. Dambruch on this point first.

Mr. Kiley, I know you join.

MR. KILEY: Correct.

MR. DAMBRUCH: Your Honor, during the course of the trial, and more specifically the direct examination of Mr. Celona, I specifically asked him about his awareness that his fundraiser was on the 25th.

I also asked him questions about were there other fundraisers, the number of them, that he attended many.

I would argue to the Court there's nothing wrong with my argument. I simply brought to the jury's attention that there was at least one other event in that time frame and left it to the jury to decide whether the inconsistency or the so-called alibi was a matter of bad recollection on behalf of Mr. Celona or -- it's up to them to decide what it's all about. It was a fact in evidence.

THE COURT: Oh, Mr. Dambruch. I read this

morning that portion of the direct examination. It is true that after you elicited from Mr. Celona his description of the meeting with Mr. Kramer specifically at the McCaffrey fundraiser, the Knights of Columbus hall, he described the menu.

MR. DAMBRUCH: He did.

THE COURT: You then asked him, frankly, I thought it was sort of irrelevant when you did, but you asked him, Did you have one, too? He said, Yes. You asked him if he went to other fundraisers. What you did not ask him is, Are you sure it was at the McCaffrey fundraiser?

So I think the Defendants taking exception with your inviting the jury now to fill in a gap that was not presented during the testimony is improper.

MR. DAMBRUCH: Your Honor, there was evidence presented during the course of the trial that Mr. Kramer did attend that May 25th fundraiser, and that was by way of the documentary evidence submitted from CVS, both the notation in his calendar --

THE COURT: But Mr. Celona never testified to the contrary, that he might have had that conversation at that particular fundraiser. I understand that you asked him whether or not there were other ones, and there may be documentary evidence to the -- on the

point that Mr. Kramer may have attended the other one; but what's missing is what you're inviting the jury to now do, which is to speculate that maybe Celona was mistaken about the date. He never said that.

And so what I will do is instruct the jury this morning to disregard that portion of your argument. As I said, I've reviewed the transcript from the direct exam, and I'm not satisfied that your rebuttal argument on that point was appropriate. So that's how I'm going to deal with that one.

MR. DAMBRUCH: Yes, your Honor.

MR. TRAINI: Your Honor, excuse me. Before Mr. Corrigan brings up the other jury instruction, Mr. Fein's statement to you earlier, we also would submit that that's additional grounds for the remedial instruction that we asked for at the charge conference pursuant to the *Osorio* case.

THE COURT: I understand. I'm not going to give it. I don't think *Osorio* requires it. Okay. Mr. Corrigan?

MR. CORRIGAN: Yes, your Honor. Your Honor, the matter that I'd like to address relates to something that was brought up during the charge conference, and it has to do with the instructions related to the federal program bribery count.

During the charge conference, the Government asked that the Rhode Island Student Loan Authority be inserted in the value of the transaction portion of the charge.

THE COURT: Actually, I don't think they requested that. I think I had already inserted it.

MR. CORRIGAN: Okay. I would like to point out that the Indictment itself does not have that language. If you look at Count XXIII of the Indictment, what the Indictment states is that --

THE COURT: Just a minute. John, do you have the Indictment handy? I've left mine in chambers.

I see what you're saying. Go ahead, Mr. Corrigan.

MR. CORRIGAN: The point being, your Honor, that the Indictment itself only refers to influencing and rewarding Mr. Celona in connection with the business and transactions of the Rhode Island Senate.

It does not contain any language about influencing and rewarding him in connection with the transactions of the Rhode Island Student Loan Authority.

THE COURT: You need to look at the next page.

MR. CORRIGAN: I've looked at it. Thank you, your Honor.

THE COURT: There was a reason why I inserted it.

MR. CORRIGAN: I see that reason.

THE COURT: Okay. Anything further before we bring the jury in?

MR. DAMBRUCH: No, your Honor.

THE COURT: Now, for those of you who are in attendance here this morning, in addition to the parties who obviously will remain during the instructions, the jury instructions in this case will take me approximately one hour to deliver orally to the members of the jury.

Once I begin those instructions, I will not permit people walking in or out of the courtroom. So if you're here, you're welcome to stay. If you do not wish to remain for the entire time that I am instructing the jury, then you may leave now. But if you elect to stay, I just wanted you to understand that I don't wish to have the jury distracted by people walking in and out.

Mike, would you bring the jury in, please.

(The jury is present for the following)

THE COURT: Good morning. Members of the jury, before I give you those final and detailed instructions on the law which will guide you in your deliberations,

there is one matter I need to address with you this morning, and that is yesterday during the Government's rebuttal argument to you, Mr. Dambruch said something to the effect of the meeting between Mr. Kramer and Mr. Celona at the McCaffrey fundraiser, which Mr. Fein addressed in his closing, I think Mr. Dambruch may have said something to the effect of, Well, it may have been at a different fundraiser. You are to disregard that remark.

And now, members of the jury, as I know you have throughout this trial, I ask that you give me your close and undivided attention.

I should tell you that in addition to receiving these instructions now orally in the courtroom, I will provide you with a written copy so that you will have them available to you during your deliberations. For now, however, even knowing that you will receive a written copy, I ask that you listen very closely.

Members of the jury, we have now come to the end of this trial. This case, like all criminal cases, is a serious one. I say this because the Defendants and the United States have a deep concern for your mature consideration of the evidence as presented and the law which I am about to give to you.

Although you, as the jury, are the sole judges

of the facts, you are duty-bound to follow the law as I instruct you and to apply that law to the facts as you find them to be from the evidence which has been presented during this trial.

You are not to single out any one instruction as stating the law. Rather, you must consider these instructions in their entirety.

You are not to be concerned with the wisdom of any rule of law, regardless of any opinion which you might have as to what the law ought to be.

It would be a violation of your sworn duty to base your verdict upon any version of the law other than that which I am about to give to you.

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the Indictment and the denials made by the not guilty pleas of the Defendants.

You are to perform this duty without bias or prejudice as to any party. The law does not permit jurors to be governed by sympathy, prejudice or public opinion.

The accused and the Government are entitled to an impartial consideration of all the evidence. Moreover, the parties and the public expect that you will carefully and impartially consider all the

evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

The fact that the prosecution is brought in the name of the United States of America entitles the Government to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. All parties, whether Government or individuals, stand as equals at the bar of justice.

For the purpose of determining whether or not the Government has sustained its burden of proof, you must evaluate all of the evidence.

The evidence in this case consists of the sworn testimony of the witnesses, all exhibits received in evidence, and any facts to which the parties have stipulated. Prior recorded testimony under oath is also evidence.

Any proposed testimony or proposed exhibit to which an objection was sustained by the Court, as well as any testimony ordered stricken by the Court, must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not proper evidence and must be entirely disregarded.

An Indictment is not evidence. This case, like most criminal cases, began with an Indictment. You will have that Indictment before you in the course of your deliberations in the jury room.

The Indictment was returned by a grand jury, which heard only the Government's side of the case. The fact that the Defendants have had an Indictment filed against them is no evidence whatsoever of the guilt of any Defendant.

An Indictment is nothing more than an accusation. It is a piece of paper filed with the Court to bring a criminal charge against a Defendant.

Here, the Defendants have pleaded not guilty and have put in issue the charges alleged in the Indictment. The Government, therefore, has the burden of proving the allegations made against the Defendants.

The fact that an Indictment has been filed in this case does not give rise to a presumption of guilt. It does not even lead to an inference of guilt. The Indictment simply brings this matter before you for determination. Beyond that, it has no significance whatsoever.

In determining whether the Government has sustained its burden of proof, you are to consider only the evidence; but in your consideration of the

evidence, you are not limited to the statements of witnesses or solely to what you see and hear as the witnesses testify.

You are permitted to draw, from the facts which you find have been proven, such reasonable inferences as seem justified in light of your experiences.

Inferences are deductions or conclusions which reason and common sense lead you to draw from facts which have been established by the evidence in the case. You may not, however, draw an inference from another inference.

As I told you at the beginning of this case, there are two kinds of evidence which you may consider, direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness that the witness saw something.

Circumstantial evidence is indirect evidence, that is, proof of a fact or facts from which you could draw the inference by reason and common sense that another fact exists, even though it has not been proven directly.

You are entitled to consider both kinds of evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give any evidence.

The fact that the Court may have admitted evidence over objection should not influence you in determining the weight that you give such evidence. Nor should statements made by counsel either for or against the admission of offered evidence influence your determination of the weight that you will give the evidence, if admitted.

In other words, you should determine the weight that you will give such evidence on the basis of your own consideration of it and without regard to the statements of counsel concerning the admissibility of such evidence.

If any reference by the Court or by counsel to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations.

It is a cardinal principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his or her guilt is established beyond a reasonable doubt.

The presumption is not a mere formality. It is a matter of the utmost importance. The presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of a Defendant.

Each Defendant before you has the benefit of

that presumption throughout the trial, and you are not to convict a Defendant of a particular charge unless you are unanimously persuaded of that Defendant's guilt on that charge beyond a reasonable doubt.

This presumption was with each Defendant when the trial began and remains with each Defendant even now as I speak to you and will continue with each Defendant into your deliberations unless and until you are convinced that the Government has proven a Defendant's individual guilt beyond a reasonable doubt.

As I have said, the burden is upon the Government to prove beyond a reasonable doubt that a Defendant is guilty of the charge made against the Defendant.

It is a strict and heavy burden, but it does not mean that a Defendant's guilt must be proved beyond all possible doubt. It does require that the evidence exclude any reasonable doubt concerning a Defendant's guilt.

A reasonable doubt may arise not only from the evidence produced but also from a lack of evidence. Reasonable doubt exists when, after weighing and considering all the evidence, using reason and common sense, jurors cannot say that they have a settled conviction of the truth of the charge.

Of course, a Defendant is never to be convicted on suspicion or conjecture. If, for example, you view the evidence in the case as reasonably permitting either of two conclusions, one that a Defendant is guilty as charged, the other that the Defendant is not guilty, you will find the Defendant not guilty.

It is not sufficient for the Government to establish a probability, though a strong one, that a fact charged is more likely to be true than not true. That is not enough to meet the burden of proof beyond a reasonable doubt.

On the other hand, there are very few things in this world that we know with absolute certainty; and in criminal cases, the law does not require proof that overcomes every possible doubt.

I instruct you that what the Government must do to meet its heavy burden is to establish the truth of each element of each offense charged by proof that convinces you and leaves you with no reasonable doubt and thus satisfies you that you can, consistently with your oath as jurors, base your verdict upon it.

If you so find as to a particular charge against a Defendant, you will return a verdict of guilty on that charge.

If, on the other hand, you think there is a

reasonable doubt about whether the Defendant is guilty of a particular offense, you must give the Defendant the benefit of the doubt and find the Defendant not guilty of that offense.

A Defendant does not have to testify. This principle is related to the fact that the burden of proof is upon the Government and not on the Defendant.

A Defendant in a criminal case need not say anything. It is the right of every individual not to testify. It is guaranteed by the Constitution.

If one or more of the Defendants chooses not to testify, you may not draw any adverse inference from that fact. By that I mean you may not say, Well, they must have something to hide, otherwise they would have testified, or, They must be guilty because they did not get up on the stand and tell me why they were not guilty. It is absolutely impermissible for you to draw such inferences in this case.

It is your duty to give separate and personal consideration to the case of each Defendant. When you do so, you should analyze what the evidence in the case shows with respect to that particular Defendant, leaving out of consideration entirely any evidence admitted solely against the other Defendant.

The fact that you return a verdict of guilty or

not guilty as to one Defendant on any count of the Indictment should not in any way affect your verdict regarding the other Defendant.

You must consider each charge separately. The fact that you find a Defendant guilty or not guilty on one count does not mean that you should find the same Defendant guilty or not guilty on any other count.

You will note that the Indictment charges that the offenses were committed in or about or on or about certain dates. The proof need not establish with certainty the exact date of the alleged offense.

It is sufficient that the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on dates reasonably near the dates alleged in the Indictment.

Exhibits admitted into evidence by the Court are properly before you and will be available to you during your deliberations.

An exhibit marked by the Court for identification is not evidence in the case unless or until it was admitted by the Court as a full exhibit.

If it has not been admitted as a full exhibit, you may not consider it. If it was admitted, however, it is just as much a part of the evidence in the case as the testimony which you have heard from the witness

stand.

The labels in this case, Government and Kramer, as used by the parties, have no significance as to whether the exhibits were offered by the Government, a Defendant or by stipulation. All the exhibits admitted as full exhibits may be considered as to each party.

The evidence in this case includes facts to which the lawyers have agreed or stipulated. A stipulation means simply that the Government and the Defendant accept the truth of a particular proposition or fact.

Since there is no disagreement, there is no need for evidence apart from the stipulation. You may accept the stipulation as fact and give it whatever weight you choose.

Remarks, statements and questions by counsel are not evidence, and you are not to consider them as evidence during your deliberations. Neither should you permit objections by counsel to the admission of evidence or the rulings of the Court to create any bias or prejudice toward counsel or the party whom he or she represents.

It is the duty of counsel for both sides to represent their clients vigorously and to defend their clients' rights and interests.

In the performance of that duty, counsel freely may make objection to the admission of offered evidence or to any other ruling of the Court and should not be penalized for doing so.

If during trial or in instructing you I have said or done anything that has caused you to believe that I was indicating an opinion as to what the facts are in this case, you should put that belief out of your mind. I did not intend to indicate any such opinion.

In fact, I try not to have an opinion about the case because you are the sole and exclusive judges of the facts.

In determining the facts, you are to consider only that evidence which has properly been placed before you. It is the Court's duty to pass upon the admissibility of offered evidence, that is, to decide whether or not offered evidence should be considered by you.

Evidence admitted by the Court is properly before you for your consideration. Evidence which the Court has refused to admit or may have stricken from the record after you've heard it is not a proper subject for your deliberations and you should not consider it.

In some instances, evidence has been admitted for a limited purpose or against only one Defendant. You may recall with respect to Carlos Ortiz's grand jury testimony in Government Exhibit Number 394, Mr. Ortiz's statements may be considered only as they relate to his actions and/or state of mind and not as they relate to Mr. Kramer's actions and/or state of mind.

You must consider such evidence only in the manner in which I have instructed you and not for any other purpose.

The law does not require you to accept or credit the evidence admitted. In determining what evidence you will accept, you must make your own evaluation of the testimony given by each of the witnesses and the weight you choose to give his or her testimony.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe everything a witness says or only a part of it or none of it.

In deciding what to believe, you may consider a number of factors, including the following: The witness's ability to see or hear or know the things the witness testifies to; the quality of the witness's memory; the witness's manner while testifying; whether

the witness has an interest in the outcome of the case or any motive, bias or prejudice; whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; how reasonable the witness's testimony is when considered in light of other evidence which you believe; and whether the witness was convicted of a felony offense.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to disbelieve or discredit such testimony. Two or more persons witnessing an incident or transaction may simply see or hear it differently.

Innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, however, always consider whether it pertains to a matter of importance or an insignificant detail, and consider whether the discrepancy results from innocent error or from intentional falsehood.

The testimony of a witness may be discredited or impeached by showing that he or she previously made statements which are different than or inconsistent with his or her testimony here in court.

These statements may be used to impeach the

credibility of that witness. It is within your province to assess the credibility, if any, to be given the testimony of a witness who has made prior inconsistent or contradictory statements.

You have heard the testimony of John Celona. He provided evidence under an agreement with the Government. Cooperation agreements are lawful, and some people in this position are entirely truthful when testifying.

Still, you should consider John Celona's testimony with greater caution than that of an ordinary witness. John Celona may have had reason to make up stories or exaggerate what others did because he wanted to help himself.

In deciding what to believe, you may consider a number of factors, including the following: Celona's ability to hear, see or know the things he testified to; the quality of Celona's memory; Celona's manner while testifying; whether Celona has an interest in the outcome of the case or any motive, bias or prejudice; whether Celona's testimony is contradicted by anything he said or wrote before trial or by other evidence; the reasonableness or unreasonableness of the events that Celona related to you in his testimony; the reasonableness of Celona's testimony when considered in

the light of other evidence which you believe; and any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict Celona's version of the events.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe everything John Celona said or only a part of it or none of it.

The Indictment in this case contains 23 counts or charges. The Defendants in this case are John Kramer and Carlos Ortiz.

As I did in my preliminary instructions, I'll begin with Counts II through XXII and then talk about Count I and then Count XXIII.

Counts II through XXII charge each Defendant with the commission of honest services mail fraud, an offense prohibited by Title 18 of the United States Code, Sections 1341 and 1346.

Counts II through XXII pertain to mailings allegedly made or caused to be made by one or more of the Defendants in interstate commerce.

Count I of the Indictment charges that the Defendants conspired to commit honest services mail fraud in violation of Title 18, Section 371. Specifically, Count I charges that from at least

May 1999 and continuing until in or about December 2003, the Defendants Kramer and Ortiz conspired with John Celona and with each other to commit honest services mail fraud.

Count XXIII charges each Defendant with the commission of federal program bribery in violation of Title 18, Section 666.

Again, I remind you that a separate crime is alleged against each of the Defendants in each count of the Indictment, and you must consider each alleged offense and any evidence pertaining to it separately.

The fact that you find one Defendant guilty or not guilty as to one of the offenses charged should not control your verdict as to the other offenses charged against that Defendant or the other Defendant.

Counts II through XXII of the Indictment each charge that each of the Defendants committed honest services mail fraud in violation of Title 18, Sections 1341 and 1346, by mailing or causing the mailing of certain checks from CVS to John Celona.

In Counts II through XXII, the Government must prove beyond a reasonable doubt that the checks which are listed in the Indictment and also in these written instructions were mailed from CVS to John Celona.

A violation of Section 1341 occurs when a

Defendant, having devised or intending to devise any scheme or artifice to defraud, places in any Post Office or authorized depository for mail matter any matter or thing whatever to be sent or delivered by the Postal Service.

Title 18, Section 1346 defines a scheme or artifice to defraud as including a scheme or artifice to deprive another of the intangible right of honest services.

To sustain its burden of proof on a charge of mail fraud, the Government must prove each of the following elements beyond a reasonable doubt as to each Defendant so charged.

First, that a scheme to defraud existed substantially as charged in the Indictment;

Second, that the Defendant knowingly and willfully participated in this scheme with the intent to defraud;

Third, that in furtherance of this scheme, the Defendant used or caused the use of the United States mail on or about the date alleged in the Indictment.

The first element of mail fraud is the existence of a scheme to defraud. A scheme means any plan, pattern or course of action. The term defraud means to deprive another of something of value by means of

deception or cheating.

A scheme to defraud is ordinarily accompanied by a desire or purpose to bring about some gain or benefit to one's self or some other person or entity or by a desire or purpose to cause some loss to some person. It includes a scheme to deprive another of the intangible right of honest services.

Public officials have a duty to act in the public's interest. A scheme to deprive the public of the honest services of a public official is a scheme intended to cause a public official to act based upon his or her own personal interests rather than for the benefit of the public.

In this case, the Indictment charges the existence of a scheme to deprive the citizens of Rhode Island of the honest services of John Celona.

The second element of the offense of mail fraud requires proof that the Defendant knowingly and willfully participated in the scheme with the intent to defraud.

A Defendant acts knowingly if he was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake or accident.

An act is done willfully if it is done

voluntarily and intentionally and with the specific intent to do something the law forbids, that is to say with bad purpose, either to disobey or disregard the law. Thus, if a Defendant acted in good faith, he cannot be guilty of the crime alleged.

To act with an intent to defraud means to act willfully and with the specific intent to deceive or cheat. Thus, a Defendant who acted in good faith cannot be guilty of the crime.

The burden of proving intent, as with all other elements of the offense, rests with the Government. The Government must prove both of the following types of intent beyond a reasonable doubt:

First, that the Defendant intended to cause the public official to deviate from the honest performance of his public duties and, second, that the Defendant intended to deceive the public.

The Government may prove the first kind of intent, that is, the intent that John Celona deviate from the honest performance of his public duties, in either of two ways.

First, the Government may seek to prove beyond a reasonable doubt that the Defendant intended the payments or other things of value provided to John Celona to cause him to alter his official acts, to

change a position which he would otherwise have taken, or to take official actions that he would not have taken but for the payments or other things of value.

A Defendant is guilty of honest services fraud under this theory only if the Government proves beyond a reasonable doubt that the Defendant intended to improperly influence or otherwise improperly affect John Celona's performance of his public duties and thereby to deprive the public of John Celona's honest services.

The second way in which the Government may seek to prove a Defendant's intent to deprive the public of the honest services of John Celona is to seek to prove beyond a reasonable doubt that the Defendant intended for John Celona to fail to disclose a material conflict of interest.

In order to find that a Defendant acted with such intent, the Government must prove that the Defendant believed that a material fact existed and intended for John Celona to fail to disclose that conflict of interest and thereby to deprive the public of John Celona's honest services.

Under each of the approaches above, in determining whether a Defendant intended that John Celona deviate from the honest performance of his

public duties, you must consider Rhode Island state law which, in part, defines those duties. I will instruct you on Rhode Island state law in just a moment.

When considering whether the Government has met its burden of proving that the Defendants acted with the intent that John Celona deviate from the honest performance of his public duties, I instruct you that certain forms of intent are not sufficient.

For example, the intent to gain access to a public official in and of itself does not constitute an intent that the official deviate from the honest performance of his duties, nor does the intent to cultivate business or political friendship with a public official.

Providing political donations, hospitality or entertainment, such as lodging, golf, sports events and the like, does not constitute honest services fraud if the Defendant intended to gain access to the public official or cultivate a business or political friendship with the official without any improper purpose or intent.

In this case, the Indictment charges that the Defendants intentionally engaged in a scheme to deprive the citizens of Rhode Island of the honest services of John Celona, a Rhode Island state legislator.

In order to understand the nature of the honest services owed by a Rhode Island state legislator and determine whether the Defendants intentionally engaged in a scheme to deprive the citizens of Rhode Island of the honest services of John Celona, you must consider Rhode Island state law.

In this regard, I should tell you several things about Rhode Island's system of government and laws regarding its state legislators.

The State of Rhode Island's legislature, which is called the Rhode Island General Assembly, is what is known as a citizens' legislature. This means that, unlike, for example, members of the United States Congress who work full time as legislators, Rhode Island state legislators are members of the community who serve only part time in the state legislature and are paid only modestly for their work as legislators.

Accordingly, Rhode Island state law permits legislators to hold jobs outside the legislature.

This concept of a citizens' legislature, which has been adopted by Rhode Island as well as various other states in the country, often results in situations where a certain piece of legislation under consideration could affect the interests of an entity for whom a legislator works.

Under certain circumstances, legislators can still participate in such legislation. Specifically, Rhode Island state law contains a provision known as the class exception.

This provision expressly permits a legislator to take action on legislation that would affect a private entity for whom the legislator works as long as the legislation would affect that entity to no greater extent than any other similarly situated entities.

This is referred to as the class exception because it applies when proposed legislation treats a class of entities, such as all teachers or pharmacies, alike.

Under Rhode Island state law, the legislator is the one who is responsible for identifying any actual or potential conflict of interest, determining whether such a conflict, if one exists, needs to be disclosed and determining whether under all circumstances he or she is permitted to participate in legislation.

In this regard, legislators are permitted by Rhode Island state law to seek guidance and approval from a public body called the Rhode Island Ethics Commission, but Rhode Island state law does not require them to seek such guidance or approval.

A public official who seeks guidance from the

Ethics Commission may do so by making a request in writing. The Ethics Commission also provides oral advice in response to oral inquiries from public officials.

The Ethics Commission, an independent public agency created by amendment to the Rhode Island state Constitution, adopts, enforces and administers Rhode Island's Code of Ethics which governs the conduct of its public officials, including legislators.

Rhode Island state law does not prohibit private citizens or entities who have hired a legislator from communicating with that legislator about legislation that might be of interest to them.

Again, it is the legislator's responsibility to determine whether or not he may participate in legislation that would affect the entity with whom he has a business relationship and not the private citizen's responsibility to make that determination or to refrain from communicating with the legislator about any such legislation.

Although I have given you this instruction on Rhode Island state law, you are not to determine whether or not Rhode Island state law has been complied with here.

You are here to decide whether or not the

Government has proven beyond a reasonable doubt all of the elements of the crimes charged against the Defendants.

The Government may prove the second kind of intent, that is, that the Defendant intended to deceive the public concerning his conduct, either through the Defendant's own acts of deception towards the public or the Defendant's efforts to ensure the official deceived the public with respect to the payments to the official.

Evidence that the Defendant intended to cause the official intentionally to fail to disclose material information about payments to that official is sufficient to show that the Defendant intended that the public be deceived with respect to the Defendant's alleged payments to the official.

Under this element, the Government must prove that the Defendant intended to deceive the public about the payments to Celona. Thus, proof that Celona acted under a material conflict of interest alone is not sufficient to prove honest services mail fraud unless you also conclude that the Defendant intended for any such conflict to be concealed from the public.

At bottom, the Government must present sufficient evidence to establish a Defendant's intent

that the public be deceived with respect to payments to the public official.

Intent or knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.

In determining what the Defendant knew or intended at a particular time, you may consider any statements made or acts done or omitted by the Defendant and all other facts and circumstances received in evidence that may aid in your determination of the Defendant's knowledge or intent.

You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

The use of the mails in furtherance of the scheme is an essential element of the offense of mail fraud. The use of the mails itself need not be false or fraudulent.

It is not necessary that the Government prove all of the details alleged in the Indictment concerning the precise nature and purpose of the scheme or that

the material sent by mail was, itself, false or fraudulent or that the alleged scheme actually succeeded in defrauding anyone or that the use of the mails was intended as the specific or exclusive means of accomplishing the alleged fraud.

What must be proven beyond a reasonable doubt is that the Defendant knowingly devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the Indictment and that the use of the mail on or about the dates alleged was closely related to the scheme because the Defendant caused a check to be mailed in an attempt to execute or carry out the scheme.

To cause the mail to be used is to act with knowledge that the use of the mail will follow in the ordinary course of business or where such can reasonably be foreseen.

The Government need not prove that the scheme was successfully carried out, nor is the Government required to prove that the scheme was capable of success. The Government need only show that the deprivation of honest services of a public official was intended by the schemer.

To summarize, to find the Defendants guilty of mail fraud, it is not necessary that the Government

prove all of the details alleged in the Indictment concerning the precise nature and purpose of the scheme or that the material transmitted by mail was, itself, false or fraudulent or that the alleged scheme actually succeeded in defrauding anyone or that the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud.

What must be proven beyond a reasonable doubt is that the Defendant knowingly devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the Indictment and that the use of the mail on or about the dates alleged was closely related to the scheme because the Defendant caused a check to be mailed in an attempt to execute or carry out the scheme.

I'll now turn to the charge in Count I. Count I of the Indictment alleges that the Defendants Kramer and Ortiz, in violation of Title 18, Section 371, engaged in a conspiracy with each other and with John Celona to commit a federal offense, specifically that the Defendants conspired to commit honest services mail fraud.

Title 18, Section 371, provides in part if two or more persons conspire to commit any offense against the United States and one or more of such persons do

any act to effect the object of the conspiracy, each is guilty of a violation of Title 18, Section 371.

To sustain its burden of proof as to the offense charged in Count I, the Government must prove each of the following elements beyond a reasonable doubt as to each Defendant:

First, that the agreement as set forth in the Indictment and not some other agreement existed between two or more persons to commit honest services mail fraud;

Second, that the Defendant knowingly and willfully joined in that agreement;

And third, that one of the conspirators committed at least one of the overt acts set forth in the Indictment in an effort to further the purpose of the conspiracy.

A conspiracy is an agreement or combination of two or more persons to violate the law. It is a kind of partnership in which each member of the conspiracy, just by being a member of the conspiracy, becomes an agent of every other member of the conspiracy.

What this means is that each conspirator not only acts for himself but also acts for the other conspirators. In other words, a conspiracy is a combination or an agreement to disobey or disregard the

law to achieve the unlawful purpose.

In this case, the Indictment alleges that there was an agreement among John Celona and the Defendants Kramer and Ortiz to commit mail fraud.

It is not necessary that the Government prove that the unlawful purpose of the conspiracy actually was achieved in order to prove that the conspiracy existed.

It must prove, however, that John Celona and Defendants Kramer and/or Ortiz in some way or manner or through some means came to a mutual understanding to accomplish their common unlawful purpose and that they did so knowingly, willfully and intentionally.

The Indictment charges that the conspiracy existed from at least in or about May of 1999 to in or about December 2003. In determining whether the Defendants conspired as charged, you need not find the precise time frame in which the conspiracy was in existence.

It is sufficient that you find that a conspiracy was in existence for any period of time reasonably described by the period alleged in the Indictment and that the Defendant was a member of that conspiracy during that period.

In your consideration of the conspiracy offense

alleged in Count I, you should first determine, from all of the testimony and evidence in the case, whether or not a conspiracy existed as charged.

A conspiracy is an agreement, spoken or unspoken. The conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all the details.

However, the Government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime.

Mere similarity of conduct among various people or the fact that they may have associated with each other or discussed common aims and interests does not necessarily, in and of itself, establish proof of the existence of a conspiracy; but you may consider such factors.

Since a conspiracy, by its very nature, is often secret, neither the existence of the common agreement or scheme, nor the fact of a Defendant's participation in it, need be proven by direct evidence.

Both may be inferred from the circumstances of the case and the course of dealings among John Celona and Defendants Kramer and Ortiz.

In addition to proving that the conspiracy charged in the Indictment existed, the Government must

also prove beyond a reasonable doubt that the Defendant willfully joined in that agreement.

To act willfully means to act voluntarily and intelligently and with the specific intention that the underlying crime, here honest services mail fraud, be committed.

In other words, to act willfully means to act with bad purpose either to disobey or disregard the law, not to act by ignorance, accident or mistake.

Proof that a Defendant willfully joined in the agreement must be based upon evidence of the Defendant's own words and/or actions.

You need not find that the Defendant agreed specifically to or knew about all of the details or the scope of the conspiracy or that the Defendant participated in each act of the agreement or played a major role.

However, the Government must prove beyond a reasonable doubt that the Defendant knew the essential features and general aims of the venture.

On the other hand, a Defendant who has no knowledge of a conspiracy but happens to act in a way that furthers some object or purpose of the conspiracy does not thereby become a conspirator.

Mere knowledge of or acquiescence in an unlawful

plan without participation in it is not sufficient. More is required under the law. What is necessary is that a Defendant participated with knowledge of the purpose or objectives of the conspiracy and with the intention of aiding in the accomplishment of those objectives.

The extent of a Defendant's participation in a conspiracy has no bearing on the issue of that Defendant's guilt. A conspirator's liability is not measured by the extent or duration of that conspirator's participation.

Each conspirator may perform separate and distinct acts and may perform them at different times. Some conspirators may play major roles while others play minor parts in the scheme. An equal role is not what the law requires.

Even a single act may be sufficient to draw a Defendant within the ambit of a conspiracy if the act is done with the intention of agreeing to join the conspiracy and the intention of accomplishing the conspiracy's unlawful purpose.

To establish that a Defendant willfully joined in a conspiracy, the Government must prove two types of intent beyond a reasonable doubt, an intent to agree and an intent that the underlying crime, in this case

honest services mail fraud, be committed.

The Government need not prove that the Defendant agreed to commit the underlying offense personally. It is sufficient that the Defendant intended that the offense be committed, if not by himself, then by a co-conspirator. An individual's intent may be inferred from all of the surrounding circumstances.

In deciding whether a Defendant was a member of the conspiracy, you should first consider the evidence of that particular Defendant's own acts and statements. You may also consider any other evidence in the case as it bears on the issue of a Defendant's membership.

Specifically, you may consider the acts and statements of the other alleged co-conspirators even if the Defendant was not present at the time the acts were done or the statements were made.

However, you may do so only if you find that the Defendant was a member of the conspiracy at the time that the acts were done or the statements made and only if you find that the acts were done and the statements were made by a person whom you find to be a member of the conspiracy during the conspiracy's existence and in furtherance of one of its purposes.

If the acts were performed or the statements were made at a time when the Defendant you are

considering was not a member of the conspiracy or were performed or made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, then they may be considered as evidence only against the conspiracy member who did or said them and not against any other Defendant.

You are instructed that in this case there are only three natural persons alleged to have entered into the agreement described in the Indictment: John Celona and Defendants Kramer and Ortiz.

In order to prove a conspiracy, the Government must prove that, after the conspiracy was entered into, one of the members of the conspiracy committed an overt act in an effort to accomplish some purpose of the conspiracy.

In this case, paragraphs 32 through 95 of the Indictment set forth the overt acts alleged to have been committed in furtherance of the conspiracy charged.

An overt act is any act knowingly committed by one or more members of -- one or more of the conspirators in an effort to accomplish some purpose of the conspiracy.

Only one overt act has to be proven. The overt

act itself need not be a crime. The Government is not required to prove that the Defendant personally committed or knew about the overt act. It is sufficient if one conspirator committed one overt act at some time during the period of the conspiracy.

However, you must unanimously agree as to which overt act alleged in the Indictment has been proven beyond a reasonable doubt.

The Government does not have to prove that the conspiracy succeeded or that its object was achieved. The crime of conspiracy is complete upon the agreement to commit the underlying crime and the commission of one overt act.

I now turn to Count XXIII. Count XXIII of the Indictment charges each Defendant with federal program bribery pursuant to Title 18, Section 666.

A violation of Title 18, Section 666, occurs when a Defendant corruptly gives, offers or agrees to give anything of value to any person with intent to influence or reward an agent of a state government in connection with any business, transaction or series of transactions of such government involving anything of value of $5,000 or more and the state government receives in any one period benefits in excess of $10,000 under a federal program involving a grant,

contract, subsidy, loan, guarantee, insurance or other form of federal assistance.

Section 666 of Title 18 does not apply to bona fide salary, wages, fees or other compensation paid or expenses paid or reimbursed in the usual course of business.

To sustain the charge of bribery, the Government must prove the following elements beyond a reasonable doubt:

First, that the Defendant offered, gave or agreed to give something of value to John Celona;

Second, that John Celona was an agent of a state government or an agency of a state government;

Third, that the Defendant under consideration acted corruptly, with the intent to influence or reward John Celona with respect to a transaction of the Rhode Island General Assembly and/or the Rhode Island Student Loan Authority;

Fourth, that this business, transaction or series of transactions involved anything of a value of $5,000 or more;

And fifth, that the state government in a one-year period received benefits of more than $10,000 under any federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other

assistance.

The one-year period must begin no more than 12 months before the Defendant committed these acts and must end no more than 12 months afterward.

As used in this instruction, the term corruptly means that the Defendant acted voluntarily and intentionally and at least in part to influence the agent. A thing of value can be tangible or intangible property.

The second element the Government must prove beyond a reasonable doubt is that, at the time alleged in the Indictment, John Celona was an agent of the State of Rhode Island. An agent is a person authorized to act on behalf of another person, organization or government.

Elected officials are agents of the government to which they were elected to serve. A person may be an agent of more than one government agency.

The third element the Government must prove beyond a reasonable doubt is that the Defendant acted corruptly with the intent, at least in part, to influence or reward John Celona in connection with some business, transaction or series of transactions with the government or agency.

To act corruptly means to act voluntarily and

intentionally with an improper motive or purpose to influence or reward the recipient's actions. This involves conscious wrongdoing or, as it has sometimes been expressed, a bad or evil state of mind.

In considering this element, remember that it is the Defendant's intent, at least in part, to influence the recipient's actions which is important, not the subsequent actions of the recipient or the organization or government.

Thus, the Government does not have to prove that John Celona accepted the bribe offer or that the bribe actually influenced the final decision of the government.

It is not even necessary that John Celona had the authority to perform the act which the Defendant sought.

The fifth element the Government must prove beyond a reasonable doubt is that the value of the transaction to which the alleged payment related was at least $5,000.

To establish this element, the Government must prove that the Defendant under consideration intended to influence or reward John Celona in connection with any business, transaction or series of transactions of Rhode Island's General Assembly and/or the Rhode Island

Student Loan Authority involving anything of value of $5,000 or more.

If you find that the business or transaction in question had a value of at least $5,000, this element is satisfied. The Government is not required to prove that the Defendant under consideration paid or offered at least $5,000. It is the value of the business or transaction that the alleged bribe was intended to influence or reward that is important for the purpose of this element.

In Government Exhibit Number 391, the Government and the Defendants have agreed that the State of Rhode Island received at least $10,000 per year from the Federal Government during each year at issue.

I instruct you that in order for you to find the Defendant under consideration guilty of a charge of federal program bribery, you must unanimously agree on whether any particular payment or other thing of value violated the statute and, if so, on which payment or thing of value violated the statute.

In order to meet its burden on a charge of federal program bribery, the Government must prove beyond a reasonable doubt that the payments or things of value given to John Celona were given corruptly and were not bona fide compensation paid in the ordinary

course of business.

In addition to charging the Defendants in this case as being principally liable, the Indictment also charges each Defendant with a violation of Title 18, Section 2, or aiding and abetting the crimes of mail fraud and bribery in Counts II through XXII.

To aid and abet means to intentionally help someone else commit a crime. To establish aiding and abetting, the Government must prove beyond a reasonable doubt, first, that someone else committed the charged crime and, second, that the Defendant willfully associated himself in some way with the crime and willfully participated in it as he would in something he wished to bring about.

This means that the Government must prove that the Defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

The Defendant need not perform the underlying criminal act, be present when it is performed or be aware of the details of its execution to be guilty of aiding and abetting; but a general suspicion that an unlawful act may occur or that something criminal is happening is not enough.

Mere presence at the scene of a crime and

knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

An act is done willfully if done voluntarily and intentionally and with the intent that something the law forbids be done, that is to say, with bad purpose either to disobey or disregard the law.

Now, members of the jury, I'm going to meet with counsel one last time to make sure I haven't left anything out of these instructions. Please bear with us for just a couple of moments.

Counsel, please.

(Bench conference held on the record)

THE COURT: Let me start with the Government.

MR. PETALAS: Thank you, your Honor. Your Honor, I have only two. They both relate to state law. If I may take the second instruction first since it was incorporated in the first, and that was in the draft labeled part B, number 2, letter I. It's the instruction of the class exception.

THE COURT: Don't refer to the draft because that's not a part of the record.

MR. PETALAS: Very well. Your Honor, it's the instruction relating to state law in Rhode Island on the class exception and its application in honest services fraud.

Your Honor, the Government would object to the inclusion of that instruction in its entirety.

THE COURT: Okay.

MR. PETALAS: Your Honor, the Government further objects to the instruction given immediately before that one on the intent to deprive in honest services cases.

In particular, we object to the language relating to the instruction that the jury must consider state law as well as the reference to the other instruction to which I've already objected.

THE COURT: Okay.

MR. CORRIGAN: Your Honor, on the instructions that were given, a couple things, I think. One, when you were speaking about intent to deprive of honest services, there's a sentence that reads in that, in the paragraph beginning "the second way in which the Government may seek," the next sentence of that is, "In order to find that a Defendant acted with such intent, the Government must prove" --

THE COURT: Keep your voice up.

MR. CORRIGAN: "The Government must prove that the Defendant believed that a material conflict existed." I think I heard you say that a material fact existed.

MR. TRAINI: That's what we heard as well, Judge.

MR. PETALAS: I heard that as well.

THE COURT: Then I'll go back. What number is it, please?

MR. CORRIGAN: On the draft, it was H. It was on page 20 of your draft. It's in the intent to deprive section.

THE COURT: To disclose a material fact. Okay.

MR. CORRIGAN: Your Honor, the Defendants proposed in this very same section, the intent to deprive section, in our submission of May 10th of our proposed jury instructions a paragraph that had to do with the First Amendment.

THE COURT: I purposely left that out. I thought it sounded more like a closing argument than an instruction on the law.

MR. CORRIGAN: Well, we took exception to that. Similarly, your Honor, in our initial instruction -- excuse me, our submission of May 10th, we had provided language to the Court for that intent in what we had called the Rhode Island state law instructions.

We had had a paragraph, and this is Number 6 of the Defendants' submission on May 10th at page 10, we had had a paragraph beginning, "Here the Defendants are

not legislators. They are private citizens working for a private entity." The Government (sic) did not give that charge, and we take exception to that.

Your Honor, in the charge relating to bribery that the Court gave where the offense is defined, 18 U.S.C., Section 666, I think that the Court left out one -- left out the word "year" from "one period."

THE COURT: Let me find it. One-year period?

MR. CORRIGAN: Right. I will tell you that you left that out; but then when you went to the fifth element, the Court did say one-year period. I'm not going to take exception to that because I do think the jurors. . .

Your Honor, we had given a proposed remedial instruction pursuant to *United States v. Osorio*, and we submitted that on May 28th, 2008. The Court did not provide that, and we take exception to that.

THE COURT: Is that it for you, Mr. Corrigan?

MR. CORRIGAN: Yes, but I will join in what Mr. Traini is about to say.

THE COURT: And I assume he's joining in what you said.

MR. TRAINI: Yes, your Honor, just for the record, both here and at the charge conference. We also submitted to the Court in our supplement to

Defendants' proposed instructions on May 28th an instruction entitled "Credibility of Witness, Inconsistent Statements," and the Court did not give that instruction. We take exception to that.

And I think the last thing is this one paragraph --

MR. CORRIGAN: I think we're okay with that.

MR. TRAINI: Okay. That's it.

THE COURT: Is that it? Okay. I will reread that sentence to them to correct the statement that I made, and I will fix the written copy of instructions that are going to the jury to include the proper one-year period so that they get the corrected one.

MR. TRAINI: One second, Judge.

(Pause)

MR. TRAINI: We had given you at the conference, your Honor, an impeachment by guilty plea instruction. You put in something similar to that in your Number 7 of your list of things. You put it in as consideration of a witness having been convicted of a felony rather than having pled guilty to a criminal offense or pled guilty to crimes.

So we just object to the change in the language from "pled guilty" to "convicted of a felony."

THE COURT: Okay.

MR. CORRIGAN: Thank you, your Honor.

(End of bench conference)

THE COURT: Members of the jury, there is one statement that I need to correct. I misspoke. It is with respect to -- and you'll see this in Number 2.8 entitled "The Intent to Deprive of Honest Services."

I'll reread the sentence to you so that I read it correctly. The second way in which the Government may seek to prove a Defendant's intent to deprive the public of the honest services of John Celona is to seek to prove beyond a reasonable doubt that the Defendant intended for John Celona to fail to disclose a material conflict of interest.

Because under the rules only 12 jurors may deliberate on a verdict, at this time I will be excusing our alternate jurors, Mr. Beardsley, Mr. Blanchette, Mr. Lessard, Mr. Collins.

I will instruct you, however, that until you hear from the Court, you must continue to abide by the Court's instructions, that is, not to talk about the case with anyone and not to read, listen to or watch any news accounts involving this case or even any matter that may touch on it remotely.

You may now leave your notebooks on your seats. They will be locked away. And you will be permitted to

leave the courthouse, again, with those instructions in mind, with the sincere thanks of the Court for the time and effort and attention that you have spent over these last several weeks. Please leave your notebooks on your seats.

And, Mike, would you see our alternates out, please.

(Alternate jurors excused)

THE COURT: I just have a few more instructions for you. To render a verdict, all 12 of you must agree, that is, your verdict must be unanimous.

Therefore, during your deliberations and in your consideration of the evidence, you should exercise reasonable and intelligent judgment.

It is not required that you yield your view simply because a majority holds to the contrary view; but in pursuing your deliberations, you should keep your minds reasonably open with respect to any point in dispute so that you will not be prevented from achieving a unanimous verdict due to mere stubbornness. It is your right, however, to maintain your view.

The vote of each juror is as important as the vote of any other juror; and you need not give up your view, sincerely held, simply because a majority holds to the contrary view.

Do not approach your consideration of the case in an intellectual vacuum. You are not required to disregard your experiences and observations in the ordinary, everyday affairs of life.

Indeed, your experiences and observations are essential to your exercise of sound judgment and discretion, and it is your right and duty to consider the evidence in light of such experiences and observations.

It is hoped and anticipated that you will sift all the evidence in this case through maturity and common sense.

Of course, you should not permit prejudice, sympathy or compassion to influence you. All that any party is entitled to or expects is a verdict based upon your fair, scrupulous and conscientious examination of the evidence and an application of the law as I have instructed you to that evidence.

One of the first things you will have to do when you go to the jury room is to select a foreperson amongst yourselves. The foreperson will have several additional responsibilities, which I'll address in a moment.

You will also be provided with two verdict forms, one for each Defendant, containing a series of

questions with regard to the offenses charged in the Indictment.

Please note that unlike the instructions where I began with Counts II through XXII, your verdict forms are listed in numerical order, that is, I through XXIII.

In addition, you will now be permitted to take your notes with you into the jury room. If you took notes, that's all well and good. If you elected not to do so, as I told you at the beginning of the case, there's no requirement that you do so.

If you did take notes, however, I remind you that they are for your personal, individual use only. They are not to be considered an unofficial record of the proceedings that you heard here in the courtroom.

During your deliberations, if you need further instruction or assistance by the Court in any way, I ask that, through your foreperson, you reduce such requests or questions as you may have to writing. The foreperson may then hand such written request or question to the marshal in whose charge you will be placed.

The marshal will bring any written questions or requests to me, and I will attempt to fulfill your request or answer your question.

Other than the method outlined, please do not attempt to communicate privately or in any other way with the Court.

Once you have reached a verdict, again, it will be the foreperson's responsibility to fill out the verdict forms, sign and date them.

Bear in mind that you are never to reveal to any person, not even to the Court, how the jury stands, numerically or otherwise, on the question of whether the accused is guilty or not guilty until after you have reached a unanimous verdict.

Mike.

(Court security officer sworn)

THE COURT: Members of the jury, you may now retire with the marshal to enter upon your deliberations. When you have reached a verdict, you will return here and make your verdict known.

(The jury is not present for the following)

THE COURT: May I see counsel for just a moment.

(Recess)

(The jury is present for the following)

THE COURT: Members of the jury, I understand that you have reached a verdict. Would you hand the verdict forms to Mr. Duhamel, please.

Members of the jury, in just a moment I will ask

Mr. Duhamel to publish your verdict, that is, to read into the record your verdict. Please listen carefully as he does so.

THE CLERK: As to Defendant John Kramer, Count I, conspiracy to commit honest services mail fraud, not guilty.

Counts II through XXII, honest services mail fraud, on all counts, not guilty.

Count XXIII, the federal program bribery count, not guilty.

As to Carlos Ortiz, Count I, conspiracy to commit honest services mail fraud, not guilty.

On Counts II through XXII, honest services mail fraud, as to all counts, not guilty.

Count XXIII, federal program bribery, not guilty.

THE COURT: Members of the jury, now that you have rendered a verdict, your official service to this Court has come to an end, and my previous instructions to you about refraining from talking about the case no longer apply.

You are free now to talk about the case amongst yourselves, of course, and with your family and friends. And there may be members of the press who will want to talk to you about this case as well.

You are not required to discuss the case with anyone, including members of the press. If you choose to do so, that is your own personal decision. However, I must caution you that if you do talk to the press about this case, that you refrain from talking about what others said during the course of your deliberations.

To do so would violate one of the most sacrosanct rules that we have, and that is to keep jury deliberations within the confines of the deliberation room.

So you are now formally discharged with the thanks of the Court. Your notebooks will be collected, and their contents will be destroyed. No one will see them.

Mike, would you see the jury out, please.

(The jury is not present for the following)

THE COURT: I think there may be a couple of matters still pending with respect to the Defendants' Rule 29 motions.

At the close of the Government's case and then again after the close of all the evidence, both Defendants moved for judgment of acquittal pursuant to Rule 29.

Although I believe that the Government's

evidence with respect to each element of the offenses was scant, I do believe that there was sufficient evidence in this case to submit the matters to the jury. And so for those reasons, those motions are denied.

May I see counsel, please.

(Bench conference held off the record)

(Adjourned)

C E R T I F I C A T I O N

I, Karen M. Wischnowsky, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Karen M. Wischnowsky________________

Karen M. Wischnowsky, RPR-RMR-CRR

June 13, 2008

Date